IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **LEONARDO GARCIA VENEGAS,**<br><br>      **Plaintiff,**<br><br>**v.**<br><br>**TOM HOMAN, White House Border Czar, in his official capacity; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. DEPARTMENT OF JUSTICE; KRISTI NOEM, Secretary of the DHS, in her official capacity; PAMELA BONDI, Attorney General, in her official capacity; STEVE SCHRANK, Special Agent in Charge of HSI's Atlanta Field Office, in his official capacity; SARA JONES, Special Agent in Charge of FBI's Mobile Office, in her official capacity; BRIAN ACUNA, Acting Director of ICE's New Orleans Field Office, in his official capacity; ADAM M. CALDERON, Chief Patrol Agent for CBP's New Orleans Sector, in his official capacity,**<br><br>      **Defendants.** | **Civil Action No. 1:25-cv-00397-JB-N** |

**FEDERAL DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINAY INJUNCTION**

The Federal Defendants respectfully submit this opposition to Plaintiff, Leonardo

Plaintiff Venegas' (Plaintiff) Motion for Preliminary Injunction on his Count I, Fourth

Amendment Injunctive claims, Count II, Fourth Amendment APA claims, and Count IV, Lawful

Procedure APA claims that should fail on the merits because Plaintiff cannot meet the

Preliminary Injunction success criterion. [Doc.30-1, PageID.194-233]. Moreover, Plaintiff's

complaint establishes that he does not have standing to challenge Department of Homeland

1

Security (DHS) Immigration and Customs Enforcement (ICE) policies and actions. In support, the Federal Defendants submit the following:

### Introduction

Plaintiff is seeking prospective relief and asking this Court to issue an injunction enjoining three alleged policies.[1] As an initial matter, he has failed to establish sufficient standing to challenge the government's lawful general immigration enforcement and lawful actions. Plaintiff has not experienced an injury-in-fact, nor does he have a personally legitimate expectation of privacy in the worksite sufficient to warrant Fourth Amendment standing. Accordingly, this Court should dismiss his claims. In the event the Court determines standing exists, the Federal Defendants expressly reserve their rights to file a motion to dismiss by the January 29, 2026, deadline [Doc. 43], raising additional Fed. R. Civ. P. 12(b) challenges, if any.[2]

This Court should not grant a district-wide preliminary injunction of three indefinite DHS policies. Injunctive relief "is an extraordinary and drastic remedy" that is "the exception rather than the rule[.]" *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). Despite the high bar required to obtain an injunction, Plaintiff broadly asks this Court to enjoin lawful government immigration enforcement activities in the Southern District of Alabama potentially

---

[1] Plaintiff designates the challenged policies as the 1) Warrantless Entry, 2) Preemptive Detention, and 3) Continued Detention policies. However, the Federal Defendants have not issued any policies under these names.

[2] For example, the Federal Defendants may raise Plaintiff's failure to challenge an Administrative Procedures Act final agency action. *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 808 (2024); Quoting 5 U.S.C. § 704. Also, his failure to exhaust his Federal Tort Claims Act claims administratively, which is like a defense for lack of jurisdiction under Rule 12(b)(1) as well as any remaining good faith Fed. R. Civ. P. 12(b) arguments, if any. *Bryant v. Rich*, 530 F.3d 1368, 1374–76 (11th Cir. 2008). The Federal Defendants are requesting dismissal due to standing in this brief because these threshold arguments are intertwined in both this Opposition and the Opposition to Class Certification.

curtailing every on-the-ground immigration search and detention in the Southern District of Alabama. Such an injunction will encroach on the Executive Branch's authority to enforce immigration law. *See Arizona v. United States*, 567 U.S. 387, 416, 132 S. Ct. 2492, 2510, 183 L. Ed. 2d 351 (2012) ("[t]he National Government has significant power to regulate immigration"). Moreover, a district wide injunction will materially curtail Federal law enforcement of Executive Branch immigration policies, hinder lawful general immigration enforcement, and chill routine field operations.

For this Court to rule on the preliminary injunction it need not require the same degree of evidentiary support as that required for summary judgment. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 1834, 68 L. Ed. 2d 175 (1981) ("[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits"). Accordingly, the Federal Defendants offer the declaration of HSI ICE DHS Acting Assistant Special Agent in Charge, Philip Lavoie, supporting that Federal Officials conducted lawful general immigration enforcements and had reasonable suspicion for lawful May and, if it occurred, June encounters. [Doc. 44-1, PageID.466-474, ¶¶ 1-32 ].[3] The Federal Defendants respectfully request the Court rule on the jurisdictional question of standing before ruling on any other pending matters.

---

[3] The Federal Defendants cannot, at this preliminary stage in the litigation, offer declarations on behalf of the potential *Bivens* defendants regarding the circumstances of both the May and June encounter by the briefing deadline. Serious conflict of interest and ethical issues are implicated by undersigned obtaining testimony or declarations for the Federal Officials prior to an Office of Principle Legal Advisor (OPLA) determination regarding whether they are entitled to independent representation.

3

**Statement of Facts**

1.      On May 21, HSI Special Agents were conducting surveillance of various subdivision construction sites including the Lennar subdivision, located near 19428 County Road 10 in Foley, Alabama in response to information received—from the public and from aliens arrested during previous operations—that suggested aliens were potentially present in violation of immigration laws. [Doc. 44-1, PageID. 467, ¶6].

2.      The HSI Special Agents were wearing federal law enforcement identifying markings—patches with either POLICE, ICE, HSI, or Homeland Security Investigations—on the front and back of their vests. [Doc. 44-1, PageID.468, ¶7], and [Exhibit B].

3.      Before the HSI Special Agents exited their vehicles, they observed three individuals running away from the worksite. [Doc. 44-1, PageID.468, ¶8].

4.      As the HSI Special Agents exited their vehicles in pursuit of these three individuals, Agents heard whistles which based on their training, knowledge, and experience, indicate a warning signal to alert potential aliens that immigration enforcement officers are present in the area. When individuals respond to this warning by fleeing, immigration officers reasonably suspect that those fleeing are in the United States in violation of immigration laws. [Doc. 44-1, PageID.468, ¶9].

5.      The individuals who were running presented a safety risk—due to the dangerous nature of the construction site [Doc. 1, PageID.13-14, ¶¶38-41] and by running toward oncoming traffic—thus the HSI Special Agents gave chase to de-escalate. [Doc. 44-1, PageID.468, ¶10].

6.      Another HSI Special Agent approached an individual who remained at the worksite, Carlos Garcia-Venegas, who did not understand the Agents questions. Therefore, an Enforcement and Removal Operations (ERO) Deportation Officer assisted by asking questions in

the Spanish language. The ERO Deportation Officer began to apprehend this individual, and Plaintiff began to move quickly toward the arresting ERO Deportation Officer [Doc. 1, PageID.18-19, ¶¶77-89] and [Exhibit B]—potentially attempting to intervene in an ongoing apprehension—which posed a possible safety threat. [Doc. 44-1, PageID.468, ¶11].

7.      An HSI Special Agent moved between Plaintiff and the arresting ERO Deportation Officer. That Agent asked the Plaintiff for identification that Plaintiff refused to provide and became confrontational. [Doc. 44-1, PageID.469, ¶12].

8.      Plaintiff attempted to move around the HSI Special Agent, who instructed Plaintiff to stop. However, the Plaintiff instead quickened his pace, and circled the arresting ERO Deportation Officer. Plaintiff's actions caused the HSI Special Agent to be concerned for safety—due to the presence of a concrete pad with exposed rebar and other sharp objects in the area—and due to Plaintiff's refusal to comply with any commands given. [Doc. 44-1, PageID.469, ¶13] and [Exhibit B].

9.      Plaintiff, continued to refuse to comply with commands and stated for the first time in the encounter that he was a U.S. citizen. The HSI Special Agent stated that if Plaintiff could provide identification demonstrating his citizenship, he would be released. [Doc. 44-1, PageID.469, ¶14] and [Exhibit B].

10.      Plaintiff continued to use physical force against the HSI Special Agent by wrenching his arms and body, resisting law enforcement actions and creating a risk of bodily injury. The HSI Special Agent employed multiple deescalating control techniques to secure Plaintiff, ensure Plaintiff's safety, and to ensure officer safety. Plaintiff continued to resist and was directed to the ground. Plaintiff was then handcuffed, with his hands restrained behind his back. Philip Lavoie Declaration [Doc. 44-1, PageID.469, ¶15] and [Exhibit B].

11.    After being detained, Plaintiff stated that he had identification in his pocket. He was then brought to stand by the government vehicles. A subsequent search of his pocket by the HSI Special Agent located Plaintiff's wallet, containing Plaintiff's REAL ID-compliant Alabama driver's license. The HSI Special Agent verified Plaintiff's U.S. citizenship. [Doc. 44-1, PageID.469-470, ¶16].

12.    Plaintiff agreed to communicate with law enforcement while the officers verified his U.S. citizenship. Plaintiff informed the HSI Special Agents that he knowingly transports aliens for Southern Home Crafters following his employers, Southern Home Crafters, direction and with the property owner's, D.R. Horton and Lennar, knowledge. [Doc.44-1, PageID.470 ¶17] and [Doc. 1, PageID.12, ¶¶33-36].

13.    After the HSI Special Agents verified Plaintiff's U.S. Citizenship, he was released. Plaintiff was handcuffed for approximately 18 minutes. Philip Lavoie Declaration [Doc. 44-1, PageID.470, ¶19].

14.    On June 12, 2025, ICE and other agencies conducted immigration enforcement at worksites, but HSI DHS ICE have not identified records of a June 12 encounter with Plaintiff. [Doc. 44-1, PageID.470-471, ¶22].

15.    The Federal Defendants have not enacted a Warrantless Entry Policy, Preemptive Detention Policy, or Continued Detention Policy. Philip Lavoie Declaration [Doc. 44-1, PageID.471, ¶23].

16.    ICE officers and agents are required to follow the relevant statutory authorities in enforcing immigration laws, preventing terrorism, and combating transnational criminal threats. Philip Lavoie Declaration [Doc. 44-1, PageID.471, ¶24].

17.    Prior to engaging in investigative stops, commonly known as *Terry* stops, HSI

agents are trained to have developed reasonable suspicion that the subject has committed or is committing a federal crime or federal immigration violation. This is a totality of the circumstances evaluation which includes the following, non-exhaustive, factors: information from intelligence sources, information from law enforcement and open-source databases, analysis of trends and patterns associated with immigration violations, previous encounters with undocumented individuals at a specific location or working for certain employers, and information provided by human sources. [Doc. 44-1, PageID.471, ¶25].

18.    Federal immigration officers have specialized expertise and practical knowledge of factors that are most indicative of immigration violations, illegal activity, and behaviors typically associated with unlawful presence. [Doc. 44-1, PageID.471, ¶26].

19.    ICE's policy requires immigration officers to follow the Constitution and all relevant statutes and regulations. HSI Special Agents receive extensive training on Fourth Amendment searches and seizures in addition to their practical field experience. [Doc. 44-1, PageID.472, ¶27].

20.    The trainings include annual Fourth Amendment and Immigration and Nationality Act (INA) trainings. Moreover, ICE HSI Mobile Special Agents receive Eleventh Circuit Court of Appeals-specific immigration enforcement training on the requirements of the Fourth Amendment, the statutory and regulatory provisions of the INA, and caselaw which also covers the requirements for warrantless arrests and investigatory stops under both Title 8 for immigration law violations and Title 18 for criminal violations, the requirements of having and documenting reasonable suspicion and/or probable cause. [Doc. 44-1, PageID.472, ¶28].

21.    ICE HSI Mobile Special Agents are trained that—under the Fourth Amendment, relevant statutes and regulations, and case law—a brief investigatory stop requires an

immigration officer to have reasonable suspicion, based on specific, articulable facts, that the person questioned is an alien illegally present in the United States. [Doc. 44-1, PageID.472, ¶29].

22. ICE HSI Mobile Special Agents are trained to follow ICE procedure for apprehensions of illegal aliens present in the United States by using targeted and non-targeted investigations, conducting operations, and making arrests. Investigations are developed by gathering information such as employment information; tips from communities or federal agencies; and evidence compiled in law enforcement systems, records and relevant databases. These investigations are designed to identify whether individuals are present in violation of immigration law. When non-targeted individuals are encountered during targeted operations or while agents are in the field, ICE HSI Mobile Special Agents are trained to develop reasonable suspicion prior to conducting an investigatory stop. Once U.S. citizenship is verified, ICE HSI Mobile Special Agents are trained to end the encounter—absent criminal and safety concerns. ICE HSI Mobile Special Agents identify themselves to the arrestee at the time of arrest/encounter or as soon as practicable when safe to do so. [Doc. 44-1, PageID.472-473, ¶30].

23. ICE HSI Mobile Special Agents regularly receive training on investigatory stops and consensual encounters. They are trained to approach individuals and to identify themselves as immigration officers and ask questions to establish identity and citizenship status. [Doc. 44-1, PageID.473, ¶31].

24. All agents who were present during the May encounter have attended Title 8 authority refresher training within the past year. [Doc. 44-1, PageID.473-474, ¶32].

**Standard of Review**

I.  **Standing**

Before addressing the merits of a claim district courts must address the threshold

8

jurisdictional question of Article III standing. *See* U.S. Const. art. III, § 2, cl. 1 (Article III requires that federal courts can only hear cases and controversies). Standing is considered a justiciable "landmark" setting apart the Article III "Cases" and "Controversies." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992). Therefore, standing is a threshold jurisdictional question that "'limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong[.]' " *United States v. Ross,* 963 F.3d 1056, 1062 (11th Cir. 2020) (Quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016)).

To prove a right to challenge government policies and action, plaintiffs must establish standing by showing (1) they suffered an injury in fact; (2) the injury is fairly traceable to the challenged conduct, e.g., causation; and (3) redressability. *See Spokeo Inc. v. Robins*, 578 U.S. 330, 338 (2016). A plaintiff must support each element "with the manner and degree of evidence required at the successive stages of the litigation." *Murthy v. Missouri*, 603 U.S. 43, 58, 144 S.Ct. 1972, 219 L.Ed.2d 604 (2024). Moreover, a plaintiff cannot establish standing by simply challenging legislation or executive action because courts do not have authority to review and revise legislative and executive action. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-560 (1992). Rather, the role of the court "is, solely, to decide on the rights of individuals. [While] [v]indicating the public interest (including the public interest in Government observance of the Constitution and laws) is the function of Congress and the Chief Executive".[4] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 576, 112 S. Ct. 2130, 2145, 119 L. Ed. 2d 351 (1992).

---

[4] "The National Government has significant power to regulate immigration. With power comes responsibility, and the sound exercise of national power over immigration depends on the Nation's meeting its responsibility to base its laws on a political will informed by searching, thoughtful, rational civic discourse." *See Arizona v. United States*, 567 U.S. 387, 416, 132 S. Ct. 2492, 2510, 183 L. Ed. 2d 351 (2012)

The standing doctrine reflects this fundamental jurisdictional limitation on the courts that "is founded in concern about the proper-and properly limited-role of the courts in a democratic society." *Summers v. Earth Island Inst., 555 U.S. 488, 492-93, 129 S. Ct. 1142, 1148 (2009)*(citing *Warth v. Seldin*, 422 U.S. 490,498 (1975)); *see also United States v. Richardson*, 418 U.S. 166, 179 (1974). Accordingly, federal courts must satisfy themselves that "the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction." *Warth*, 422 U.S. at 498-499. Moreover, the plaintiff bears the burden of showing that he has standing for each type of relief sought. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983); *see also Ellis v. Costco*, 657 F.3d 970, 978 (9th Cir. 2011).

When standing questions arise in the context of the Fourth Amendment courts analyze "it as a merits issue." *Presley v. United States*, 895 F.3d 1284, 1290 (11th Cir. 2018) (citing *Minnesota v. Carter*, 525 U.S. 83, 87, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998)) ("expressly reject[ing]" treating Fourth Amendment standing like Article III standing); *United States v. Noble*, 762 F.3d 509, 526 (6th Cir. 2014) ("Somewhat confusingly, the Supreme Court refers to this burden as Fourth Amendment standing. This type of standing, however, is not jurisdictional, nor rooted in Article III[.]"). Thus, as it relates to government action implicating the Fourth Amendment, the ability to claim its protection relies "on whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Minnesota v. Carter*, 525 U.S. 83 at 88 (1998). Thus, "to have standing to challenge a search and seizure a defendant must establish a 'legitimate expectation of privacy' in the property when it was searched[.]" *United States v. Gibson*, 708 F.3d 1256 at 1276 (11th Cir. 2013). Although a defendant need not own or rent the searched property, merely being present on the property is insufficient to confer standing. *United States v Saarda-Villa*, 760 F.2d 1232, 1236 (11th Cir.

10

1985). A defendant has standing to challenge a search on another person's property only if they demonstrate "an unrestricted right of occupancy and control of the premises[.]" *Id*. (quoting *United States v Bachner*, 706 F.2d 1121, 1126 n.6 (11th Cir 1983)).

## II.        Preliminary Injunction and Temporary Restraining Order (TRO)

"The standard for obtaining a TRO is identical to that for obtaining a preliminary injunction." *Doe 1 v. Bondi*, 780 F. Supp. 3d 1277, 1283 (N.D. Ga. 2025) (citing *Martin v. Kemp*, 341 F. Supp. 3d 1326, 1332 (N.D. Ga. 2018) (citing *Windsor v. United States*, 379 F. App'x 912, 916-17 (11th Cir. 2010)); *see also Miss. Power & Light Co. v. United Gas Pipe Line Co*., 760 F.2d 618, 621 (5th Cir. 1985) (articulating the standard a court should apply when considering preliminary injunctions, which use the same standard as TROs). A temporary restraining order is "an extraordinary and drastic remedy" and Courts should only grant such an injunction when the movant shows: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the injunction is not granted; (3) that the threatened injury to [movant] absent an injunction outweighs the damage to [non-movant] if an injunction is granted; and (4) that granting the injunction would not be adverse to the public interest." *See BRENDA YOSELIN ROJANO GONZALEZ, Petitioner, v. GEORGE STERLING, Field Off. Dir. of ICE Atlanta Field Office, et. al*., No. 1:25-CV-6080-MHC, 2025 WL 3145764, at *2 (N.D. Ga. Nov. 3, 2025) (citing *Four Seasons Hotels & Resorts v. Consorcio Barr*, 320 F.3d 1205, 1210 (11th Cir. 2003); *Morgan Stanley BW, Inc. v. Frisby*, 163 F. Supp. 2d 1371, 1374 (N.D. Ga. 2001) (internal citation omitted)). "If a less drastic remedy...[i]s sufficient to redress [Petitioner's] injury, no recourse to the additional and extraordinary relief of an injunction [i]s warranted." *LUIS ALONSO ESPINOZA-SORTO, Petitioner/Plaintiff, v. JUAN AGUDELO, et al.,* No. 1:25-CV-23201-GAYLES, 2025 WL 3012786, at *4 (S.D. Fla. Oct. 28, 2025) (quoting *Monsanto Co. v. Geertson*

11

*Seed Farms*, 561 U.S. 139, 165–66 (2010). Likewise, "injunctive relief may not be granted unless the plaintiff establishes the substantial likelihood of success criterion." *Id*., (quoting *Schiavo ex rel. Schindler*, 403 F.3d at 1226) (denying injunctive relief when movant did not establish first factor even if the other three factors were met).

### III.    The Fourth Amendment

The Fourth Amendment protects "against unreasonable searches and seizures[.]" *Reyes v. Maschmeier*, 446 F.3d 1199, 1203 (11th Cir. 2006). Accordingly, to conduct a lawful seizure, law enforcement must articulate a "reasonable suspicion" for the encounter. *See Terry v. Ohio*, 392 U.S. 1, 27 (1968) ("in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience"). An encounter does not become a seizure or detention unless—when considering all circumstances surrounding the interrogation—a reasonable person would have believed he was not free to leave. *United States v. Rodriguez-Franco*, 749 F.2d 1555, 1560 (11th Cir. 1985) (citing *INS v. Delgado*, 466 U.S. 210, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)) ("factory surveys" lasting one to two hours each conducted by federal agents—wearing badges, armed, guns not drawn—who positioned themselves at doors, circulated throughout buildings, asked employees several citizenship questions, asked some for immigration papers, disrupted some work, and several employees attempted to hide, while other employees could move about and continue work, did not violate the fourth amendment).

When law enforcement questioning becomes an investigative detention, but not an arrest, this encounter is commonly known as a *Terry* stop. *See United States v. Gonzalez-Zea*, 995 F.3d 1297, 1302 (11th Cir. 2021) ("*Terry* and its progeny allow an officer to, consistent with the

Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot"). Moreover, "a *Terry* stop need only be supported by reasonable suspicion to be lawful under the Fourth Amendment. *Dunaway v. New York*, 442 U.S. 200, 208–09, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). Reasonable suspicion exists when an officer has specific and articulable facts that, taken together with rational inferences from those facts, lead him to believe that criminal activity is afoot. *Terry*, 392 U.S. at 21, 30, 88 S.Ct. 1868.8. Whether reasonable suspicion exists is likewise an objective inquiry, which "must be based on commonsense judgments and inferences about human behavior." *Illinois v. Wardlow*, 528 U.S. 119, 125, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000).

## Argument

This Court should deny Plaintiff's request for a preliminary injunction because the Federal Officials conducted a lawful general immigration enforcement rooted in reasonable suspicion. [Doc. 44-1, PageID.466, 471-473¶1 and ¶¶25-30]. Moreover, the Immigration and Nationality Act (the Act and/or INA) expressly authorizes agents, without a warrant, "to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States." 8 U.S.C. s 1357(a)(1); *see also* Kavanaugh, J., concurring in *Noem v. Vasquez Perdomo*, No. 25A169, 2025 WL 2585637, at \*1 (U.S. Sept. 8, 2025) (granting stay) (Quoting 66 Stat. 233 and 8 U.S.C. § 1357(a)(1)); *see also* 8 C.F.R. § 287.5(a)(1) (authorizing immigration officers "to interrogate, without warrant, any alien or person believed to be an alien concerning his or her right to be, or to remain, in the United States[.]"). Further, Plaintiff did not suffer and injury in fact and did not own or control the inspected worksite. *See United States v. Marchant*, 55 F.3d 509, 516-17 (10th Cir. 1995) ("inability to assert lawful possession, ownership, or control of [the inspected premises or property] erodes his claim of a reasonable

13

expectation of privacy"). Therefore, he does not have a personal right to challenge the Federal Officials warrantless entry, has failed to establish standing, and cannot meet the Preliminary Injunction success criterion.

## I.        Plaintiff cannot establish Article III standing.

Plaintiff has not shown that he faces an imminent injury from any policy, pattern or practice implemented by the Federal Defendants. To show an actionable "policy, pattern, or practice," plaintiffs must identify conduct that is systemic and widespread, not merely the result of isolated or sporadic incidents. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985). Thus, to establish standing, Plaintiff must show that the policy, in fact, exists and that it requires Federal Officials to take the challenged actions. *Creedle v. Miami-Dade Cnty*., 349 F. Supp. 3d 1276, 1290–91 (S.D. Fla. 2018) (plaintiff cannot seek declaratory relief solely on the grounds that Defendants' past conduct was unlawful, but must show an established, blanket policy that required officials to honor all detainers and re-arrest and detain anyone subject to a detainer). He has failed to meet that burden. Rather, Plaintiff attempts to challenge government policies that he alleges "grant immigration officers' broad power to (1) raid the non-public areas of private construction sites without consent or a warrant, (2) preemptively detain workers on those sites without reasonable suspicion that they are undocumented, and (3) continue detaining those workers even after they have produced evidence of citizenship or lawful presence." [Doc. 30-1, PageID.201-202]. No such policies exist. *See* Philip Lavoie Declaration [Doc. 44-1, PageID.471 ¶23]. Rather, the HSI Special Agents have received training that reasonable suspicion factors can include "information from intelligence sources, information from law enforcement and open-source databases, analysis of trends and patterns associated with immigration violations, previous encounters with undocumented individuals at a specific

location or working for certain employers, and information provided by human sources," among other factors. *See* Philip Lavoie Declaration [Doc. 44-1, PageID.471 ¶25].

Moreover, the federal government has power over "immigration and the status of aliens," and its "power to determine immigration policy is well settled. To that end, Congress has passed comprehensive legislation regulating the apprehension, arrest, detention, and removal of persons unlawfully present in the United States; and the Executive branch, through its agencies, including the Department of Homeland Security (DHS), and its subcomponent, ICE, is tasked with carrying out the legislature's design." *Ramirez Ovando v. Noem*, No. 1:25-CV-03183-RBJ, 2025 WL 3293467, at *1 (D. Colo. Nov. 25, 2025) (quoting *Arizona v. United States*, 567 U.S. 387, 394 (2012)). Additionally, ICE's policy requires immigration officers to follow the Constitution and all relevant statutes and regulations. HSI Special Agents receive extensive training on Fourth Amendment searches and seizures in addition to their practical field experience. [Doc. 44-1, PageID.471-473 ¶25-31]. Moreover, all agents who were present during the May encounter have attended Title 8 authority refresher within the past year. [Doc. 44-1, PageID.479-474 ¶32].  Therefore, the HSI Special Agents followed their training to conduct May and June lawful general immigration enforcements and lawful encounters.

In contrast, in an attempt to support his claims that these policies exist, Plaintiff provides his declaration related to two isolated lawful encounters [Doc. 30-2, PageID.235-247], and the declaration of Jorge Ovidio Estrada related to a July 23 encounter. [Doc. 30-4, PageID.345-350]. Plaintiff also asks this Court to consider other declarations provided by his attorney, Joshua Windham[5] [Doc.30-3, PageID.264-280], Brian Gavidia, a United States citizen from Los

---

[5] The Federal Defendants dispute that this declaration can be reduced to admissible evidence because Plaintiff's attempt to utilize his counsel as a witness violates Rule 3.7. *See Pigott v. Sanibel Dev., LLC*, No. CIV.A. 07-0083-WS-C, 2007 WL 2713188, at *1 (S.D. Ala.

Angeles [Doc. 30-3, PageID.328-331], Jose Eliseo Escobar Molina, District of Columbia

construction worker with protected status [Doc. 30-3, PageID.332-339], M.P. [Doc. 30-3,

PageID.340-344], Jane Doe[6] [Doc. 30-5, PageID. 360-363], and Gehovani Alvirde-Ruiz [Doc.

30-6, PageID.370-372]. This Court should decline to consider the declarations of individuals

who are not United States citizens and/or who do not reside in the Southern District of Alabama

because they cannot offer relevant evidence related to Plaintiff's requested district-wide

preliminary injunction. Plaintiff's reliance on three isolated encounters does not come close to

what is necessary to establish the existence of a policy or practice in the Southern District of

Alabama.

However, even if such policies did exist, Plaintiff's request for prospective injunctive

relief is insufficient to demonstrate Article III standing. *City of Los Angeles v. Lyons*, 461 U.S.

95, 103 (1983) ("past wrongs do not in themselves amount to that real and immediate threat of

---

Sept. 17, 2007) ("Rule 3.7(a) of the Alabama Rules of Professional Conduct, [] provides as follows: 'A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness, except where: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client.'"). This Court should decline to consider this as evidence to support his request for Preliminary Injunction because it is not apparent that this declaration "can be reduced to admissible, authenticated form at trial." *United States Aviation Underwriters, Inc. v. Yellow Freight Sys., Inc.*, 296 F.Supp.2d 1322, 1334 (S.D. Ala. 2003). In considering whether evidence is sufficient to support summary judgment, the Eleventh Circuit has recognized that inadmissible evidence may be used only if there is no indication that the facts could not be reduced to admissible evidence at trial. *See, e.g.*, *Macuba v. Deboer*, 193 F.3d 1316, 1324 (11th Cir. 1999). The Federal Defendants contest the admissibility of this media evidence and whether it provides relevant support for Plaintiff's assertions.

[6] This Court should likewise decline to consider Jane Doe's affidavit because she is not a potential class member and her testimony regarding alleged experiences that happened outside of the district is not relevant to Plaintiff's request for a district wide preliminary injunction making it unlikely this testimony "can be reduced to admissible, authenticated form at trial." *United States Aviation Underwriters, Inc. v. Yellow Freight Sys., Inc.*, 296 F.Supp.2d 1322, 1334 (S.D. Ala. 2003). The Federal Defendants dispute that Jane Doe's affidavit could be reduced to admissible evidence.

injury necessary to make out a case or controversy"). In *Lyons*, the Court held that, because the plaintiff had shown no "immediate threat" that he would again be "choke[d] . . . without any provocation or resistance on his part," he "failed to demonstrate a case or controversy . . . that would justify the equitable relief sought." *Lyons*, 461 U.S at 105. In contrast, the district court in *Ramirez Ovando*, found those plaintiffs established Article III standing because they experienced injuries from an ongoing "illegal arrest and detention." *Ramirez Ovando v. Noem*, No. 1:25-CV-03183-RBJ, 2025 WL 3293467, at *10 (D. Colo. Nov. 25, 2025).

Here, the fact that HSI Special Agents have asked Plaintiff to provide proof of alienage, by itself, is not enough to establish standing. Like the *Lyons* plaintiff, Plaintiff offers no basis to believe that it is likely that ICE will subject him to unlawful warrantless entry, detention or continued detention in the imminent future.[7] The *Lyons* Court also concluded that, even assuming that the defendant police department did have a practice of "routinely apply[ing] chokeholds in situations where they are not threatened by the use of deadly force," the plaintiff had still failed to show a "real and immediate" injury. *Lyons*, 461 U.S. at 105. In other words, showing that the police department was generally likely to continue to employ chokeholds was not enough unless the plaintiff himself would likely be subject to that chokehold again.

Here, Plaintiff claims there is an alleged policy of detention without reasonable suspicion, but as in *Lyons*, even if such a policy existed, it is insufficient to show standing. This Court should find Plaintiff's brief lawful encounters were likely based on a reasonable suspicion are not the same as ongoing detention. The Supreme Court's recent order in *Noem v. Perdomo* further supports the conclusion that Plaintiff lacks standing. In *Perdomo*, the plaintiffs alleged

---

[7] The Federal Officials conducted a lawful general immigration enforcement and lawfully questioned Plaintiff about his alienage. Thus, have not subjected Plaintiff to the alleged unlawful conduct and acted in accordance with the law.

that federal immigration agents engaged in a pattern of detention stops without reasonable suspicion of an immigration violation, and the Supreme Court stayed a district court's injunction based on those allegations pending appeal. *Noem v. Perdomo*, No. 25A169, 2025 WL 2585637 (Sept. 8, 2025). Although the Court did not state why it viewed the federal government is likely to succeed on the merits, Justice Kavanaugh's concurrence explained that under the "Court's decision in [*Lyons*], plaintiffs likely lack[ed] Article III standing to seek a broad injunction restricting immigration officers from making . . . investigative stops." *Id*. at *2 (Kavanaugh, J., concurring). Justice Kavanaugh explained that in his view, the plaintiffs did not have "standing to obtain future injunctive relief . . . merely because [they] experienced past harm and fear its recurrence," and otherwise had "no good basis to believe that law enforcement will unlawfully stop them in the future . . . and certainly no good basis for believing that any stop . . . is imminent." *Id*. (emphasis in original).

Even more recently, a district court distinguished *Lyons* as a basis to reject similar DHS arguments. *Escobar Molina v. U.S. Dep't of Homeland Sec*., No. CV 25-3417 (BAH), 2025 WL 3465518, at *16 (D.D.C. Dec. 2, 2025) ("This case differs materially from the facts of *Lyons* on the three considerations discussed above—namely, that [the court found] defendants have likely adopted a policy and practice of warrantless arrests without probable cause, that plaintiffs are likely among those targeted, and that plaintiffs likely cannot avoid repeating the conduct that led to their original injuries."). However, here, this Court should decline to follow that non-binding decision. Further, that District Court's *Molina* finding that "Justice Kavanaugh's concurrence in Perdomo, to the extent it has persuasive, let alone controlling, authority, [was] inapposite[,]" also weighs in favor of this Court finding that Plaintiff's challenges arise in the same context as *Perdomo's* challenges "to civil immigration stops." *Id.* Thus, here, Justice Kavanaugh's

18

concurrence provides persuasive guidance which this Court may utilize to find that Plaintiff does not have standing. *Escobar Molina v. U.S. Dep't of Homeland Sec.*, No. CV 25-3417 (BAH), 2025 WL 3465518, at *17 (D.D.C. Dec. 2, 2025). *Id.* Such "interim orders" from the Supreme Court "inform how a court should exercise its equitable discretion in like cases." *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025). The Supreme Court's ruling in *Perdomo* thus supports concluding, in this "like case" that Plaintiff lacks Article III standing to seek prospective injunctive relief because he has not shown that he will likely be imminently unlawfully detained.

## II.    Plaintiff cannot meet the Preliminary Injunction success criterion.

Alternatively, should this Court find standing exists and turn to the merits, it should find that Plaintiff cannot establish a likelihood of success on the merits and irreparable harm. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) ("a preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to each of the four prerequisites"). In other words, "[a] preliminary injunction is an extraordinary remedy never awarded as of right. In each case, courts must balance the competing claims of injury and consider the effect of granting or withholding the requested relief, paying particular regard to the public consequences." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 367, 172 L. Ed. 2d 249 (2008).

### A.    Plaintiff is not likely to succeed on the merits of his claims because he does not have a reasonable expectation of privacy sufficient to establish standing.

Plaintiff is an employee whose mere presence at work does not provide him with a reasonable expectation of privacy. *United States v. Gutkin*, 707 F. Supp. 3d 168, 175–76 (D.P.R. 2023) (In some cases, an employee may have standing with respect to searches of corporate premises but they need to show at least some privacy interest such as ownership or possession). As such, he does not have Fourth Amendment standing sufficient to challenge government

19

action. *United States v. Guzman*, 710 F. Supp. 3d 996, 1002-03 (10th Cir. 2025) (Fourth Amendment 'standing' is 'useful shorthand,' but should not be confused with Article III standing."). In other words, he cannot succeed on the merits because he cannot challenge Federal Officials conducting general immigration enforcement on property that is either owned or controlled by Southern Home Crafters, D.R. Horton and/or Lennar. This is because he has not suffered "an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized"—meaning he cannot challenge a possible violation of the contractor and/or property owners rights. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

Instead of establishing Fourth Amendment violations, Plaintiff argues that "[i]mmigration officers need a warrant, consent, or an emergency to enter the non-public areas of private construction sites (e.g., areas posted with No Trespassing signs, fenced in, or enclosed). [Doc. 1, PageID.6, ¶6]. He attempts to support this argument by citing 8 C.F.R. § 287.8(f)(2) which states, in full, as follows:

> An immigration officer may not enter into the non-public areas of a business, a residence including the curtilage of such residence, or a farm or other outdoor agricultural operation, **except as provided in section 287(a)(3) of the Act**, for the purpose of questioning the occupants or employees concerning their right to be or remain in the United States unless the officer has either a warrant or the consent of the owner or other person in control of the site to be inspected. When consent to enter is given, the immigration officer must note on the officer's report that consent was given and, if possible, by whom consent was given. If the immigration officer is denied access to conduct a site inspection, a warrant may be obtained.

8 C.F.R. § 287.8(f)(2) (emphasis added). Ignoring that section 287(a)(3) of the Act, allows questioning concerning an individual's right to be or remain in the United States. 8 C.F.R. § 287(a)(3). Also, for Plaintiff to establish a reasonable expectation of privacy sufficient for merits based Fourth Amendment standing, he must meet the following test: "A person has a legitimate expectation of privacy if (1) he has a subjective expectation of privacy, and (2) society is

20

prepared to recognize that expectation as objectively reasonable." *United States v. Harris*, 526 F.3d 1334, 1338 (11th Cir. 2008). The movant has the burden to establish "a legitimate expectation of privacy in the area searched." *Id.*

"Only in limited circumstances may a worker claim Fourth Amendment protection over items and areas in her own workplace." *United States v. Hastie*, No. CR 14-00291-CG-N, 2015 WL 13309604, at *2 (S.D. Ala. Mar. 23, 2015) (citing *O'Connor v. Ortega*, 480 U.S. 709, 716–17 (1987)) (discussing expectations of privacy in a government office). Moreover, third-party standing claims are generally disfavored without "a strong identity of interests." *See Rover Pipeline LLC v. Zwick*, No. 22-3370, 2022 WL 17336502, at *4 (6th Cir. Nov. 30, 2022) (quoting *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 810 (11th Cir. 1993)) ("In cases allowing third-party standing, the relationship between the party asserting the right and the third party has been characterized by a strong identity of interests which is absent in an employer/employee relationship.")). Thus, expectations of privacy derive in part from the right to exclude others from the property, lawful possession, ownership, or control are important considerations in determining whether a defendant has a legitimate expectation of privacy in the item seized or the area searched. *United States v. Marchant*, 55 F.3d 509, 516-17 (10th Cir. 1995).

Plaintiff cannot establish that he has control, ownership, and/or an "identity of interests" with Southern Home Crafters, D.R. Horton and/or Lennar. The Supreme Court has held that "to claim Fourth Amendment protection, a defendant must demonstrate that he has a personal expectation of privacy in the place searched, and that his expectation is reasonable." *Minnesota v. Carter*, 525 U.S. 83, 83 (1998). The Court further found that individuals on commercial property have a reduced expectation of privacy than those in a home. *Id.*, at 84 (the Court considered "the

21

purely commercial nature of the transaction, the relatively short period of time that respondents were on the premises, and the lack of any previous connection between them and the householder all lead to the conclusion that their situation is closer to that of one simply permitted on the premises. Any search which may have occurred did not violate their Fourth Amendment rights."). Moreover, ICE HSI Mobile Special Agents are trained to follow ICE procedure for apprehensions of aliens present in the United States by using targeted and non-targeted investigations, conducting operations, and making arrests. [Doc. 44-1, PageID.472-473, ¶30]. Further, when agents encounter non-targeted individuals in the field, they are trained to develop reasonable suspicion prior to conducting an investigatory stop. *Id.*

Plaintiff claims further illuminate his lack of standing. He states that he is a concrete finisher [Doc. 1, PageID.8, ¶12] who works for a private contractor, Southern Home Crafters, LLC, at construction sites owned by D.R. Horton and Lennar, private developers. [Doc. 1, PageID.12, ¶¶33-36]. Plaintiff does assert that the construction sites are closed the public because are they are dangerous. [Doc. 1, PageID.12-13, ¶¶37-38]. However, he does not assert that he is a site manager or foreman. Further, he clarifies that rarely works in the same location for more than a few days, and frequently moved between subdivisions and construction sites to complete his specific work assignments. [Doc. 1, PageID.15, ¶55-56]. Plaintiff attempts to assert he has an "expect[ed]" right to "exclude" anyone from the worksite(s) based on the type of work he performs, his safety concerns, his experience and his communications with his crew and his supervisors which gives him "dominion or control that suits the nature of the property." [Doc. 1, PageID.15, ¶48-51]. However, he provides no documentation, declaration or support from Southern Home Crafters, D.R. Horton and/or Lennar showing that someone with authority has granted him express control over the worksite(s) sufficient to transfer the contractor and/or

22

property owners Fourth Amendment rights—to dispute the lawful nature of the general immigration enforcement—to Plaintiff.

The face of Plaintiff's complaint supports that he does not have standing to challenge the Federal Officials May and June general immigration enforcements of the Southern Home Crafters worksite owned by D.R. Horton and/or Lennar. Plaintiff asserts that he was performing work in an open undeveloped "partially built development." [Doc. 1, PageID.22, ¶¶117-120]. This undeveloped area is more like an "open field" than an office making his expectation of privacy at work even less reasonable. *Oliver v. United States*, 466 U.S. 170, 171, 104 S. Ct. 1735, 80 L. Ed. 2d 214 (1984) ("[b]ecause open fields are accessible to the public and the police in ways that a home, office, or commercial structure would not be, and because fences or 'No Trespassing' signs do not effectively bar the public from viewing open fields, the asserted expectation of privacy in open fields is not one that society recognizes as reasonable"); *see also Wright v. Watson,* 209 F. Supp. 3d 1344, 1361 (M.D. Ga. 2016), aff'd sub nom. *Wright v. Goodrich*, 685 F. App'x 731 (11th Cir. 2017), and aff'd, 739 F. App'x 981 (11th Cir. 2018) ("there is not the same expectation of privacy in 'open fields' as there is in one's house"). Furthermore, an 'open field,' includes unoccupied or undeveloped areas. *Id*.

Accordingly, Plaintiff does not have a recognized reasonable expectation of privacy while at work on multiple worksites—owned or controlled by Southern Home Crafters Worksite, D.R. Horton and/or Lennar—for relatively short times for the single express purpose of laying concrete. This Court should find Plaintiff did not have a reasonable expectation of privacy at the open, undeveloped worksites sufficient to establish standing to challenge the Federal Officials general immigration enforcement. Therefore, this Court should dismiss his Fourth Amendment claims in their entirety for lack of subject matter jurisdiction. *See Douglas v. U.S.*, 814 F.3d 1268,

1281 (11th Cir. 2016) (stating that if "the court determines at anytime that it lacks subject-matter jurisdiction, the court must dismiss the action").

### B.    Plaintiff is not likely to succeed on the merits of his claims because the Federal Defendants had reasonable suspicion to detain him.

This Court should find that Federal Officials likely[8] lawfully questioned Plaintiff about his immigration status and had reasonable suspicion to conduct a lawful detention. *See Kavanaugh, J., concurring in Noem v. Vasquez Perdomo*, No. 25A169, 2025 WL 2585637, at *3 (U.S. Sept. 8, 2025) (granting stay). (Citing *Brignoni-Ponce*, 422 U.S., at 880–882, 95 S.Ct. 2574) ("To stop an individual for brief questioning about immigration status, the Government must have reasonable suspicion that the individual is illegally present in the United States"). Every case involves a balance between the needs of officers to protect themselves, the public; and, the liberty interests of the individuals subject to seizure. *Maryland v. Wilson*, 519 U.S. 408, 413–14 (1997).

In *Wilson*, the Supreme Court concluded that an officer could detain a vehicle's passenger as well as its driver to preserve control over a situation and promote the officer's safety. *Id.* at 413–15. The Eleventh Circuit has cited and applied *Wilson* "for the more general proposition that an officer conducting a lawful stop or search may, in an appropriate setting, properly control the movements of persons at the scene in order to ensure officer safety." *United States v. Gibbs, 917 F.3d 1289, 1295 (11th Cir. 2019)*; *see also United States v. Lewis, 674 F.3d 1298, 1308 (11th Cir. 2012)* (recognizing that officers may "control the movements of nearby associates and exercise command over the situation once the officers had reasonable suspicion of criminal activity that warranted further investigation"). On this score, the Court has similarly reviewed a detention or

---

[8] The Federal Defendants maintain that the ICE Officials lawfully questioned Plaintiff about his immigration status and lawfully conducted a *Terry* stop. However, this Court need not make this finding on the merits and need only find that it is likely. Making it unlikely that Plaintiff will succeed on the merits of his claims.

24

stop for reasonableness based on the totality of the circumstances. *United States v. Clark*, 337 F.3d 1282, 1287–88 (11th Cir. 2003). Therefore, reasonable suspicion is a "fluid" concept that derives in significant part from the circumstances in which it applies. *Ornelas v. United States*, 517 U.S. 690, 696 (1996).

On May 21, the Federal Officials conducted a lawful general immigration enforcement investigation. [Doc. 44-1, PageID.467, ¶6]. After which, they initiated a brief investigative stop when Plaintiff attempted to interfere in an arrest. [Doc. 44-1, PageID.468, ¶11]. The Federal Officials reasonably believed Plaintiff was attempting to interfere in an arrest, threatening Officer Safety, and that he may be an alien. [Doc. 1, PageID.18-19, ¶¶77-89], [Exhibit B], [Doc. 44-1, PageID.469, ¶¶12-15]. Thus, this Court should find that these facts are similar to those in *Wilson* and that Plaintiff's brief detention was necessary to ensure Officer safety.

Similarly, while ICE has no record of the June 12 encounter, if this brief—no longer than thirty-minute police-citizen [Doc. 1, PageID.26, ¶152] encounter—occurred, then the Federal Defendants had a reasonable suspicion to detain him. [Doc. 44-1, PageID.469, ¶15]. This authority is rooted in the HSI Special Agents' training and experience and immigration authority. Kavanaugh, J., concurring in *Noem v. Vasquez Perdomo*, No. 25A169, 2025 WL 2585637, at *3 (U.S. Sept. 8, 2025) (granting stay) ("Importantly, reasonable suspicion means only that immigration officers may briefly stop the individual and inquire about immigration status. If the person is a U. S. citizen or otherwise lawfully in the United States, that individual will be free to go after the brief encounter. Only if the person is illegally in the United States may the stop lead to further immigration proceedings"). Thus, Plaintiff is not likely to succeed on the merits and this Court should deny his request for a Preliminary Injunction. The Federal Defendants conducted a lawful general immigration enforcement and lawful detention(s).

**C. Plaintiff will not suffer irreparable harm if this Court denies the preliminary injunction.**

This Court should not grant a preliminary injunction because Plaintiff is not likely to experience irreparable harm. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365, 375, 172 L. Ed. 2d 249 (2008) (the applicant must be likely to suffer irreparable harm and not "the possibility of some remote future injury"). In other words, a temporary restraining order requires showing imminent irreparable harm. *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) (citations and internal quotations omitted). Irreparable harm is an injury that "cannot be undone through monetary remedies." *Scott v. Roberts*, 612 F.3d 1279, 1295 (11th Cir. 2010). Intangible claims, like invasion of privacy, because of their nature fit within this category. *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990). The Eleventh Circuit, in denying a TRO request, has determined that "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough [to show irreparable harm]. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Id.* Further, a violation of constitutional rights, if any exists, does not automatically constitute irreparable harm. *See Siegel v. LePore*, 234 F.3d 1163, 1177 (11th Cir. 2000).

Plaintiff claims that he has and will continue to experience irreparable harm at work through HSI Special Agents conducting general immigration enforcement and questioning him about his alienage. [Doc. 30-1, PageID.228] ("being preemptively detained because he fits a DHS profile, and remaining detained even after he shows presumptive proof of his citizenship). He cites a Southern District of Florida case in an attempt to support his claims of irreparable injury. *Fla. Immigrant Coal. v. Uthmeier*, 778 F. Supp. 3d 1315, 1325 (S.D. Fla. 2025) (finding

26

the plaintiffs were threatened with state prosecution for crimes that conflicted with federal law making a TRO is necessary to mitigate the risk of irreparable harm). However, the media reports [Doc. 30-3, PageID.264-280],[9] and different Declarants irrelevant subjective feelings and speculations about actions occurring outside of this district that he stitches together are inadequate to establish imminent irreparable injury. A "real and immediate" threat is required for injunctive relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02, 103 S. Ct. 1660, 1665, 75 L. Ed. 2d 675 (1983) ("Abstract injury is not enough. The plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'").

The Ninth Circuit has recently considered the irreparable harm question in the context of ICE detention and found that "detention without a bond hearing before an immigration judge inherently causes irreparable harm." *Salvador v. Bondi*, No. 2:25-CV-07946-MRA-MAA, 2025 WL 2995055, at *8 (C.D. Cal. Sept. 2, 2025) ("Deprivation of physical liberty by detention constitutes irreparable harm."). While the Federal Defendants dispute this finding, here, in contrast Plaintiff has not been detained or arrested. Rather, Federal Officials briefly questioned him. [Doc. 1, PageID.21, ¶107]; [Doc. 1, PageID.26, ¶152]; and [Doc. 44-1, PageID.470, ¶19]. The Court should find that these brief encounters do not establish harm sufficient to warrant the extraordinary remedy of a preliminary injunction. Moreover, his claims that he may possibly suffer some remote future injury are insufficient to show irreparable harm. Thus, Plaintiff cannot meet this success criteria and this Court should deny his request for a Preliminary Injunction.

---

[9] Plaintiff's attempt to utilize his counsel as a witness violates Rule 3.7, and the Federal Defendants contest the admissibility of this evidence.

27

III.     **The balance of equities and public interest weigh in favor of denying the preliminary injunction.**

"The balance-of-the-harms and public interest elements merge when the government is the party opposing the injunctive relief." *Doe 1 v. Bondi*, 780 F. Supp. 3d 1277, 1283 (N.D. Ga. 2025) (citing *Swain v. Junior*, 961 F.3d 1276, 1293 (11th Cir. 2020)). The Federal Defendants are mindful that this Court must balance public interest demands to ensure effective measures to address the illegal entry of aliens against Plaintiff's Fourth Amendment rights. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S. Ct. 2574, 2579, 45 L. Ed. 2d 607 (1975). However, when Federal Officials conduct lawful general immigration enforcement that results in a brief stop—based on a reasonable suspicion [Doc. 44-1, PageID.468-470, ¶¶11-19]—that intrusion is modest. *Id.* Moreover, "[t]he National Government has significant power to regulate immigration." *See Arizona v. United States*, 567 U.S. 387, 416, 132 S. Ct. 2492, 2510, 183 L. Ed. 2d 351 (2012) ("the sound exercise of national power over immigration depends on the Nation's meeting its responsibility to base its laws on a political will informed by searching, thoughtful, rational civic discourse"). A district wide preliminary injunction will curtail Congressionally authorized Federal law enforcement of Executive Branch immigration policies, hinder lawful investigative searches, and chill routine field operations. Therefore, it is the Federal Defendants position that the potential damage to ICE which will be caused by this Court issuing a preliminary injunction far outweighs the possibility of some remote future injury to Plaintiff.

## Conclusion

The Federal Defendants respectfully seek dismissal of Plaintiff's claims in their entirety because he does not have sufficient standing. In the alternative, should the court find standing exists, the Federal Defendants request this court deny his request for Preliminary Injunction because he cannot meet the success criterion.

Respectfully submitted,

SEAN P. COSTELLO
UNITED STATES ATTORNEY

By: *s/Victoria O. Todd*
Victoria O. Todd
Assistant United States Attorney
63 S. Royal Street, Suite 600
Mobile, Alabama 36602

## CERTIFICATE OF SERVICE

I certify that, on December 11, 2025, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notice to all counsel of record.

*s/Victoria O. Todd*
Victoria O. Todd
Assistant United States Attorney

29