**IN THE UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **LEONARDO GARCIA VENEGAS,** | |
|      **Plaintiff,** | |
| **v.** | **Civil Action No. 1:25-cv-00397-JB-N** |
| **TOM HOMAN, White House Border Czar, in his official capacity; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. DEPARTMENT OF JUSTICE; KRISTI NOEM, Secretary of the DHS, in her official capacity; PAMELA BONDI, Attorney General, in her official capacity; STEVE SCHRANK, Special Agent in Charge of HSI's Atlanta Field Office, in his official capacity; SARA JONES, Special Agent in Charge of FBI's Mobile Office, in her official capacity; BRIAN ACUNA, Acting Director of ICE's New Orleans Field Office, in his official capacity; ADAM M. CALDERON, Chief Patrol Agent for CBP's New Orleans Sector, in his official capacity,** | |
|      **Defendants.** | |

**FEDERAL DEFENDANTS' OPPOSITION TO**
**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

The Federal Defendants respectfully submit this opposition to Plaintiff, Leonardo Garcia Venegas' Motion for Class Certification [Doc.31-1, PageID.377-402]. Plaintiff cannot certify a Warrantless Entry Class, Preemptive Detention Class, and Continued Detention Class because for each proposed class he cannot establish the requisite Fed. R. Civ. P. 23(a), class certification requirements of numerosity, commonality, typicality, and adequacy. Further, he cannot certify the

1

Fed. R. Civ. P. 23(b)(2) class certification showing that final injunctive relief or declaratory relief is appropriate for each proposed class, as follows:

## Statement of Facts

1.       On May 21, HSI Special Agents were conducting surveillance of various subdivision construction sites including the Lennar subdivision, located near 19428 County Road 10 in Foley, Alabama in response to information received—from the public and from aliens arrested during previous operations—that suggested aliens were potentially present in violation of immigration laws. [Doc. 44-1, PageID. 467, ¶6].

2.       The HSI Special Agents were wearing federal law enforcement identifying markings—patches with either POLICE, ICE, HSI, or Homeland Security Investigations—on the front and back of their vests. [Doc. 44-1, PageID.468, ¶7], and [Exhibit B].

3.       Before the HSI Special Agents exited their vehicles, they observed three individuals running away from the worksite. [Doc. 44-1, PageID.468, ¶8].

4.       As the HSI Special Agents exited their vehicles in pursuit of these three individuals, Agents heard whistles which based on their training, knowledge, and experience, indicate a warning signal to alert potential aliens that immigration enforcement officers are present in the area. When individuals respond to this warning by fleeing, immigration officers reasonably suspect that those fleeing are in the United States in violation of immigration laws. [Doc. 44-1, PageID.468, ¶9].

5.       The individuals who were running presented a safety risk—due to the dangerous nature of the construction site [Doc. 1, PageID.13-14, ¶¶38-41] and by running toward oncoming traffic—thus the HSI Special Agents gave chase to de-escalate. [Doc. 44-1, PageID.468, ¶10].

6.       Another HSI Special Agent approached an individual who remained at the

2

worksite, Carlos Garcia-Venegas, who did not understand the Agents questions. Therefore, an Enforcement and Removal Operations (ERO) Deportation Officer assisted by asking questions in the Spanish language. The ERO Deportation Officer began to apprehend this individual, and Plaintiff began to move quickly toward the arresting ERO Deportation Officer [Doc. 1, PageID.18-19, ¶¶77-89] and [Exhibit B]—potentially attempting to intervene in an ongoing apprehension—which posed a possible safety threat. [Doc. 44-1, PageID.468, ¶11].

7.      An HSI Special Agent moved between Plaintiff and the arresting ERO Deportation Officer. That Agent asked the Plaintiff for identification that Plaintiff refused to provide and became confrontational. [Doc. 44-1, PageID.469, ¶12].

8.      Plaintiff attempted to move around the HSI Special Agent, who instructed Plaintiff to stop. However, the Plaintiff instead quickened his pace, and circled the arresting ERO Deportation Officer. Plaintiff's actions caused the HSI Special Agent to be concerned for safety—due to the presence of a concrete pad with exposed rebar and other sharp objects in the area—and due to Plaintiff's refusal to comply with any commands given. [Doc. 44-1, PageID.469, ¶13] and [Exhibit B].

9.      Plaintiff, continued to refuse to comply with commands and stated for the first time in the encounter that he was a U.S. citizen. The HSI Special Agent stated that if Plaintiff could provide identification demonstrating his citizenship, he would be released. [Doc. 44-1, PageID.469, ¶14] and [Exhibit B].

10.      Plaintiff continued to use physical force against the HSI Special Agent by wrenching his arms and body, resisting law enforcement actions and creating a risk of bodily injury. The HSI Special Agent employed multiple deescalating control techniques to secure Plaintiff, ensure Plaintiff's safety, and to ensure officer safety. Plaintiff continued to resist and

was directed to the ground. Plaintiff was then handcuffed, with his hands restrained behind his back. Philip Lavoie Declaration [Doc. 44-1, PageID.469, ¶15] and [Exhibit B].

11.    After being detained, Plaintiff stated that he had identification in his pocket. He was then brought to stand by the government vehicles. A subsequent search of his pocket by the HSI Special Agent located Plaintiff's wallet, containing Plaintiff's REAL ID-compliant Alabama driver's license. The HSI Special Agent verified Plaintiff's U.S. citizenship. [Doc. 44-1, PageID.469-470, ¶16].

12.    Plaintiff agreed to communicate with law enforcement while the officers verified his U.S. citizenship. Plaintiff informed the HSI Special Agents that he knowingly transports aliens for Southern Home Crafters following his employers, Southern Home Crafters, direction and with the property owner's, D.R. Horton and Lennar, knowledge. [Doc.44-1, PageID.470 ¶17] and [Doc. 1, PageID.12, ¶¶33-36].

13.    After the HSI Special Agents verified Plaintiff's U.S. Citizenship, he was released. Plaintiff was handcuffed for approximately 18 minutes. Philip Lavoie Declaration [Doc. 44-1, PageID.470, ¶19].

14.    On June 12, 2025, ICE and other agencies conducted immigration enforcement at worksites, but HSI DHS ICE have not identified records of a June 12 encounter with Plaintiff. [Doc. 44-1, PageID.470-471, ¶22].

15.    The Federal Defendants have not enacted a Warrantless Entry Policy, Preemptive Detention Policy, or Continued Detention Policy. Philip Lavoie Declaration [Doc. 44-1, PageID.471, ¶23].

16.    ICE officers and agents are required to follow the relevant statutory authorities in enforcing immigration laws, preventing terrorism, and combating transnational criminal threats.

Philip Lavoie Declaration [Doc. 44-1, PageID.471, ¶24].

17.    Prior to engaging in investigative stops, commonly known as *Terry* stops, HSI agents are trained to have developed reasonable suspicion that the subject has committed or is committing a federal crime or federal immigration violation. This is a totality of the circumstances evaluation which includes the following, non-exhaustive, factors: information from intelligence sources, information from law enforcement and open-source databases, analysis of trends and patterns associated with immigration violations, previous encounters with undocumented individuals at a specific location or working for certain employers, and information provided by human sources. [Doc. 44-1, PageID.471, ¶25].

18.    Federal immigration officers have specialized expertise and practical knowledge of factors that are most indicative of immigration violations, illegal activity, and behaviors typically associated with unlawful presence. [Doc. 44-1, PageID.471, ¶26].

19.    ICE's policy requires immigration officers to follow the Constitution and all relevant statutes and regulations. HSI Special Agents receive extensive training on Fourth Amendment searches and seizures in addition to their practical field experience. [Doc. 44-1, PageID.472, ¶27].

20.    The trainings include annual Fourth Amendment and Immigration and Nationality Act (INA) trainings. Moreover, ICE HSI Mobile Special Agents receive Eleventh Circuit Court of Appeals-specific immigration enforcement training on the requirements of the Fourth Amendment, the statutory and regulatory provisions of the INA, and caselaw which also covers the requirements for warrantless arrests and investigatory stops under both Title 8 for immigration law violations and Title 18 for criminal violations, the requirements of having and documenting reasonable suspicion and/or probable cause. [Doc. 44-1, PageID.472, ¶28].

21.     ICE HSI Mobile Special Agents are trained that—under the Fourth Amendment, relevant statutes and regulations, and case law—a brief investigatory stop requires an immigration officer to have reasonable suspicion, based on specific, articulable facts, that the person questioned is an alien illegally present in the United States. [Doc. 44-1, PageID.472, ¶29].

22.     ICE HSI Mobile Special Agents are trained to follow ICE procedure for apprehensions of illegal aliens present in the United States by using targeted and non-targeted investigations, conducting operations, and making arrests. Investigations are developed by gathering information such as employment information; tips from communities or federal agencies; and evidence compiled in law enforcement systems, records and relevant databases. These investigations are designed to identify whether individuals are present in violation of immigration law. When non-targeted individuals are encountered during targeted operations or while agents are in the field, ICE HSI Mobile Special Agents are trained to develop reasonable suspicion prior to conducting an investigatory stop. Once U.S. citizenship is verified, ICE HSI Mobile Special Agents are trained to end the encounter—absent criminal and safety concerns. ICE HSI Mobile Special Agents identify themselves to the arrestee at the time of arrest/encounter or as soon as practicable when safe to do so. [Doc. 44-1, PageID.472-473, ¶30].

23.     ICE HSI Mobile Special Agents regularly receive training on investigatory stops and consensual encounters. They are trained to approach individuals and to identify themselves as immigration officers and ask questions to establish identity and citizenship status. [Doc. 44-1, PageID.473, ¶31].

24.     All agents who were present during the May encounter have attended Title 8 authority refresher training within the past year. [Doc. 44-1, PageID.473-474, ¶32].

25.     On September 30, Plaintiff filed his Complaint. [Doc. 1, PageID.1-89].

26.     On October 27, Plaintiff moved for class certification on the following classes:

a.      Warrantless Entry Class. All U.S. citizens and lawful residents in the Southern District of Alabama who, while working in non-public areas of private construction sites, have been or will be subject to the Warrantless Entry Policy.

b.      Preemptive Detention Class. All U.S. citizens and lawful residents in the Southern District of Alabama who, while working a construction job, have been or will be subject to the Preemptive Detention Policy.

c.      Continued Detention Class. All U.S. citizens and lawful residents in the Southern District of Alabama who, while working a construction job, have been or will be subject to the Continued Detention Policy. [Doc. 31-1, PageID.377-402].

**Legal Standard**

The class action "is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). To fall within this narrow exception, plaintiffs must "affirmatively demonstrate" their compliance with each element of Rule 23—"that is, [they] must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* at 350. This is not just a "mere pleading standard." *Wal-Mart*, 564 U.S. at 350. "[A]ctual, not presumed, conformance" with Rule 23 is "indispensable," *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 160 (1982), and certification is proper only if the Court is satisfied "after a rigorous analysis" that Plaintiffs have shown that each requirement of the rules has been met. *Wal-Mart Stores, Inc.*, 564 U.S. at 350-51.

A plaintiff seeking class certification bears the burden of satisfying all implicit and

explicit requirements of Federal Rule of Civil Procedure 23. *Vega v. T-Mobile USA. Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009); *see also Valley Drug Co. v. Geneva Pharmaceuticals, Inc.,* 350 F.3d 1181, 1187–88 (11th Cir. 2003) (holding that the burden of proof to establish the propriety of class certification rests with the advocate of the class, and the district court has an independent obligation to evaluate whether the requirements of Rule 23 have been met). Rule 23 implicitly requires that the "proposed class is adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (internal quotation marks omitted). A class is "clearly ascertainable" if its membership is "capable of being" determined. *Cherry v. Domestic Corp.*, 986 F.3d 1296, 1303 (11th Cir. 2021) (citing *Ascertain*, *Webster's New International Dictionary* (3d ed. 1993)).

Plaintiffs must also demonstrate each element of Rule 23(a) is met: (1) the class is so numerous that joinder is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the named Plaintiffs are typical of claims or defenses of the class ("typicality"); and (4) the named Plaintiffs and counsel will fairly and adequately protect the interests of the class ("adequacy of representation"). Fed. R. Civ. P. 23(a). In addition to meeting the requirements set forth in Rule 23(a), the proposed class must also qualify under one of the subsections of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Rule 23(b)(2) permits certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Further, "[t]he burden of proof to establish the propriety of class certification rests with the advocate of the class." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1187 (11th

Cir. 2003). Finally, while overall a district court's decision to grant class certification lies within its sound discretion, *Gulf Oil v. Bernard*, 452 U.S. 89, 100 (1981), the court must nevertheless conduct a "rigorous analysis" that "consider[s] the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied[ ]" *Vega*, 564 F.3d at 1266. Courts "should not determine the merits of a claim at the class certification stage," but may "consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Heffner v. Blue Cross & Blue Shield of Alabama, Inc.*, 443 F.3d 1330, 1337 (11th Cir. 2006); (quoting *Valley Drug Co. v. Geneva Pharm., Inc.,* 350 F.3d 1181, 1188 n. 15 (11th Cir.2003); *see also Telfair v. First Union Mortgage Corp.,* 216 F.3d 1333, 1343 (11th Cir.2000) ("It was within the court's discretion to consider the merits of the claims before their amenability to class certification.").

However, to certify "every class must present a named plaintiff who has standing to bring the claim. Every class must be 'adequately defined and clearly ascertainable. And every class must satisfy the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation.'" *AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.*, 938 F.3d 1170, 1174 (11th Cir. 2019) (quoting *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012)). Additionally, Plaintiff must show that the proposed class satisfies at least one of the three requirements listed in Fed. R. Civ. P. 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).  A proposed 23(b)(2) class requires the plaintiff to show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23.

**Argument**

9

The Court should deny Plaintiff's Motion for Class Certification because he fails to show that he, as the proposed class representative, has Article III standing. Additionally, Plaintiff fails to meet the burden of both the implicit and explicit requirements of Federal Rule of Civil Procedure 23. *Little v. T–Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir.2012) (certification under Fed. R. Civ. P. 23 is proper where the proposed classes satisfy an implicit ascertainability requirement, the four requirements listed in Rule 23(a), and the requirements listed in any of Rule 23(b)(1), (2), or (3)). Since Plaintiff cannot meet his burden, this Court should decline to certify each of the three proposed classes.

## I.     Plaintiff Lacks Standing

This Court should deny Plaintiff's motion because Plaintiff, the named Plaintiff, lacks standing.  *See Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) ("[I]t is well-settled that prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim."). Plaintiff cannot show a real and immediate risk of future injury—not merely past contact—to confer Article III standing for forward-looking relief. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412 (2013). To establish standing, a plaintiff must demonstrate (i) that he has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief. *FDA v. All. For Hippocratic Med.*, 602 U.S. 367, 380 (2024).

Rather than establish standing sufficient for Fed. R. Civ. P. 23 class certification, Plaintiff argues "all the proposed classes share common injuries (threat of unlawful raids, preemptive detentions, and continued detentions with a common [proposed] remedy (injunction). [Doc. 31-1,

10

PageID.390]. Plaintiff elaborates that the Federal Defendants are targeting "construction sites and workers in the Southern District of Alabama." [Doc. 31-1, PageID.382]. However, these arguments are insufficient to establish Article III standing. The Federal Defendants incorporate as if restated herein their standing arguments from Defendant's Opposition to Preliminary Injunction. [Doc. 46, PageID.484-500]. Plaintiff's speculation is not a real and immediate risk of future injury and is insufficient to establish Article III standing. This Court should dismiss his claims.

**II.     Plaintiff fails to satisfy the Fed. R. Civ. P. 23(a) requirements for each class that he is asking this Court to certify.**

Alternatively, should the Court find Plaintiff has standing, it should still deny his request for Class Certification because he cannot certify any of the three proposed classes. A party seeking certification "must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014) (emphasis in original). Plaintiff cannot meet this burden.

**A.      Plaintiff cannot satisfy that class membership is ascertainable.**

Plaintiff's proposed classes are not ascertainable. For a court to determine issues such as commonality or typicality, class membership must be ascertainable. *Rensel v. Centra Tech, Inc.*, 2 F.4th 1359, 1369 (11th Cir. 2021). "[A] proposed class is ascertainable if it is adequately defined such that its membership is capable of determination." *Cherry*, at 304. Here, Plaintiff's proposed classes initially fail because they reference unwritten and non-existent DHS policies.[1] [Doc. 44-1, PageID.471, ¶23]. However, even if the Court incorporates Plaintiff's policy

---

[1] Plaintiff defines each class as "[a]ll U.S. citizens and lawful residents in the Southern District of Alabama." (Mot. Doc 31-1, PageID.391). The term "lawful resident" is vague and undefined and could encompass a wide range of aliens with different conditions on presence and/or employment which would require additional fact-intensive inquiries.

definitions into the class definitions, the classes still fail because they are defined around amorphous categories related to "construction sites" and "construction jobs." On the face of his complaint, Plaintiff avers that he rarely works in the same location for more than a few days frequently moving between subdivisions and construction sites across Baldwin County. [Doc. 1, PageID.15, ¶¶55-56]. It appears that these varying locations are dramatically different in terms of their physical layout, access-control practices, ownership, privacy expectations, and legal exposure. [Doc. 30-2, PageID.236 ¶9] (noting some sites have signs, fences, and/or enclosed structures); [Doc. 30-2, PageID.239 ¶22] (construction site had sign and knee-high perimeter fence); [Doc. 30-2, PageID.243 ¶67] (construction site had walls, roof, windows, some doors, no siding or garage doors).

These variations make certifying each of the three classes around amorphous "construction site" categories impossible. A class definition must be "adequately defined" to permit the court to determine who is in the class. Here, Plaintiff's class definitions fail because they do not use objective criteria to establish membership with definite boundaries. *See In re Petrobras Sec.*, 862 F.3d 250, 269 (2d Cir. 2017). The proposed class definitions are too vague and indefinite because they include an undefined and immeasurable number of individuals whose membership status would, at a minimum, require individual inquiries under the Fourth Amendment. For instance, to determine the members of the proposed class, individualized fact finding hearings for *every single proposed class member* would be necessary to establish individuals facts. For instance, for the proposed warrantless entry class, such facts could include whether individuals were working in "non-public areas;" whether they were working at "private construction sites;" whether or not there was consent; whether or not there was a warrant; whether the lack of consent or warrant violated their Fourth Amendment rights. Likewise, for the

12

proposed preemptive detention and continued detention classes such facts could include whether individuals were working a "construction job;" whether they were located on "those construction sites;" whether they were detained without reasonable suspicion; and whether the detention violated their 4th Amendment rights.

This type of individualized fact-finding is inappropriate in the class context, especially in the case of a Rule 23(b) class, which requires common answers that can apply to the class as a whole. *See infra* Argument at F. Furthermore, Plaintiffs seek to lump together every type of construction worksite: open, unfenced lots; partially enclosed structures; multi-story commercial builds with layered security; residential sites with differing ownership; and federal, state, or privately controlled properties—all of which have materially different Fourth Amendment implications. *See Federal Defs.' Opp'n to Pl.'s Mot. for Prelim. Inj.* [Doc. 46, PageID.495-500]. Whether a construction site is public-facing or secured, whether it has controlled entry, whether workers are transitory or stable, and whether supervisors exercised consent are all highly site-specific questions that defeat any attempt to create a uniform "construction site" or "construction job" class.

The vagueness related to these site-specific questions is not just semantic, it is structural. The potential class turns on conditions that change from site to site, day to day, and even hour to hour. A site that is open to public access on Monday may be fenced and controlled on Wednesday. Workers may rotate, subcontractors may vary, and managerial authority to consent is fluid. A class definition that requires the Court to evaluate the "nature" of each worksite in real time is precisely the sort of indeterminate class the courts have rejected. *See Wallace v. VF Jeanswear Limited Partnership*, 2020 WL 999341, at *5 (N.D. Ala. Mar. 2, 2020) (finding the proposed class was not ascertainable when it was impermissibly broad and amorphous based on

13

plaintiff's failure to limit the temporal or geographic scope of the class). Plaintiffs' effort to treat all construction sites and jobs as equivalent ignores these factual distinctions that drive the legality of workplace entry. Because the proposed class cannot be determined without individualized, site-specific and job-specific adjudications, it is not adequately defined and not clearly ascertainable. Accordingly, this Court should find that Plaintiff cannot certify a Warrantless Entry Class, Preemptive Detention Class, and Continued Detention Class because he cannot prove that class membership is ascertainable.

### B.      Plaintiff cannot satisfy numerosity.

Plaintiff does not satisfy his burden of showing that the class is so numerous that it would make joinder impracticable. Fed. R. Civ. P. 23(a)(1).  The Supreme Court expressly stated that a party seeking class certification "must be prepared to prove that there are *in fact* sufficiently numerous parties...." *Wal-Mart*, 564 U.S. at 350 (emphasis in original). Mere allegations of numerosity are insufficient. *Vega v. T–Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009). Moreover, the Eleventh Circuit has held that "[g]enerally, less than twenty-one is inadequate, more than forty adequate." *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003) (quoting *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)). Parties seeking class certification do not need to know the "precise number of class members," but they "must make reasonable estimates with support as to the size of the proposed class." *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 699 (M.D. Fla. 2000).

While Plaintiff's precise class size is unknown, Plaintiff attempts to inflate his putative class through the declaration of his attorney, Joshua Windham[2] [Doc.30-3, PageID.268-269,

---

[2] The Federal Defendants dispute that this declaration can be reduced to admissible evidence because Plaintiff's attempt to utilize his counsel as a witness violates Rule 3.7. *See Pigott v. Sanibel Dev., LLC*, No. CIV.A. 07-0083-WS-C, 2007 WL 2713188, at *1 (S.D. Ala.

¶11], in which his counsel estimates that there are 33,150 Latino workers in the state of Alabama. In other words, counsel generally estimates that of all the lawful construction workers in the State of Alabama about 30% are Latino construction workers. *Id*. This Court should decline to consider this estimate as admissible evidence. However, regardless of whether the court considers this declaration, Plaintiff only presents one named class representative (himself) for all three proposed classes. He avers that he is aware of 15 raids, 17 including the two he experienced since January 2025. [Doc. 30-2, PageID.238]. Similarly, Plaintiff's counsel attempts to provide evidence of 21 raids as of September 17, 2025. [Doc. 30-3, PageID.266, ¶9]. Despite this, Plaintiff only alleges that he is aware of two other citizens being detained. [Doc. 30-2, PageID.246, ¶95]. His failure to identify additional class members from the 30% of construction workers and/or any of the individuals present during these other encounters belies his arguments that "there can be 'no doubt' that over 40 lawful construction workers fall into each proposed class." [Doc. 31-1, PageID.393]. Rather, Plaintiff shows that he cannot identify any individuals under these same facts all of whom would be entitled to the same uniform relief. His arguments establish that any proposed class members would require fact-intensive inquiries into whether or

---

Sept. 17, 2007) ("Rule 3.7(a) of the Alabama Rules of Professional Conduct, [] provides as follows: 'A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness, except where: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client.'"). This Court should decline to consider this as evidence to support his request for class certification because it is not apparent that this declaration "can be reduced to admissible, authenticated form at trial." *United States Aviation Underwriters, Inc. v. Yellow Freight Sys., Inc*., 296 F.Supp.2d 1322, 1334 (S.D. Ala. 2003). In considering whether evidence is sufficient to support summary judgment, the Eleventh Circuit has recognized that inadmissible evidence may be used only if there is no indication that the facts could not be reduced to admissible evidence at trial. *See, e.g.*, *Macuba v. Deboer*, 193 F.3d 1316, 1324 (11th Cir. 1999). The Federal Defendants contest the admissibility of this declaration and whether it provides relevant support for Plaintiff's request for class certification.

15

not every single general immigration enforcement and/or encounter and/or detention meets both the Fourth Amendment subjective and objective factors considered for protections and/or supported by reasonable suspicion. *See Federal Defs.' Opp'n to Pl.'s Mot. for Prelim. Inj.* [Doc. 46, PageID.495-501]. Such uncertainty and speculation cannot satisfy Rule 23(a)(1). Thus, this Court should find that Plaintiff's cannot meet his burden of proof to establish numerosity and cannot certify any of the three classes on this point.

### C.     Plaintiff cannot satisfy commonality.

Plaintiff's request for class certification fails to satisfy the commonality requirement. Rule 23(a)(2) requires that the proposed class's claims "depend upon a common contention…of such nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims made in one stroke." *Walmart*, 564 U.S. at 350. "Under the Rule 23(a)(2) commonality requirement, a class action must involve issues that are susceptible to class-wide proof." *Murray v. Auslander,* 244 F.3d 807, 811 (11th Cir.2001). Where a plaintiff alleges the defendant has engaged in a policy or practice that has "consistently and uniformly injured the putative class members, the plaintiff must provide 'significant proof' that such a policy or practice exists." *Parker v. Bank of Am., N.A.*, 99 F. Supp. 3d 69, 81 (D.D.C. 2015) (citing Walmart, 564 U.S. at 354).

Plaintiff falls short of meeting this standard. Rather, Plaintiff asserts Counts one through four on behalf of all the class members. The factual differences—fully articulated in the Federal Defendant's Opposition to Plaintiff's Preliminary Injunction [Doc. 46, PageID.495-500] preclude certification of each of the three classes related to unreasonable search and seizures and APA policy related claims because these issues required fact resolution that is not subject to class-wide proof. Plaintiff has not identified an official policy of warrantless raids and detentions

16

without reasonable suspicion. Defendant's declaration confirms that no policies are in place in the Southern District of Alabama. [Doc. 44-1, PageID.471, ¶23]. Rather, agents are trained to evaluate the totality of the circumstances and to develop facts supporting reasonable suspicion in each case. [Doc. 44-1, PageID.471, ¶24].

Additionally, Plaintiff fails to show that factual differences among putative class members are immaterial. Searches, questioning, and detentions can occur under varying circumstances, informed by the "totality of the circumstances" including intelligence, surveillance, and interagency tips. [Doc. 44-1, PageID.471-473, ¶23-31]. Plaintiff experienced two encounters under such varying circumstances. The differences between Plaintiff's two stops show diversity, not commonality.

### D.    Plaintiff cannot satisfy typicality.

Plaintiff does not suffer the same injury, nor does he have the same interest as the class(es) he requests this Court certify and allow him to represent. Typicality requires that the class representative must have the same interest and suffer the same injury as the class. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1275 (11th Cir. 2009). Typicality requires "a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). This nexus is established when "the claims or defenses of the class and the class representatives arise from the same ... pattern or practice and are based on the same legal theory." *Id. See also, Arnold v. State Farm Fire & Cas. Co.*, No. 2:17-CV-00148-TFM-C, 2020 WL 6879271, at *5 (S.D. Ala. Nov. 23, 2020). Plaintiff fails this test.

The 11th Circuit has distinguished the two concepts of commonality and typicality noting that, "[t]raditionally, commonality refers to the group characteristics of the class as a whole,

17

while typicality refers to the individual characteristics of the named plaintiff in relation to the class." *Piazza v. Ebsco Indus., Inc.,* 273 F.3d 1341, 1346 (11th Cir. 2001) (citing *Prado–Steiman ex rel. Prado v. Bush,* 221 F.3d 1266, 1279 (11th Cir. 2000)). Typicality is lacking when claims are dependent on the facts of each individual case. *See Romberio v. UnumProvident Corp.*, 385 F. App'x 423, 432 (6th Cir. 2009) (holding that class members – who worked in different jobs, had different skills, different impairments, and experienced different disability review procedures by different claim reps required individualized assessments therefore "[t]ypicality is thus lacking."); *see also Parke v, First Reliance Standard Life Ins*. Co., 368 F.3d 999 (8th Cir. 2004) (holding that plaintiff could not meet threshold typicality requirement when benefit decisions were dependent on the facts of each individual case.)

Plaintiff cannot establish a nexus between his two experiences let alone any searches and/or detentions amongst the proposed class members.  Searches, questioning, and detentions can occur under varying circumstances, informed by the "totality of the circumstances" including information from intelligence sources, previous encounters, and interagency tips. [Doc. 44-1, PageID. 471, ¶24]. Even if Plaintiff is able to show that he was subjected to an unlawful search and detention, individualized factual assessments would still be required for each class member to show their search and/or detention was also unlawful therefore defeating typicality.  Plaintiff has not presented any evidence that his experience is "typical" of the experience of the proposed class.

**F.    Plaintiff fails to satisfy the Rule 23(b)(2) requirements**

Certification under Rule 23(b)(2) is improper and independent grounds for denying Plaintiff's class certification motion. The Supreme Court has emphasized that "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each

18

member of the class." *Wal-Mart*, 564 U.S. at 360. The record underscores that the putative class sweeps across a wide array of circumstances, undermining any claim of commonality. For example, immigration encounters may be either a targeted or non-targeted investigation; warrantless arrests and investigative stops could occur under one or both Title 8 for immigration violations or Title 18 for criminal violations; and immigration officers conduct a number of consensual encounters in public places and worksites. [Doc. 44-1, PageId.472-473, ¶29, ¶30]

Putative class members will all have different facts that would likely place them in differing positions amongst themselves and the named Plaintiff. These divergent scenarios implicate distinct legal standards and factual predicates, making it impossible to resolve the claims "in one stroke." The variation amongst the alleged law enforcement encounters highlights the overbreadth of the class definition and demonstrates that individual circumstances, not class wide issues, would dominate the litigation. This lack of cohesion is fatal, because the alleged Fourth Amendment violations necessarily require individualized determinations. The Supreme Court has repeatedly stressed that reasonableness under the Fourth Amendment turns on "the totality of the circumstances" and "demand[s] specificity in the information upon which police action is predicated." *Terry v. Ohio*, 392 U.S. 1, 21 & n.18 (1968); *Ashcroft v. al-Kidd*, 563 U.S. 731, 736 (2011).

Additionally, reasonable suspicion assessment must be based on a "totality of the circumstances." *United States v. Clark*, 337 F.3d 1282, 1287-88 (11th Cir. 2003); *See also, Black Lives Matter L.A. v. City of Los Angeles*, 113 F.4th 1249, 1258-62 (9th Cir. 2024) (rejecting certification of a Fourth Amendment class because claims were too fact-specific and individualized); *Portis v. City of Chicago*, 613 F.3d 702, 705 (7th Cir. 2010) ("The premise of the class certification is that one rule applies to all members," but "[b]ecause [Fourth Amendment]

reasonableness is a standard rather than a rule, and because one detainee's circumstances differ from another's, common questions do not predominate and class certification is inappropriate.").

That defect confirms why Rule 23(b)(2) certification is improper here, where the proposed relief cannot resolve the diverse circumstances of stops, detentions, and encounters across seven counties in "one stroke." *Wal-Mart*, 564 U.S. at 350. Plaintiff cites *Fla. Immigrant Coal.*, in support of their 23(b)(2) arguments. 780 F. Supp. 3d 1235, 1269-70 (S.D. Fla. 2025). However, *Fla. Immigrant Coal.* dealt with class challenges to a state law that was likely preempted by federal immigration law governing noncitizen entry. *Id*. In contrast, here, Plaintiff contends the proposed classes share common injuries such as threat of unlawful raids, preemptive detentions, and continued detentions [Doc 31-1, PageID.399] without addressing the factual inquiries that go into warrantless searches and reasonable suspicion thus making it impossible for a court resolve the issues in one stroke. [Doc 31-1, PageID.399].

The Court cannot enter a single injunction resolving the reasonableness of diverse and fact-specific searches, encounters, and detentions involving different officers, circumstances, and locations. *See Shook v. Bd. of Cnty. Comm'rs*, 543 F.3d 597, 604 (10th Cir. 2008) (Rule 23(b)(2) class inappropriate where relief depends on "highly individualized determinations").

**Conclusion**

The Federal Defendants respectfully seek dismissal of Plaintiff's claims in their entirety because he does not have sufficient standing. In the alternative, should the court find standing exists, the Federal Defendants request this court deny his request for class certification because he cannot establish numerosity, commonality, typicality, and adequacy.

Respectfully submitted,

SEAN P. COSTELLO
UNITED STATES ATTORNEY

By:  *s/Nina Herring*
Nina Herring
Assistant United States Attorney
63 S. Royal Street, Suite 600
Mobile, Alabama 36602

## CERTIFICATE OF SERVICE

I certify that, on December 11, 2025, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notice to all counsel of record.

*s/Nina Herring*
Nina Herring
Assistant United States Attorney

21