# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## MOBILE DIVISION

| | |
|---|---|
| LEONARDO GARCIA VENEGAS,<br><br>*Plaintiff*,<br><br>v.<br><br>TOM HOMAN, WHITE HOUSE BORDER CZAR, IN HIS OFFICIAL CAPACITY, ET AL.,<br><br>*Defendants*. | Case No. 1:25-cv-397-JB-C |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF CLASS CERTIFICATION**

## TABLE OF CONTENTS

|  | Page |
|---|---|
| INTRODUCTION | 1 |
| ARGUMENT | 3 |
| I. The Court should fully certify all three proposed classes | 3 |
|     A. Defendants' ascertainability argument fails | 4 |
|     B. Defendants' numerosity argument fails | 6 |
|     C. Defendants' commonality argument fails | 8 |
|     D. Defendants' typicality argument fails | 10 |
|     E. Defendants' remedial argument fails | 11 |
| II. Alternatively, provisional certification is proper here | 14 |
| CONCLUSION | 14 |
| CERTIFICATE OF SERVICE | 16 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Black Lives Matter L.A. v. City of Los Angeles*,
   113 F.4th 1249 (9th Cir. 2024) .............................................................................. 13

*Braggs v. Dunn*,
   317 F.R.D. 634 (N.D. Ala. 2016) ..................................................................... 2, 4, 8

*Escobar Molina v. U.S. Dep't of Homeland Sec.*,
   No. CV 25-3417 (BAH), 2025 WL 3465518 (D.D.C. Dec. 2, 2025) ..... 2, 10, 11, 13, 14

*Fla. Immigrant Coal. v. Uthmeier*,
   780 F. Supp. 3d 1235 (S.D. Fla. 2025) ................................. 2, 4, 5, 10, 11, 12, 13, 14

*Floyd v. City of New York*,
   283 F.R.D. 153 (S.D.N.Y. 2012) ...................................................................... 2, 4, 5

*Gayle v. Meade*,
   614 F. Supp. 3d 1175 (S.D. Fla. 2020) ................................................................. 8, 9

*Holmes v. Cont'l Can Co.*,
   706 F.2d 1144 (11th Cir. 1983) .............................................................................. 11

*Kidd v. Mayorkas*,
   343 F.R.D. 428 (C.D. Cal. 2023) ............................................................. 2, 9, 10, 14

*Portis v. City of Chicago*,
   613 F.3d 702 (7th Cir. 2010) .................................................................................. 13

*United Farm Workers v. Noem*,
   785 F. Supp. 3d 672 (E.D. Cal. 2025) .................................................... 2, 10, 13, 14

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ................................................................................................ 11

**Codes and Statutes**

8 U.S.C. § 1357(a)(1) ............................................................................................... 8, 10

8 U.S.C. § 1357(a)(2) ............................................................................................... 9, 10

**Rules and Regulations**

8 C.F.R. § 287.8(a)(1) .................................................................................................. 10

8 C.F.R. § 287.8(b)(2) .............................................................................................. 8, 10

8 C.F.R. § 287.8(c)(2) ..................................................................................................... 9

8 C.F.R. § 287.8(f)(2) ............................................................................................... 8, 10

Fed. R. Civ. P. Rule 23 .................................................................... 1, 2, 3, 4, 8, 13, 14

Fed. R. Civ. P. Rule 23(a)(1) ..................................................................................... 6, 8

Fed. R. Civ. P. Rule 23(a)(2) ......................................................................................... 8

Fed. R. Civ. P. Rule 23(a)(3) ....................................................................................... 10

Fed. R. Civ. P. Rule 23(a)(4) ......................................................................................... 3

Fed. R. Civ. P. Rule 23(b)(2) .................................................... 2, 4, 5, 8, 9, 10, 11, 12, 13, 14

Fed. R. Civ. P. Rule 23(b)(3) ................................................................................... 4, 13

Fed. R. Civ. P. Rule 23(g) ............................................................................................. 3

Fed. R. Evid. 201(b)(2) ................................................................................................. 7

Alabama Rule of Professional Conduct 3.7(a) ............................................................. 7

**Other Authorities**

1 *McLaughlin on Class Actions* § 4:6 (22d ed.) ........................................................... 8

1 *McLaughlin on Class Actions* § 5:15 (22d ed.) ......................................................... 2

# INTRODUCTION

DHS has adopted three policies that threaten innocent construction workers in this District with unlawful searches and seizures. The Warrantless Entry Policy grants federal immigration officers the power to raid the non-public areas of construction sites without consent or a warrant. The Preemptive Detention Policy allows them to preemptively detain workers on those sites without particularized suspicion that they are violating any law. And the Continued Detention Policy allows them to continue detaining workers even after they have produced evidence of citizenship or lawful presence. *See* Pl.'s Br. Supp. PI (ECF No. 30-1) 8–15 (collecting evidence).[1]

Following these policies, Defendants have—without a warrant—searched privately marked and enclosed construction sites on which Plaintiff Leo was working, detained him without any reason to suspect that he was violating the law, and held him even after he showed his REAL ID. *Twice*. *See id.* at 3–6 (collecting evidence). And, after nearly a year of similar raids confirmed by local witnesses, news reports, and industry leaders, one thing is clear: Leo is the tip of the iceberg. These policies have cast a cloud of fear over the local construction industry—a cloud that has left even U.S. citizens and other lawful residents afraid to go to work, much less publicly criticize Defendants. *See id.* at 12–15 (collecting evidence). There's "hysteria in th[e] community." Windham Decl. (ECF No. 30-3) ¶ 10.

---

[1] Defendants dispute the existence of these policies, as well as Leo's standing to challenge them, in their preliminary injunction response, *see* Defs.' Br. Opp. PI (ECF No. 46) 14–19, and incorporate both arguments by reference in their class certification response, *see* Defs.' Br. Opp. Class Cert. (ECF No. 47) 10–11. Thus, Leo takes the same approach: He defends the policies' existence and his standing in his preliminary injunction reply, *see* Pl.'s Reply Supp. PI (ECF No. 48) 2–8, and incorporates those arguments by reference here. Below, Leo will focus on Defendants' arguments specific to class certification under Rule 23.

That broad threat to an entire population of construction workers makes this case a prime candidate for Rule 23(b)(2) class certification. *See* 1 *McLaughlin on Class Actions* § 5:15 (22d ed.) ("Rule 23(b)(2) was designed specifically for civil rights cases seeking broad declaratory or injunctive relief for a large group of persons."); *Braggs v. Dunn*, 317 F.R.D. 634, 667 (N.D. Ala. 2016) (Rule 23(b)(2) "has been liberally applied in the area of civil rights"). Defendants' main response—which they repeat throughout their brief—is that because the legality of a search or seizure turns on the facts of each case, there is no way to craft Rule 23-compliant classes nor effective class-wide injunctive relief. *See* Defs.' Br. Opp. Class Cert. (ECF No. 47) 12–13, 15–20. That is simply false.

Federal courts routinely certify Rule 23(b)(2) classes of people who are threatened by unlawful searches or seizures—including in challenges to immigration enforcement policies. *See, e.g., Escobar Molina v. U.S. Dep't of Homeland Sec.*, No. CV 25-3417 (BAH), 2025 WL 3465518, at *30, *36 (D.D.C. Dec. 2, 2025) (Rule 23(b)(2) class threatened by unlawful immigration arrest policy); *United Farm Workers v. Noem*, 785 F. Supp. 3d 672, 714, 730 (E.D. Cal. 2025) (Rule 23(b)(2) classes threatened by unlawful immigration stop and arrest policies); *Kidd v. Mayorkas*, 343 F.R.D. 428, 443 (C.D. Cal. 2023) (Rule 23(b)(2) classes threatened by unlawful immigration home search policy); *see also Fla. Immigrant Coal. v. Uthmeier*, 780 F. Supp. 3d 1235, 1270 (S.D. Fla. 2025) (Rule 23(b)(2) classes threatened by unlawful immigration arrest statutes).

So Defendants' core argument, that Rule 23(b)(2) certification is never proper in challenges to unlawful searches or seizures, falls flat. *See Floyd v. City of New York*, 283 F.R.D. 153, 170 (S.D.N.Y. 2012) (chiding city for "repeat[ing]" this argument "despite its

2

unsurprising lack of success over [four] decades"). What remains are scattered arguments that Leo's proposed Warrantless Entry, Preemptive Detention, and Continued Detention classes fail various Rule 23 requirements.[2] But, as shown below, these arguments fare no better. At bottom, all three proposed classes are well-suited for class certification because they define a broad yet discrete group of people threatened by specific unlawful conduct: warrantless raids, preemptive detentions, and continued detentions. The Court should fully certify the proposed classes—or, short of that, provisionally certify them for purposes of granting preliminary relief.

## ARGUMENT

**I.    The Court should fully certify all three proposed classes.**

Leo's proposed classes satisfy Rule 23. *See* Pl.'s Br. Supp. Class Cert. (ECF No. 31-1). As a reminder, Leo proposes three classes:

> *Warrantless Entry Class.* All U.S. citizens and lawful residents in this District who, while working in non-public areas of private construction sites, have been or will be subject to the Warrantless Entry Policy.
>
> *Preemptive Detention Class.* All U.S. citizens and lawful residents in this District who, while working a construction job, have been or will be subject to the Preemptive Detention Policy.
>
> *Continued Detention Class.* All U.S. citizens and lawful residents in this District who, while working a construction job, have been or will be subject to the Continued Detention Policy.

Defendants argue that these classes fail Rule 23's ascertainability, numerosity, typicality, commonality, and remedial requirements. Leo refutes each argument in turn.

---

[2] Defendants do not appear to dispute that Leo and his counsel would adequately represent the interests of the proposed classes as Rule 23(a)(4) & (g) require. *See* Pl.'s Br. Supp. Class Cert. (ECF No. 31-1) 15–19 (showing these elements are satisfied).

3

### A.     Defendants' ascertainability argument fails.

Nothing in the text of Rule 23 requires class "ascertainability." Courts often require it in Rule 23(b)(3) suits where courts must identify the individual class members in order to provide notice, allow opt-out, and distribute damages. *See Braggs*, 317 F.R.D. at 671–73 & n.54. But this implicit requirement is more relaxed—if it applies at all—in Rule 23(b)(2) suits that seek only injunctive relief. *See Fla. Immigrant Coal.*, 780 F. Supp. 3d at 1269 ("[C]ourts within the Eleventh Circuit have expressed 'serious reason to doubt that the judicially created ascertainability requirement applies to Rule 23(b)(2) classes.'" (quoting *Braggs*, 317 F.R.D. at 671)); *Floyd*, 283 F.R.D. at 172 ("It would be illogical to require precise ascertainability in a suit that seeks no class damages.").

Thus, to the extent ascertainability is required in Rule 23(b)(2) cases, the focus is merely on ensuring that the classes are defined to cover people who "face risks of future harm." *Fla. Immigrant Coal.*, 780 F. Supp. 3d at 1269. Leo's proposed classes meet that standard because they cover people who are threatened by each challenged policy: U.S. citizens and other lawful residents in this District who have been or will be subject to the Warrantless Entry policy on a construction site (Class 1) or to the Preemptive Detention and Continued Detention policies at a construction job (Classes 2–3). *See* Pl.'s Br. Supp. Class Cert. (ECF No. 31-1) 9–10.

Defendants say these classes are not ascertainable because the only way to know whether a person is subject to an illegal search or seizure is to hold "individualized fact finding hearings." Defs.' Br. Opp. Class Cert. (ECF No. 47) 12. But this "misperceive[s] what is required in a [Rule 23(b)(2)] case like this for classes to be deemed ascertainable."

*Fla. Immigrant Coal.*, 780 F. Supp. at 1269. The Court does not need to find every person who suffered an illegal search or seizure; it just needs to enjoin the challenged policies. If a search or seizure is justified on its facts (*e.g.*, there was a warrant for a raid, or a detainee was promptly released after showing his REAL ID), it would fall beyond the scope of the challenged policies. But that has no bearing on ascertainability. *See, e.g., id.* at 1269–70 (Rule 23(b)(2) classes subject to unlawful immigration arrests were ascertainable even though people "may have different immigration histories, which may qualify them for affirmative defenses"); *Floyd*, 283 F.R.D. at 170–72 (Rule 23(b)(2) class subject to unlawful racial stops was ascertainable even though "an individual inquiry must be made into the facts and circumstances surrounding each stop" (cleaned up)).

Defendants also say the class definitions are defective because they use the terms "lawful resident," "construction site," and "construction job," which Defendants malign as "undefined" and "amorphous." Defs.' Br. Opp. Class Cert. (ECF No. 47) 12–14 & n.1. But it's hard to see how Defendants could be confused about these terms. Whether a person is in the country "lawfully" is a pure question of immigration law—the very law Defendants enforce. Whether a site or a job involves "construction" is both a matter of common sense and something the federal government monitors. *See* Pl.'s Br. Supp. Class Cert. (ECF No. 31-1) 11–12. And it's clear that Defendants know what these terms mean because *their own officials use them*. *See, e.g.*, Lavoie Decl. (ECF No. 44-1) ¶ 30 (testifying that officers can "identify whether individuals are present in violation of immigration law" or are "lawfully present"), ¶ 10 (testifying about "the construction site"); Windham Decl. (ECF No. 30-3) ¶ 8 (quoting Defendant Schrank, a Special Agent in Charge for HSI, referring to

5

"construction jobs"). If these terms are clear enough for officials enforcing the challenged policies, they are clear enough to define classes of people subject to those policies.[3]

### B. Defendants' numerosity argument fails.

Leo's classes must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Defendants agree that classes with over 40 members would be big enough. Defs.' Br. Opp. Class Cert. (ECF No. 47) 14. They agree that Leo "does not need to know the precise number of class members." *Id.* (cite omitted). And they agree that Leo may "make reasonable estimates with support as to the size of the proposed class." *Id.* Leo did precisely that. He used facts and reasonable inferences to show that each proposed class easily exceeds 40 members. *See* Pl.'s Br. Supp. Class Cert. (ECF No. 31-1) 10–13. His basic points were:

- All three proposed classes are comprised of U.S. citizen and lawfully present construction workers who are threatened by the Warrantless Entry, Preemptive Detention, and Continued Detention policies in this District. *Id.* at 11.

- Publicly available data from the U.S. Bureau of Labor Statistics show that there are at least 33,150 lawful Latino construction workers in Alabama. *Id.* at 11–12.

- Defendants have been raiding construction sites in southern Alabama since at least February 2025 because the region is growing fast and offers "tremendous" opportunities for construction workers. *Id.* at 12.

- A typical residential development under construction—the target of Defendants' raids—is staffed by at least 35 workers collaboratively building homes. *Id.* at 12.

- Local construction industry leaders, business owners, and workers report they are afraid to go to work or to publicly identify themselves because Defendants' raids and detentions have targeted even lawfully present workers. *Id.* at 12–13.

---

[3] Leo explains why class-wide injunctive relief is proper in Section I(E) below.

6

Defendants do not dispute any of the facts Leo used to make these points. Indeed, even though Defendants presumably have detailed records of their raids—records they could use to contest Leo's description of the raids and their victims—Defendants offer no reports, facts, figures, data, or anything else that would suggest Leo misses the mark. Nor do they offer even a single witness who has actually participated in, or even observed, any of these raids.

Instead, Defendants dismiss Leo's reliance on U.S. Bureau of Labor Statistics data as an "attempt[] to inflate his putative class through the declaration of his attorney, Joshua Windham," which they argue cannot be considered under Alabama Rule of Professional Conduct 3.7(a). Defs.' Br. Opp. Class Cert. (ECF No. 47) 14–15 & n.2. But Rule 3.7(a) bars attorney testimony only where "the lawyer is likely to be a necessary witness," and even then, does not apply where "the testimony relates to an uncontested issue." Ala. R. Prof'l Conduct 3.7(a). Defendants fail on both scores: Mr. Windham is not a necessary witness because his declaration merely recounts publicly available federal data subject to judicial notice under Fed. R. Evid. 201(b)(2) or which could be offered in other forms at trial, and because Defendants do not contest the data anyway. So Rule 3.7(a) does not apply.

Defendants also dispute numerosity because Leo has personally witnessed only two other lawfully present construction workers (besides himself) detained during raids. Defs.' Br. Opp. Class Cert. (ECF No. 47) 15.[4] But Leo is not required to personally know every

---

[4] Defendants ignore that Leo also submitted the declaration of Jorge Estrada, another U.S. citizen construction worker whom Defendants detained during a raid. Estrada Decl. (ECF No. 30-4) ¶¶ 1–2, 19–21. Mr. Estrada testified that he knows of at least three other lawfully present construction workers who were detained on that same site. *Id.* ¶ 29.

7

past or future victim—out of the 33,150 lawful Latino construction workers in Alabama—of the challenged policies. That would defeat the point of Rule 23(b)(2), which protects civil-rights classes "whose members are incapable of specific enumeration." *Braggs*, 317 F.R.D. at 672 (emphasis omitted) (quoting advisory committee note); *see also* 1 *McLaughlin on Class Actions* § 4:6 (22d ed.) (observing that "cases seeking equitable relief, particularly in the civil rights context, [often involve] future and unknown individuals [who] cannot be reasonably identified but would benefit from equitable relief"). If anything, the fact that Leo doesn't personally know every victim of the challenged policies just underscores that each "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Defendants' numerosity arguments fail.

    **C.**     **Defendants' commonality argument fails.**

Rule 23 also requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Only one common question is required to certify a class so long as that question is "apt to drive the resolution of the litigation." *Gayle v. Meade*, 614 F. Supp. 3d 1175, 1197 (S.D. Fla. 2020) (cite omitted). Leo identified four key questions common to each class:

    *Warrantless Entry Class*

        (1) Has DHS adopted the Warrantless Entry Policy?
        (2) Does that policy violate the Fourth Amendment?
        (3) Does that policy exceed 8 C.F.R. § 287.8(f)(2)?
        (4) Are the class members subject to that policy?

    *Preemptive Detention Class*

        (1) Has DHS adopted the Preemptive Detention Policy?
        (2) Does that policy violate the Fourth Amendment?
        (3) Does that policy exceed 8 U.S.C. § 1357(a)(1) and 8 C.F.R. § 287.8(b)(2)?
        (4) Are the class members subject to that policy?

*Continued Detention Class*

    (1) Has DHS adopted the Continued Detention Policy?
    (2) Does that policy violate the Fourth Amendment?
    (3) Does that policy exceed 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)?
    (4) Are the class members subject to that policy?

Pl.'s Br. Supp. Class Cert. (ECF No. 31-1) 14. Because these questions are all central to the merits, answering any of them on a class-wide basis would drive the outcome of this case.

In response, Defendants parrot their ascertainability argument: that assessing the validity of any immigration search or seizure "require[s] fact resolution that is not subject to class-wide proof." Defs.' Br. Opp. Class Cert. (ECF No. 47) 16. But that doesn't defeat commonality. For starters, it doesn't address Question 1 for each class—whether DHS has adopted the challenged policy at all. Defendants *themselves* propose a common answer to this question for each class: "no policies are in place in the Southern District of Alabama." *Id.* at 17. Leo, of course, disagrees with that statement. *See* Pl.'s Reply Supp. PI (ECF No. 48) 2–6. But that disagreement is why it makes sense to resolve Question 1 on a class-wide basis. *See Kidd*, 343 F.R.D. at 439 (ICE's defense of search policy "only emphasize[d] the existence of common issues appropriate for classwide resolution"). Defendants have no answer, which alone is enough to reject their argument.

As for Questions 2–4, Defendants cite no case refusing to certify a Rule 23(b)(2) class in a challenge to an unlawful policy solely on the ground that each case has its own facts. Nor could they, because marginal "factual differences between the class members['] claims" do not affect commonality when a policy inflicts the same global harm. *Gayle*, 614 F. Supp. at 1197–98 (class raised common issues in challenge to ICE detention policies even though facilities and inmates all had slightly different conditions). No surprise then

that federal courts have recently rejected this exact argument in Rule 23(b)(2) challenges to immigration enforcement policies. *See, e.g.*, *Escobar Molina*, 2025 WL 3465518, at *33–34 (rejecting argument that "fact-specific and individualized" nature of arrests defeated commonality in challenge to unlawful immigration arrest policy); *United Farm Workers*, 785 F. Supp. at 717–25 (rejecting argument that "fact-specific and individualized" nature of stops and arrests defeated commonality in challenge to unlawful immigration stop and arrest policies). Defendants' commonality argument lacks merit.

### D.   Defendants' typicality argument fails.

Leo's claims must also be "typical of the claims . . . of the class[es]." Fed. R. Civ. P. 23(a)(3). In a Rule 23(b)(2) challenge to unlawful policies, typicality involves "a short, straightforward analysis": A plaintiff's "claims are typical" when they "challenge the same policies and practices under the same constitutional provisions as other class members." *Kidd*, 343 F.R.D. at 439 (cleaned up); *accord Fla. Immigrant Coal.*, 780 F. Supp. 3d at 1267. Leo passes that test because he was subjected to the same Warrantless Entry, Preemptive Detention, and Continued Detention policies, and challenges those policies under the same constitutional provision (Fourth Amendment), statutes (8 U.S.C. § 1357(a)(1), (a)(2)), and regulations (8 C.F.R. § 287.8(a)(1), (b)(2), (f)(2)), as the putative class members. *See* Compl. (ECF No. 1) ¶¶ 266–373 (describing claims).

Defendants rejoin that Leo's claims are inherently different from those of the class members because—yet again—searches and seizures "are dependent on the facts of each individual case." Def.'s Br. Opp. Class Cert. (ECF No. 47) 18. But this response, which merely "repackage[s]" their prior arguments, "again misunderstands the purpose of the

10

requirement." *Fla. Immigrant Coal.*, 780 F. Supp. 3d at 1267. "Typicality ensures that . . . 'the interests of the class members will be fairly and adequately protected in their absence.'" *Id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n.5 (2011)). A plaintiff who seeks to enjoin unlawful policies necessarily protects everybody threatened by those policies—even though other people may not be threatened by the policies at all and would therefore not belong to the proposed classes. *See, e.g., Fla. Immigrant Coal.*, 780 F. Supp. at 1269 (fact that some people "may have different immigration histories, which may qualify them for affirmative defenses" did not defeat typicality in challenge to unlawful arrest statutes); *Escobar Molina*, 2025 WL 3465518, at *33–34 (fact that some officers might have probable cause to believe that a suspected immigrant is a flight risk did not defeat typicality in challenge to unlawful arrests). So too here.[5]

### E. Defendants' remedial argument fails.

The last disputed requirement is that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). "The critical inquiry is whether the class members have suffered a common injury that may properly be addressed by class-wide injunctive or equitable relief." *Fla. Immigrant Coal.*, 780 F. Supp. 3d at 1268 (citing, in part, *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1155 (11th Cir. 1983)). This rule "has been liberally applied in the area of civil

---

[5] Defendants also assert Leo can't establish typicality because he "does not suffer the same injury . . . as the class(es)." Def.'s Br. Opp. Class Cert. (ECF No. 47) 17. But that's just an argument about standing, which both Defendants and Leo incorporate by reference to their respective preliminary injunction briefs. For Leo's full response to this point, *see* Pl.'s Reply Supp. PI (ECF No. 48) 6–8.

11

rights" and is "almost automatically satisfied in actions primarily seeking injunctive relief" against the government. *Fla. Immigrant Coal.*, 780 F. Supp. 3d at 1268 (cite omitted).

Defendants breeze past the strong presumption that Rule 23(b)(2) is met in cases like this and—for a final time—lean on the fact that immigration raids and detentions in this District "sweep[] across a wide array of circumstances" (*e.g.*, targeted versus non-targeted, consensual versus non-consensual, public versus private). Defs.' Br. Opp. Class Cert. (ECF No. 47) 19. But Leo challenges only *unlawful* policies: warrantless searches of the non-public areas of construction sites, preemptive detentions of construction workers without particularized suspicion, and continued detentions of construction workers who have shown presumptive evidence of citizenship or lawful presence. *See* Pl.'s Br. Supp. PI (ECF No. 30-1) 17–30. And the proposed classes are limited to people *subjected to* those unlawful policies. *Supra* p. 3. Enjoining the policies would therefore protect everybody in the proposed classes—including Leo[6]—in one efficient stroke. *See id.* at 3–6 (showing Leo was twice subjected to all three policies).

By the same token, the possibility that Defendants may *sometimes* conduct lawful searches and seizures beyond the scope of the challenged policies is irrelevant. Perhaps Defendants obtain warrants for *some* immigration raids. Perhaps they raid the public areas of *some* construction sites. Perhaps they develop particularized suspicion to detain *some* workers. Perhaps they release *some* workers after they show proof of citizenship or lawful presence. But even if they do—and Defendants have not come close to showing it—none

---

[6] Of course, Leo still seeks and is personally entitled to injunctive relief no matter how this Court resolves the class-certification issue. *See* Pl.'s Br. Supp. PI (ECF No. 30-1).

12

of that would bar classwide injunctive relief for people who *are* subject to the unlawful policies. Which, again, is why federal courts have recently certified Rule 23(b)(2) classes in cases just like this. *See, e.g., Escobar Molina*, 2025 WL 3465518, at *35 (challenge to unlawful immigration arrest policy); *United Farm Workers*, 785 F. Supp. at 730 (challenge to unlawful immigration stop and arrest policies). Defendants, many of whose agencies and officials were involved in *Escobar Molina* and *United Farm Workers*, fail to distinguish (or even cite) these recent decisions.

And the only two Fourth Amendment cases they cite are inapposite. *See* Defs.' Br. Opp. Class Cert. (ECF No. 47) 19 (citing *Black Lives Matter L.A. v. City of Los Angeles*, 113 F.4th 1249 (9th Cir. 2024), and *Portis v. City of Chicago*, 613 F.3d 702 (7th Cir. 2010)). First, *Black Lives Matter* did not "reject[]" class certification as Defendants say (at 19). It remanded for the trial court to "fully address Rule 23's requirements." 113 F.4th at 1254. Second, the part of *Black Lives Matter* that Defendants say rejected a Fourth Amendment class as "too fact-specific" was about damages under Rule 23(b)(3), not injunctive relief under Rule 23(b)(2). 113 F.4th at 1258–62. But again, class-actions for injunctive relief are "inherently different from those formed to seek backward-looking damages" because, unlike with damages, "a[n] [injunctive] remedy obtained by one member will naturally affect the others." *Fla. Immigrant Coal.*, 780 F. Supp. 3d at 1269 (cite omitted). Third, *Portis* was also a damages case, and even worse for Defendants, left open "the possibility" that a different Fourth Amendment class action might be proper where "a policy could be ended by an injunction." 613 F.3d at 705–06. Far from helping Defendants, then, these cases support Leo's point that Rule 23(b)(2) is the ideal vehicle for suits to enjoin unlawful

13

search and seizure polices. *Kidd*, 343 F.R.D. at 440 (certifying Rule 23(b)(2) classes in challenge to "ICE['s] . . . systemwide [search] policies or practices").

## II. Alternatively, provisional certification is proper here.

To the extent the Court finds that any of the Rule 23 elements are a close call for any proposed class, the Court should err on the side of certification—at least for purposes of granting preliminary relief. "A district court may provisionally certify a class for purposes of a preliminary injunction." *Fla. Immigrant Coal.*, 780 F. Supp. 3d at 1252 (cleaned up). Because provisional certification is a flexible tool that allows courts to revisit the classes later on a more fully developed record, courts often grant provisional certification in fast-moving challenges to immigration enforcement policies. *See, e.g.*, at 1270 (provisionally certifying classes threatened by immigration arrest statutes); *Escobar Molina*, 2025 WL 3465518, at *36 (provisionally certifying class threatened by immigration arrest policy); *United Farm Workers*, 785 F. Supp. at 731 (provisionally certifying classes threatened by immigration stop and arrest policies). If the Court has any doubt about fully certifying Leo's proposed classes, it should follow these other courts and provisionally certify them.

## CONCLUSION

Defendants' arguments against class certification fail. The Court should fully certify each of the proposed classes. Alternatively, the Court should provisionally certify the proposed classes for purposes of granting preliminary relief.

Dated: December 18, 2025.	Respectfully submitted,

*/s/ Jared McClain*
Jared McClain (DC Bar No. 1720062)*
Jaba Tsitsuashvili (DC Bar No. 1601246)*
Joshua Windham (NC Bar No. 51071)*
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
(703) 682-9320
jmcclain@ij.org
*Admitted Pro Hac Vice*

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing PLAINTIFF'S REPLY BRIEF IN SUPPORT OF CLASS CERTIFICATION with the Clerk of Court using the CM/ECF system, which will provide electronic service upon all attorneys of record.

/s/ Jared McClain
Jared McClain (DC Bar No. 1720062)