## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

**LEONARDO GARCIA VENEGAS,**

     **Plaintiff,**

**v.**

**TOM HOMAN, et al.,**

     **Defendants.**

**Civil Action No. 1:25-cv-00397-JB-N**

## FEDERAL DEFENDANTS' PARTIAL
## MOTION TO DISMISS PLAINTIFF'S APA CLAIMS
## [FED. R. CIV. P. 12(b)(1) and 12(b)(6)]

This Court should dismiss Plaintiff, Leonardo Garcia Venegas' Administrative Procedure Act (APA) claims, Counts II through IV [Doc. 1, PageID.60-70, ¶¶302-373], seeking injunctive and declaratory relief against three non-existent Department of Homeland Security (DHS) policies for lack of standing, jurisdiction, Fed. R. Civ. P. 12(b)(1), and for his failure to state a claim on which this Court can grant relief, Fed. R. Civ. P. 12(b)(6), as follows:

### Introduction

Plaintiff fails to challenge an APA reviewable final agency decision. Rather, he argues that DHS' implementation of the President's immigration-related policy objectives has led to DHS adopting three unlawful policies. In other words, he alleges that DHS has implemented the following three policies targeting the construction industry that allow federal immigration officers to violate Plaintiff's Fourth Amendment rights during immigration enforcement operations: 1) warrantless entry policy; 2) preemptive (or suspicionless) detention policy; and 3) continued detention policy. [Doc. 1, PageID.36-42 ¶¶200-243]. However, these policies do not

exist. Rather, immigration officers are trained to follow the Immigration and Nationality Act (INA) and the Fourth Amendment when enforcing immigration laws. [Doc. 44-1, PageID.471 ¶¶23-32].

Plaintiff cannot overcome his failure to identify a DHS final agency decision by styling his APA claims as challenges to DHS' implementation of the President's immigration-related policy objectives. *See* [Doc. 1, PageID.29 ¶167; 31 ¶174; 33 ¶184]. Plaintiff is effectively asking this Court to improperly utilize the APA to obtain declaratory and injunctive relief to limit statutorily authorized law enforcement actions. Despite Plaintiff's contentions, a plain reading of his complaint shows that his allegations are based, not on DHS final agency decisions, but on the field-level decisions made by individual immigration officers. *See* [Doc. 1, PageID.8 ¶12; 11 ¶24; 12 ¶34; 16-26 ¶¶63-152]. In other words, he is attempting to use the APA to challenge officers' ability to utilize their training and experience in the field to determine whether the totality of the circumstances justify an investigative detention, or *Terry*[1] stop, during their general immigration enforcement activities. Plaintiff should not be allowed to bring these APA claims and requested injunctive relief. [Doc. 30-1, PageID.194-233].

Plaintiff's APA claims—attempting to challenge DHS's on-the-ground decision-making—fail to identify a final agency action sufficient to state a reviewable APA claim. This Court should decline to apply the APA to review individual DHS Agents' operational assessments and, instead dismiss them for his failure to state a claim. Alternatively, should the Court decline to dismiss Plaintiff's APA claims, it should dismiss all federal agencies, aside from

---

[1] To determine "whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry v. Ohio*, 392 U.S. 1, 27 (1968).

DHS, because Plaintiff is only challenging purported DHS policies and is not asserting that he challenges policies enacted by any of the other named federal agencies.

## Factual Background

1.      On September 30, 2025, Plaintiff filed his Complaint. [Doc. 1, PageID.1-89].

2.      Plaintiff alleges pecuniary loss and requests punitive damages. [*Id*., at PageID.55, ¶¶264-265].

3.      Plaintiff alleges Fourth Amendment violations and injunctive claims in Count I against the Official Capacity Defendants. [*Id*., at PageID.55, header].

4.      Count I alleges that all official capacity defendants violated Plaintiff's Fourth Amendment rights. [*Id*., at PageID.55-60, ¶¶266-301].

5.      Count I alleges Fourth Amendment violations, subject to injunctive relief, by arguing that "DHS has adopted—and immigration officers are enforcing—three search-and-seizure policies for construction sites that exceed the agencies' and officers' constitutional, statutory, and regulatory authority." [*Id*., at PageID.27, ¶154; and, PageID.57, ¶282].

6.      Count I identifies these alleged policies as the "Warrantless Entry," "Preemptive Detention," and "Continued Detention" policies and argues that the United States has authorized Federal Agents to take the following alleged actions:

A.      "enter private construction sites without a warrant, consent, or exigency," [*Id*., at ¶283];

B.      "preemptively detain anyone who fits a demographic profile that DHS associates with undocumented immigrants without reasonable suspicion that the particular employers or workers on that site have violated immigration laws[,]" [*Id*., at PageID.58, ¶289]; and,

    C.    "detain people suspected of being in the country unlawfully even after the person offers evidence of citizenship or legal status." [*Id.*, at PageID.59, ¶293].

7.    Plaintiff filed his Motion for Preliminary Injunction on Counts I, II, and IV of his Complaint. [Doc. 30-1, PageID.194-233].

8.    The Federal Defendants opposed Plaintiff's Motion for Preliminary Injunction and his Count I, Fourth Amendment Injunctive claims, Count II, Fourth Amendment Administrative Procedure Act claims, and Count IV, Lawful Procedure Administrative Procedure Act claims. [Doc. 46, PageID.477-505].

9.    Plaintiff alleges Administrative Procedure Act (APA) claims, Counts II, III, IV, against the Defendant Agencies and the United States of America. [Doc. 1, PageID.60, header].

10.    Counts II, III and IV challenge alleged DHS policies that purportedly violate the Fourth Amendment and the APA. [*Id.*, at PageID.60-70, ¶¶302-373].

11.    Specifically, the Plaintiff alleges three DHS policies violate the APA: 1) Warrantless Entry Policy; 2) Preemptive Detention Policy; and 3) Continued Detention Policy.

12.    DHS training and policy requires immigration officers to follow the Constitution, the INA, and applicable regulations when conducting immigration enforcement activities, including when making their individual totality of the circumstances reasonable suspicion determinations. [Doc. 44-1, PageID.466-474, ¶¶23-27].

13.    Counts V-VIII seek relief against three individual capacity defendants[2] respectively for assault, battery, and false imprisonment related to the encounter that occurred on May 21, 2025 (the May encounter), under the Westfall Act and Alabama tort law. [Doc. 1,

---

[2] As of January 23, these three individuals are represented by the United States Attorney's Office for the Southern District of Alabama. Undersigned has provided counsel for the Plaintiff with their names. However, to date, is not authorized to waive service per Fed. R. Civ. P. 4(i)(3).

PageID.70-78, ¶¶374-421].

14.     Count IX seeks damages against three individual capacity defendants related to the May Encounter under *Bivens* and the Westfall Act, and does not include an attempted FTCA claim. [*Id*., at PageID.78-80, ¶¶422-433].

15.     Counts X-XII seek relief against two individual capacity defendants respectively for assault, false arrest and false imprisonment related to an alleged encounter that occurred on June 12, 2025 (the June encounter), under the Westfall Act and Alabama tort law. [*Id*., at PageID.80-86, ¶¶434-468].

16.     Count XIII seeks damages against two individual capacity defendants related to the June encounter under *Bivens* and the Westfall Act, and does not include an attempted FTCA claim. [*Id*., at PageID.86-87, ¶¶469-479].

17.     Plaintiffs Counts V-VIII and X-XII also attempt to assert placeholder FTCA claims against the United States for the May and June encounters. [*Id*., at PageID.70-78, 80-86 ¶¶374-421, 434-468].

18.     On January 29, 2026, the United States filed it's Partial Motion to Dismiss Plaintiff's Placeholder FTCA Claims asserted in Counts V-VIII and X-XII. [Doc. 55, PageID.629-641].

19.     DHS has not enacted a Warrantless Entry Policy, Preemptive Detention Policy, or Continued Detention Policy as alleged in the complaint. [Doc. 44-1, PageID.471, ¶23].

20.     DHS officers and agents are required to follow relevant statutory authorities in enforcing immigration laws, preventing terrorism, and combating transnational criminal threats. [*Id*., at PageID.471, ¶24].

21.     Prior to engaging in investigative stops, commonly known as *Terry* stops,

Homeland Security Investigations (HSI) agents are trained to have developed reasonable suspicion based on a totality of the circumstances. [*Id.*, at PageID.471, ¶25].

22.    Immigration and Customs Enforcement (ICE) policy requires immigration officers to follow the Constitution and all relevant statutes and regulations. HSI Special Agents receive extensive training on Fourth Amendment searches and seizures in addition to their practical field experience. [*Id.*, at PageID.472, ¶27].

23.    ICE HSI Mobile Special Agents are trained that—under the Fourth Amendment, relevant statutes and regulations, and case law—a brief investigatory stop requires an immigration officer to have reasonable suspicion, based on specific, articulable facts, that the person questioned is an alien. [*Id.*, at PageID.472, ¶29].

24.    ICE HSI Mobile Special Agents are trained to follow ICE procedure for apprehensions of aliens present in the United States who are subject to immigration enforcement action by using targeted and non-targeted investigations, conducting operations, and making arrests. Investigations are developed by gathering information, such as: employment information; tips from communities or federal agencies; and, evidence compiled in law enforcement systems, records, and relevant databases.

25.    All HSI Special Agents who were present during the May encounter have attended Title 8 authority refresher training within the past year. [*Id.*, at PageID.473-474, ¶32].

**Standards of Review**

I.    **Fed. R. Civ. P. 12(b)(1)**

With respect to jurisdiction, this Court should dismiss a claim if it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Generally, "[t]he burden for establishing federal subject matter jurisdiction rests with the party bringing the claim." *Sweet Pea Marine, Ltd. v. APJ*

*Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005). If the Court lacks subject matter jurisdiction, the claim must be dismissed. Fed. R. Civ. P. 12(h)(3). An attack on jurisdiction may be either facial or factual in nature. *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232-33 (11th Cir. 2008). A facial attack requires the Court to consult the face of the complaint to determine whether it has alleged an adequate basis for jurisdiction, and factual allegations in the complaint are treated as true. *Id.* In contrast, a factual attack challenges the existence of jurisdiction with material that extends beyond the pleadings. *Id.*

Generally, a Court's consideration of documentation outside of the pleadings converts a motion to dismiss into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). However, this Circuit has recognized that a district court—when ruling on a motion to dismiss—may consider outside documents that are central to the plaintiff's claim, and undisputedly authentic. *Speaker v. U.S. Dep't of Health & Hum. Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (quoting *SFM Holdings, Ltd. v. Banc of Am. Secs*., LLC, 600 F.3d 1334, 1337 (11th Cir.2010)); *see also Harris v. Ivax Corp*., 182 F.3d 799, 802 n. 2 (11th Cir. 1999) (stating that "a document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute"); *see also Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (*per curiam*) (holding that the district court properly considered a right-to-sue letter attached to defendant's motion to dismiss because it was central to plaintiff's complaint and undisputed). This motion to dismiss relies on extrinsic documentation, in the form of a Declarations, making the United States' 12(b)(1) request both facial and factual in nature.

## II.    Fed. R. Civ. P. 12(b)(6)

As for the substance of a pleading, this Court should dismiss a complaint if it fails to state a claim on which the Court may grant relief. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the Court treats the facts alleged in the complaint as true, draws inferences in the plaintiff's favor, and determines whether the asserted facts state a plausible claim for relief. *Carruth v. Bentley*, 942 F.3d 1047, 1053 (11th Cir. 2019). Thus, a plaintiff's complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation and quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

## Argument

The APA claims should be dismissed for lack of jurisdiction and failure to state a claim. As to the jurisdictional claim, Plaintiff cannot satisfy the "certainly impending" requirement sufficient to establish jurisdictional standing. Also, regarding Fourth Amendment merits standing, he does not have standing to challenge DHS immigration officials' warrantless entry onto his employers' worksite and onto D.R. Horton or Lennar properties. Moreover, even if jurisdiction was present, Plaintiff's attempt to challenge DHS immigration agents' operational decisions related to a *Terry* stop does not sufficiently state a claim for relief. Plaintiff cannot identify a single DHS final agency action on which this Court could grant APA declaratory relief.

8

Thus, this Court should also dismiss Plaintiff's APA claims—and his dependent Count I request for Injunctive Relief—that are challenging non-existent DHS policies for his failure to state a claim on which this Court can grant relief.

**I.      This Court should find that Plaintiff lacks standing to challenge DHS immigration officers in-the-field operational decision making.**

Plaintiff's APA claims fail because he cannot demonstrate jurisdiction or merits-based standing. The Federal Defendants have fully briefed the issue of Plaintiff's individual, and potential class action, standing in their Oppositions to his Motion for Preliminary Injunction [Doc. 46, PageID.484-500], and Class Action Certification. [Doc. 47, PageID.514-516]. The Federal Defendants incorporate those arguments into this brief and re-iterate that none of the harms Plaintiff alleges are traceable to the non-existent challenged policies, nor are they capable of being remedied by an order by this Court.

**A.      This Court does not have jurisdiction over Plaintiff's prospective relief claims.**

Allegations of past injury alone are insufficient to provide a plaintiff with standing to seek declaratory or injunctive relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102-03 (1983); s*ee also Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) (citation omitted) ("a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past"). Like the *Lyons* plaintiff, here, Plaintiff offers no basis to support his conclusory belief that the federal Defendants, particularly ICE, will subject him to unlawful warrantless entry, preemptive detention, or continued detention in the imminent future. The mere allegation that DHS has allowed unlawful immigration enforcement operations at construction sites does not satisfy the "certainly impending" requirement. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412 (2013). In *Clapper*, the plaintiffs claimed that the government's allegedly unlawful surveillance activities injured them by interfering with their foreign contacts. *Id.* But the

Supreme Court rejected their concerns about enforcement as insufficient, as their speculated harm relied on a legal provision that "authorizes—but does not mandate or direct—the surveillance that respondents fear." *Id*.

Plaintiff's allegations relating to the past May and June encounters are insufficient to establish that unlawful warrantless entry, detention or continued detention occurred or will occur in the future. Further, these claims are insufficient to establish the imminently irreparable injury necessary to support his claims for equitable relief. *31 Foster Children v. Bush*, 329 F.3d 1255, 1265 (11th Cir. 2003) ("When a plaintiff cannot show that an injury is likely to occur immediately, the plaintiff does not have standing to seek prospective relief even if he has suffered a past injury."). Further, DHS offers HSI ICE Acting Assistant Special Agent in Charge, Philip Lavoie's Declaration to refute those conclusory allegations. Rather than allow unlawful warrantless entry, detention or continued detention, DHS policy requires immigration officers to follow the Constitution, the INA, and applicable regulations when conducting immigration enforcement activities at construction sites. [Doc. 44-1, PageID.466-474, ¶¶23-27]. This applies when officers are making their individual totality-of-the-circumstances reasonable suspicion determinations. *Id*. Accordingly, the lack of imminence defeats Plaintiff's standing to pursue prospective injunctive relief and this Court should dismiss his claims. Fed. R. Civ. P. 12(b)(1).

**B.    Plaintiff does not have Fourth Amendment Standing to challenge DHS immigration officers' warrantless entry.**

Plaintiff does not have standing to challenge DHS immigration officer's entry onto the worksite because he did not have a legitimate expectation of privacy while working for Southern Home Crafters at construction sites owned by D.R. Horton and Lennar. The ability to claim Fourth Amendment protection, related to government action, relies "on whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded

10

place." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). Thus, to have standing to challenge a search and seizure a defendant must establish a 'legitimate expectation of privacy' in the property. *United States v. Gibson*, 708 F.3d 1256, 1276 (11th Cir. 2013). The individual challenging government activity has standing to challenge a search on another person's property only if they demonstrate "an unrestricted right of occupancy and control of the premises[.]" *United States v Saarda-Villa*, 760 F.2d 1232, 1236 (11th Cir. 1985) (quoting *United States v Bachner*, 706 F.2d 1121, 1126 n.6 (11th Cir 1983)).

Plaintiff does not have a recognized reasonable expectation of privacy while at work on multiple worksites—owned or controlled by Southern Home Crafters Worksite, D.R. Horton, and/or Lennar—for relatively short times for the single express purpose of laying concrete. [Doc. 1, PageID.8, ¶12; 12-13, ¶¶33-38; 15, ¶¶55-56; 22, ¶¶117-120]. He attempts to assert an "expect[ed]" right to "exclude" anyone from the worksite(s) based on the type of work he performs, his safety concerns, his experience, and his communications with his crew and his supervisors giving him alleged "dominion or control that suits the nature of the property." [Doc. 1, PageID.15, ¶48-51]. However, he provides no documentation, declaration or support from Southern Home Crafters, D.R. Horton, and/or Lennar showing that his employer or the property owners have given him express control over the open-field worksite(s) sufficient to transfer their Fourth Amendment standing to him. S*ee Wright v. Watson*, 209 F. Supp. 3d 1344, 1361 (M.D. Ga. 2016), *aff'd sub nom. Wright v. Goodrich*, 685 F. App'x 731 (11th Cir. 2017), and aff'd, 739 F. App'x 981 (11th Cir. 2018) ("there is not the same expectation of privacy in 'open fields' as there is in one's house"). This Court should find Plaintiff did not have a reasonable expectation of privacy while working in open, undeveloped worksites sufficient to establish standing to

challenge the Federal Officials' general immigration enforcement and dismiss his claims for lack of jurisdiction. Fed. R. Civ. P. 12(b)(1).

## II.    Plaintiff cannot state a plausible claim sufficient to withstand dismissal.

This Court should dismiss Plaintiff's APA claims because each count fails to state a plausible, cognizable claim for relief. Fed. R. Civ. P. 12(b)(6). To sufficiently plead, plaintiff must make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Courts construe the plaintiff's allegations in the light most favorable to the plaintiff. *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016). This is because the pleading requirement "at the motion-to-dismiss stage is 'exceedingly low.'" *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 881 (11th Cir. 2003) (citing *In re Southeast Banking Corp.*, 69 F.3d 1539, 1551 (11th Cir. 1995) ("the Federal Rules of Civil Procedure do not permit district courts to impose upon plaintiffs the burden to plead with the greatest specificity they can")). The ultimate question is whether the complaint is "sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

Rather than pleading his claims with sufficient particularity, Plaintiff alleges that the three non-existent DHS policies violate the law. Despite favorable construction, Plaintiff's APA claims fall short of alleging facts that tend to establish any reasonable inference that the DHS is liable to him for allowing (1) warrantless entry, (2) preemptive/suspicionless detention, or (3) continued detention. These conclusory claims are insufficient to withstand dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). In contrast, DHS offers Philip Lavoie's Declaration to refute Plaintiff's conclusory allegations. [Doc. 44-1,

PageID.466-474, ¶¶23-27]. DHS "policy requires officers to follow the Constitution and all relevant statutes and regulations[.]" *Id.*, at ¶27. Moreover, HSI Special Agents receive extensive training on Fourth Amendment searches and seizures in addition to their practical field experience. *Id.*, at ¶¶25-31. Therefore, DHS policy is that immigration officers must follow the INA and the Constitution in accordance with their training to conduct general immigration enforcements and lawful encounters. Plaintiff cannot plead his conclusory claims asserting otherwise with sufficient particularity, and this Court should dismiss them as implausible. Fed. R. Civ. P. 12(b)(6).

### III. The non-existent DHS policies are not final agency actions and are not subject to this Courts review.

Plaintiff's APA claims—challenging DHS immigration officers in the field decision making—also fail because he does not adequately state a claim for relief and does not challenge any final DHS agency actions. Fed. R. Civ. P. 12(b)(6). The APA, 5 U.S.C. § 701 et seq., entitles a "person suffering legal wrong because of agency action" to "judicial review thereof." 5 U.S.C. § 702. However, judicial APA review is limited to a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704; *see also Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 808 (2024) (APA "judicial review is available only for final agency action") (internal quotations omitted); *see also Bangura v. Hansen*, 434 F.3d 487, 500 (6th Cir. 2006) ("To state a claim for relief under the APA, a plaintiff must allege that his or her injury stems from a final agency action for which there is no other adequate remedy in court.").

The APA defines "agency action" as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent[,] or denial thereof, or failure to act." 5 U.S.C. § 551(13). Therefore, "[w]hen, as here, review is sought [] only under the general review provisions of the APA, the 'agency action' in question must be 'final agency action.'" *Lujan v. Nat'l Wildlife*

13

*Fed'n*, 497 U.S. 871, 882 (1990). In other words, the APA judicial-review provision does not apply where there has not been any final agency action. *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1237 (11th Cir. 2003) ("The finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury."). In limiting APA review to "final" agency action, Congress restricted "pervasive oversight by federal courts over the manner [] of agency compliance with [] congressional directives," which would "inject[] the judge into day-to-day agency management." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 67 (2004).

The Supreme Court has articulated "two conditions that generally must be satisfied for agency action to be 'final' under the APA." *Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (citing *Bennett v. Spear*, 520 U.S. 154 (1997)). To meet the first condition the challenged actions "must mark the consummation of the agency's decision making process—it must not be of a merely tentative or interlocutory nature." *Id.* (quoting *Bennett*, 520 U.S. at 177-178). To meet the second condition, the challenged actions "must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* (quoting *Bennett*, 520 U.S. at 178). Moreover, as Justice Kavanaugh, writing for the D.C. Circuit, has stated, when distinguishing between a substantive rule and a general statement of policy, "[t]he most important factor concerns the actual legal effect (or lack thereof) of the agency action in question on regulated entities." *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 252 (D.C. Cir. 2014).

Recently, the Supreme Court addressed this final agency action question, finding that a plaintiff must identify agency action or a "terminal event" that represents the consummation of DHS' decision-making process and determines the parties' rights or obligations to assert a valid

APA challenge. *City of Chicago v. Noem*, No. 25 CV 12765, 2025 WL 3251222, at *6 (N.D. Ill. Nov. 21, 2025) (slip copy) ("[t]he decision to include the challenged conditions in the DHS Standard Terms and Conditions is a final agency action that has not been committed to agency discretion and is thus reviewable"). Here—rather than Plaintiff showing a DHS action imposing specific conditions on a grant recipient—he argues that DHS has enacted unconstitutional policies. Despite that argument he cannot identify a terminal event sufficient to show a reviewable final agency action. Instead, he points to the individual immigration agents' operational *Terry* stop decisions. These field decisions are not final agency action and are not subject to APA review.

**A.    Plaintiff has not challenged a DHS final action that is the consummation of a DHS decision-making process.**

DHS has not instituted a final agency policy decision allowing "warrantless entry," "preemptive detention" or "continued detention." For Plaintiff to identify a final agency action, sufficient to meet the first condition, he must show that DHS employees are required to act and this requirement is reflected by a discrete, consummated decision-making process. *See Bennett v. Spear*, 520 U.S. 154 (1997)). A purported agency practice is not enough, without more, to meet this first condition.

In *Biden v. Texas*, the Supreme Court held that two DHS memoranda terminating a policy (the Migrant Protection Protocols) under which individuals were returned to Mexico pending removal proceedings met the first condition for final agency action, because the memoranda marked the consummation of the agency's decision-making process and "bound DHS staff" to not follow the Protocols. 597 U.S. 785, 808 (2022). However, in contrast in *Lujan*, 497 U.S. at 877-78, the Court explained that the mere fact that an agency has taken multiple similar actions does not suffice to show that a different, discrete final agency action exists knitting them all

together. There, the plaintiffs characterized various individual decisions about public land management as a "land withdrawal review program," and sought review under the APA. The Supreme Court held that the agency decisions could not be combined in this way and, thus, could not be considered a single, final "agency action" under the APA. *Id*. at 890-91 (APA does not allow plaintiffs to amalgamate actions into a purported overarching policy and then "seek wholesale improvement of th[e] program by court decree").

Courts have applied *Lujan* to reject APA claims where, like here, plaintiff (1) identifies several discrete, allegedly unlawful acts; (2) claims that a common pattern, policy, or practice underlies all the acts; and (3) attempts to challenge the purported pattern, policy, or practice. *See, e.g., Nat'l Treasury Emps Union v. Vought*, 149 F.4th 762, 783–84 (D.C. Cir. 2025) (multiple actions that changed an agency's operations characterized as overarching decision to shut down the agency); *Bark v. United States Forest Serv*., 37 F .Supp. 3d 41, 50 (D.D.C. 2014) (claimed policy based on five instances of agency permitting concessioners to improperly charge use fees). This Court should also apply *Lujan* to find that Plaintiff's challenges of immigration officers discrete in-the-field reasonable suspicion determinations—based on his arguments that he experienced unlawful warrantless entry and detention—do not assert facts showing that the alleged policies exist sufficient to cross this Court's threshold. Rather, existing DHS policy requires that immigration officers comply with the law. [Doc. 44-1, PageID.466-474, ¶¶23-27]. Plaintiff fails to meet the first condition because he has not shown the purported wrongful "warrantless entry," "preemptive detention," and "continued detention" is the result of a concrete, identifiable, and consummated decision-making process.

**B.      Plaintiff has not shown that the alleged non-existent policy has direct consequences.**

Plaintiff also has not met the second condition to establish a final agency action to state a claim under the APA. In other words, he has not shown that the challenged actions determined "rights or obligations" or are a source "from which legal consequences will flow." *Bennett*, 520 U.S. at 177–78. For agency action to be "final," the "legal consequences" of the challenged action must be "direct and appreciable." *Hawkes*, 578 U.S. at 597. An internal directive can meet this test if it "b[inds] [agency] staff" to act a certain way that affects third parties. *Texas*, 597 U.S. at 808–09 (memo that "forb[ade]" agency employees from "continu[ing] a program" determined rights and obligations of program's beneficiaries); *cf. Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 426 (D.C. Cir. 2004) (no final agency action where agency letter did not "[c]ompel[] [any] one to do anything").

The United States notes that recently, District of Columbia United States District Court Judge Howell, considered an APA challenge to defendants' purported policy of making warrantless arrests without "individualized probable cause determinations as to each arrestee's risk of escape" in violation of U.S.C. § 1357(a)(2) and found that defendants had such a "policy of making warrantless arrests under a standard lower than probable cause." *See Escobar Molina v. U.S. Dep't of Homeland Sec.*, No. CV 25-3417 (BAH), 2025 WL 3465518 (D.D.C. Dec. 2, 2025) (aliens alleged the "defendants' purported policy and practice of conducting warrantless civil immigration arrests in the District of Columbia without individualized probable cause assessments violated [the INA], its implementing regulations, and [the APA]"). In *Molina*, the court found that defendants "repeatedly emphasized an abandonment of the probable cause

standard" in public statements and that these statements "illustrat[ed] the finality of defendants' recent policy[.]" 2025 WL 3465518, at *23.[3]

Here, DHS did not depart from the applicable reasonable suspicion standard. Further, there are no public statements from DHS demonstrating the abandonment of that standard. Rather, DHS offers Philip Lavoie's Declaration to show that it has not enacted a Warrantless Entry Policy, Preemptive Detention Policy, or Continued Detention Policy as alleged in the complaint. [Doc. 44-1, PageID.471, ¶23]. DHS officers and agents are required to follow relevant statutory authorities in enforcing immigration laws, preventing terrorism, and combating transnational criminal threats. [Doc. 44-1, PageID.471, ¶24]. Prior to engaging in investigative stops, commonly known as *Terry* stops, agents are trained to have developed reasonable suspicion based on a totality of the circumstances. [Doc. 44-1, PageID.471, ¶25]. These dissimilar facts show that this Court should decline to follow that non-binding and non-persuasive decision regarding alleged policies and violations of law that are distinct from those at issue here.

Plaintiff's APA claims are styled as a tailored review of three non-existent DHS polices. However, they represent an attempt to challenge DHS' immigration officers' real-time operational judgment. Plaintiff cannot sidestep that the substance of his claims are barred by the APA by restyling them as specific policy review if there are no corresponding policies. Thus, he improperly attempts to challenge immigration officers' field-level decisions related to reasonable suspicion determinations that are based on a case-by-case totality of circumstances analysis. *See Ecology Ctr., Inc., v. U.S. Forest Serv*., 192 F.3d 922, 926 (9th Cir. 1999) (the Ninth Circuit

---

[3] Undersigned does not represent DHS in that case and does not make any representation regarding DHS position or strategy in that case.

18

"refused to allow plaintiffs to evade the finality requirement with complaints about the sufficiency of an agency action 'dressed up as an agency's failure to act.'") ((quoting *Nevada v. Wakins*, 939 F. 2d 710, 714 n. 11 (9th Cir. 1991) (denying APA jurisdiction on basis that agency had failed to act when there were merely deficiencies in energy guidelines rather than actual failure by Secretary to act)). While these Ninth Circuit decisions are not binding on this Court, they provide persuasive guidance related to how other circuits view these types of final agency decision determinations.

This Court should decline to apply the APA to the individual DHS immigration officers' specific case-by-case reasonable suspicion determinations and should, instead, dismiss Plaintiff's APA claims. Plaintiff has not met either condition necessary to show a final agency action because he has not challenged actions that represent the consummation of an agency-level decision making process. Thus, his APA claims are insufficiently plead, not subject to this Court's review, and should be dismissed for failure to state a claim.

IV.   **Alternatively, this Court should find that Plaintiff's APA claims are only against DHS and all other named federal agencies should be dismissed.**

Alternatively, to the extent any APA claims remain, this Court should dismiss those claims as against the non-DHS Federal Agency Defendants. "The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Campbell v. United States*, 962 F.2d 1579, 1581 (11th Cir. 1992) (quoting *United States v. Sherwood*, 312 U.S. 584 (1941)). The United States has waived sovereign immunity for specific types of APA claims due to agency actions. Specifically, allowing a right of review of "a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority[.]" 5 U.S.C. § 702.

Here, Plaintiff's APA claims, Counts II through IV, are directed against DHS. [Doc. 1, PageID.60-70, ¶¶302-373]. Plaintiff does not assert that the Department of Justice through the ATF, FBI and Marshals Service have APA reviewable policies. Moreover, even if they had, only DHS ICE law enforcement officers participated in the May encounter. To date, the FBI has not identified "information indicating any interaction between the Plaintiff and FBI personnel." [Doc. 56-1, PageID.644-648, ¶10]. Also, the United States Marshals Service "had no involvement in any aspect of the alleged May 21, 2025 and the June 12, 2025 immigration enforcement operations[.]" [Doc. 56-2, PageID.649-654, ¶11]. Similarly, one ATF Mobile Field Office Agent was assigned to provide DHS with Title 8 support on June 12. [Doc. 56-3, PageID.655-659, ¶15]. However, she does not fit the Plaintiff's description of the male agents that he allegedly encountered. *Id*., at ¶21. Therefore, "no ATF Mobile Field Office Agents were involved in the May 21, 2025 or June 12, 2025 encounters described by Plaintiff[.]" *Id*., at ¶23.

The federal Defendants acknowledge that Plaintiff refers broadly to DHS and to non-DHS task force federal immigration agents' actions taken pursuant to three non-existent DHS policies. However, "FBI Special Agents are required to comply with the U.S. Constitution, federal laws and FBI policies and regulations." [Doc. 56-1, PageID.644-648, ¶1]. Moreover, "FBI has no role or function in creating or formulating DHS immigration policies." *Id*., ¶5. Similarly, ATF has not enacted or adopted any search-and-seizure policies like those alleged by the Plaintiff. [Doc. 56-3, PageID.655-659, ¶9]. Rather, ATF agents providing DHS immigration enforcement support must "follow the law, the Constitution, and all ATF policies." *Id*., at ¶8. Likewise, the United States Marshals Service do not have or follow any policies like those alleged by Plaintiff. [Doc. 56-2, PageID.649-654, ¶8]. Furthermore, Plaintiff should not be allowed to apply the APA to the individual training and experience-based decision making of

those agents. As such, this Court should dismiss Plaintiff's APA claims against the DOJ, FBI, ATF and Marshals Service for his failure to state a claim against them on which this Court can grant relief.

<b>Conclusion</b>

The Federal Defendants respectfully seek dismissal of Plaintiff's APA claims, Counts II-IV, and his dependent Count I injunctive claims. Alternatively, should the Court decline to dismiss Plaintiff's APA claims, it should dismiss all federal agencies, aside from DHS, from his Counts II through IV because Plaintiff is only challenging three non-existent DHS policies and is not challenging DOJ, FBI, ATF, or Marshals Service policies.

Respectfully submitted,

SEAN P. COSTELLO
UNITED STATES ATTORNEY

By: *s/Victoria O. Todd*
     Victoria O. Todd
     Assistant United States Attorney
     63 S. Royal Street, Suite 600
     Mobile, Alabama 36602

<b><u>CERTIFICATE OF SERVICE</u></b>

I certify that, on January 29, 2026 the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notice to all counsel of record.

*s/ Victoria O. Todd*
Victoria O. Todd
Assistant United States Attorney