IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION

LEONARDO GARCIA VENEGAS,                  )
                                          )
      *Plaintiff,*                        )
                                          )
                            )    Case No. 1:25-cv-397-JBN
      v.                                 )
                                          )
TOM HOMAN, WHITE HOUSE BORDER CZAR,  )
IN HIS OFFICIAL CAPACITY, ET AL.          )
                                          )
      *Defendants.*                       )

---

**PLAINTIFF'S MOTION & MEMORANDUM OF LAW SEEKING LEAVE TO CONDUCT
LIMITED DISCOVERY PRIOR TO THE RULE 26(f) CONFERENCE**

---

Pursuant to Federal Rules of Civil Procedure 26(d)(1) and 45, Plaintiff Leonardo Garcia Venegas respectfully moves for leave to conduct limited early discovery to identify and help effect service on two still-unknown federal immigration officers (Officers Doe 4 and 5) named as Defendants in Counts X–XIII, for torts and constitutional violations they allegedly committed on June 12, 2025[1].

## BACKGROUND

Leo filed this civil-rights lawsuit to seek redress against the government agencies, officials, and individuals responsible for violating his rights when five federal law enforcement officers raided his worksites on May 21 and June 12, 2025. Given the circumstances, Leo did not learn the officers' identities. The officers did not identify themselves, partially concealed their identities with masks, and failed to provide Leo with

---

[1] The claims against individual Doe Defendants for which Plaintiff seeks limited discovery are not subject to either of the pending motions to dismiss.

written documentation that could reveal the officers' names. Without their names, Leo sued them as John Does. He has since worked with Defendants to obtain the names of three of those officers he caught on video. This motion seeks limited discovery into the identities of the other two officers.

### A. The Two Raids of Leo's Workplaces

With respect to the May 21 raid, Leo alleges that Officers Doe 1, Doe 2, and Doe 3, entered Leo's worksite in Foley, Alabama, without a warrant. Compl. (ECF 1) ¶¶ 63–70. Once onsite, all three officers preemptively detained Leo without particularized suspicion and continued to detain him after he provided presumptive proof of his citizenship. *Id*. ¶¶ 71–114. The May 21 incident was partially caught on video by Leo and two of his coworkers, so we have images of Officers Doe 1 through 3. *See* Videos 1–3 (ECF 45).

Similarly, on June 12, Officer Doe 4 entered a nearly constructed house in Fairhope, Alabama, in which Leo was working alone, without a warrant. Compl. ¶¶ 116–39. Officer Doe 4 ordered Leo outside and then he and Officer Doe 5 took Leo from his worksite, brought him to their waiting car at the edge of the development, and used an electronic device (beyond merely looking at Leo's REAL ID) to confirm his citizenship. *Id.* ¶¶ 140–52. In contrast to the first raid, the June 12 raid was not caught on video because the officers took Leo by surprise, and he was alone without coworkers around who could record.

### B. Leo's Lawsuit & Attempts to Identify the Doe Officers Without Discovery

Leo filed this lawsuit on September 30, 2025. Under Rule 4(m), Leo originally had 90 days, or until December 29, 2025, to serve Defendants. Leo promptly served the named

Defendants between October 7 and October 16. (ECF 17–29). But he has remained unable to serve the Doe Defendants because he still does not know their identities.

Counsel for Defendants first entered a limited appearance on November 3 and immediately moved to stay all deadlines due to the government shutdown. (ECF 33). The government reopened November 13, (ECF 37), and this Court denied as moot Defendants' motion to stay all deadlines on November 19, (ECF 38). By that point, however, Plaintiff's Rule 4(m) service period was already halfway through.

The parties began discussing the process by which they could identify the Doe Defendants while briefing the motions for preliminary injunction and class certification. On December 12, Plaintiff requested that Defendants respond to two interrogatories and requests for production aimed at identifying the Doe Defendants without motions practice. Rather than responding to the formal discovery requests, however, Defendants agreed to try to informally provide the officers' identities.

But the parties were unable to complete that process by December 29, the original Rule 4(m) deadline, so Leo moved for a 30-day extension. (ECF 50). On December 30, this Court granted Plaintiff's motion and extended his Rule 4(m) deadline until January 28. (ECF 51). In the meantime, Leo provided Defendants with more details about the officers and Leo's precise location on June 12. Specifically, Leo explained that he was working in a D.R. Horton development called "Fairhope Falls" in a house on the corner of Shoshoney Circle and Burney Road in Fairhope. The two officers, he explained, likely worked for ICE but he did not know whether they were ERO or HSI. Here's how he described them:

- Officer Doe 4 was a Caucasian male of average height (maybe about 5'9") with dark brown, almost-black hair that was cut short. He seemed to have a beard of

3

the same color but wore a mask. Leo estimates his age to be around 35 but can't be too sure. He couldn't see his eye color since he was wearing sunglasses.

- Officer Doe 5 was a Caucasian male of average height (again, maybe around 5'9") with fairly light blonde ("yellow") hair. He also had an average length beard that was the same color as his hair. He might have been slightly younger than the first officer but also in his 30s. And he had light eyes (Leo thinks they were blue).

Neither officer, as far as Leo could tell, had any visible tattoos, scars, or other prominent features.

On January 22, Defendants voluntarily provided the names of Officers Doe 1, 2, and 3 (the three officers from the May 21 encounter, which was recorded on video). They indicated, however, that they were still working to see if they could provide Plaintiff with the names of Officers Doe 4 and 5 (the two officers from the June 12 encounter, which was not recorded on video). Defendants further indicated that, given their approaching 12(b) deadline, they did not anticipate that they could do so before the new Rule 4(m) deadline. So, Leo moved for another 30-day extension. (ECF 52). This Court granted that unopposed motion, setting the new deadline as February 27, 2026. (ECF 53).

The cycle then repeated. On February 25, counsel for both sides conferred again about the identities of Officers Doe 4 and 5. Plaintiff's counsel explained that they were prepared to move for limited discovery unless Defendants still anticipated they could identify the Does voluntarily. Plaintiff's counsel even provided a draft of this motion as a courtesy. Defendants' counsel replied that they still expected to be able to identify Officers Doe 4 and 5 voluntarily, so Plaintiff filed a third unopposed motion to extend the Rule 4(m) deadline. (ECF 64), which this Court granted on March 3, setting the new deadline as March 30, 2026. (ECF 68).

Then, Defendants' counsel withdrew and new counsel entered an appearance. On March 23, counsel for both sides conferred again. Defendants' new counsel indicated he was just getting up to speed on the case and would need more time to speak with his clients and agency counsel. To allow that time, the parties jointly moved to extend the Rule 4(m) deadline (ECF 70), which this Court granted on March 27 (ECF 71), setting the new deadline as April 29, 2026.

On March 23, March 24, and again on April 14, Plaintiff's counsel provided further information that Defendants requested to aid in the identification process. He reiterated the development in which he was detained (Fairhope Falls), provided the insignia on the officers' vests (ICE), the color of their clothing (all green uniforms), and reiterated that they were both males.

On April 28, counsel again met and conferred. Plaintiff's counsel explained that it was important to obtain the Does identities promptly because he intended to amend his complaint now that his FTCA claims are ripe. Defendants' counsel relayed that he could determine only that Officers Doe 4 and 5 did not work for the United States Marshals Service, FBI, or ATF, which left the agencies within DHS. But he said that he was unable to narrow it any further. Because Defendants will not identify Officers Doe 4 and 5 voluntarily, Plaintiff now moves for limited early discovery.

## LEGAL BASIS

The federal rules empower district courts to order discovery prior to the Rule 26(f) conference for good cause. Fed. R. Civ. P. 26(d) (allowing early discovery "by stipulation[] or by court order"); *see also Hallford v. Allen*, 2007 WL 2570748, at *2 n.1 (S.D. Ala. Aug.

30, 2007); 8A Wright & Miller, Federal Practice and Procedure § 2046.1 (noting that "courts presented with requests for immediate discovery have frequently treated the question whether to authorize early discovery as governed by the good cause standard"). Good cause exists when "unique circumstances necessitate immediate, limited discovery." *Moncrief v. City of Montgomery*, 2023 WL 5444654, at *1 (M.D. Ala. Aug. 23, 2023).

Courts across this Circuit "frequently" find good cause where "discovery is needed to reveal the name of real but fictitiously named parties." *Id.*; *see also id.* at *3 (finding "good cause for the limited early discovery Plaintiffs request for the purpose of identifying Defendants Montgomery Police Officers One and Two"); *Taylor v. Brooks*, 2020 WL 3129862, at *3 (N.D. Ala. June 12, 2020) (allowing early discovery when Doe defendants "are real persons whose names are unknown by plaintiff, but persons who can be easily identified by defendant" and "[t]he discovery proposed by plaintiff is narrowly tailored, and designed to uncover the identity of those individuals"); *Malibu Media, LLC v. Does*, 2014 WL 12605559, at *1 (S.D. Fla. Apr. 18, 2014) (finding that early discovery was "the only way" that plaintiff "c[ould] identify John Doe and thus move forward with the case"); *Daleo v. Polk Cnty. Sheriff*, 2012 WL 1805501, at *5 (M.D. Fla. May 17, 2012) (early discovery allowed to identify unnamed police officers).

Indeed, this Court has recognized that "a plaintiff may properly seek early discovery pursuant to Rule 26(d), prior to the completion of the Rule 26(f) conference by court order" where the "plaintiff is unable to name any defendant without such discovery" and "such proposed discovery is narrowly tailored and is likely to lead to identification of the fictitious party." *Quad Int'l, Inc. v. Doe*, 2013 WL 105253, at *3 (S.D. Ala. Jan. 7, 2013)

6

(Nelson, M.J.); *see also Estate of West v. Jailers 1–5*, 2017 WL 11512571 at \*4 (S.D. Ala. Nov. 28, 2017) (granting plaintiffs' motion for "limited discovery to ascertain the identities of the enumerated fictitious defendants").

Applying these principles, Leo has good cause because he must identify the fictitiously named officers so that his claims against those officers can proceed. Officers Doe 4 and 5 are real people employed by either Defendant Agencies or one of the subagencies run by the Official Capacity Defendants. Leo has identified the time, date, and precise location of his June 12 arrest. He has also provided detailed physical characteristics of the individual officers, the uniforms they wore, and the insignia on their tactical vests. Defendants have indicated that there were several raids in Fairhope that day. They *should* possess the records to discern which officers were on patrol in D.R. Horton's Fairhope Falls subdivision that morning and, among those officers, which individuals fit the physical descriptions that Leo has provided. *See Daleo*, 2012 WL 1805501, at \*5 (holding that discovery will likely produce defendants' names because the complaint identifies the location and date of the police encounter). Limited discovery targeted at these officers' identities is the only way for the claims against these officers to reach the Rule 12 stage before discovery in this case proceeds in full. *See Malibu Media*, 2014 WL 12605559, at \*1; *see also Moncrief*, 2023 WL 5444654, at \*3; *Quad Int'l, Inc.*, 2013 WL 105253, at \*3.

To keep his request narrowly tailored to the officers' identities, Leo seeks leave to propound one interrogatory and one request for production:

> **Interrogatory No. 1**: Provide the full name, place of employment, job title, badge number, address, and telephone number of every officer present at the construction site raid in the Fairhope Falls development on June 12, 2025. This request includes the officers who were on patrol near the

intersection of Shoshoney Circle and Burney Road in Fairhope, Alabama, where Plaintiff was detained.

**Request for Production No. 1**: For every officer identified in response to Interrogatory No. 1, produce all records of that officer's involvement in the detainment of construction workers on June 12. In this request, "record" means documents and communications created by the officer or otherwise evincing the officer's presence at the June 12 raids—including but not limited to incident reports, officer narratives, digital logs from electronic devices (*e.g.*, Mobile Fortify and Mobile Query), citations, emails, text messages, letters, faxes, memoranda, unredacted body-worn camera footage, unredacted dash camera footage, unredacted surveillance footage, audio recordings, photographs, notes, and videos.

These requests are limited, specific, and not unduly burdensome.[2] They are targeted at identifying which officers were on patrol in the neighborhood where Leo was working on June 12 and, from there, which of those officers fit the descriptions that Leo provided or created some record of the encounter on their phones, emails, DHS-issued electronic devices, or internal reports. To the extent a partial response to the request for production suffices, Defendants can simply provide their names and information in response to the interrogatory. Taken together, these requests should allow Leo to discover Officers Doe 4 and 5's identities promptly, allowing his retrospective claims to proceed together.

**CONCLUSION**

Accordingly, Leo respectfully requests that this Court grant him leave to serve the above limited discovery request on Defendants.

---

[2] Nor do the Doe Officers face any special prejudice. As public employees, they have no privacy interest in keeping their identities secret from plaintiffs who sue them in good faith for the actions they take as public employees.

Dated: April 29, 2026.

Respectfully submitted,

/s/ Jared McClain
Jared McClain (DC Bar No. 1720062)*
Jaba Tsitsuashvili (DC Bar No. 1601246)*
Joshua Windham (NC Bar No. 51071)*
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
(703) 682-9320
jmcclain@ij.org
*Pro Hac Vice
Counsel for Plaintiff

9

## CERTIFICATION PURSUANT TO CIVIL L.R. 37

I certify, pursuant to this Court's Civil Local Rule 37, I have conferred in good faith about this matter by phone and email with Defendants' counsel on at least the following dates: with Victoria Todd on December 19, 2025, around 3:45 p.m. ET, January 12, 2026, around 1:45 p.m. ET, and February 25, 2026, around 5:30 p.m. ET, and with Gaillard Ladd on March 23, 2026, around 11:00 a.m. ET, and April 28, 2026, around 3:30 p.m. ET. Plaintiff attempted in good faith to obtain this discovery material without this Court's intervention, but the parties were unable to reach an accord.

/s/ Jared McClain
Jared McClain
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on April 29, 2026, I filed PLAINTIFF'S MOTION & MEMORANDUM OF LAW SEEKING LEAVE TO CONDUCT LIMITED DISCOVERY PRIOR TO THE RULE 26(f) CONFERENCE through the CM/ECF system, which sent an electronic copy to all counsel or parties of record.

/s/ Jared McClain
Jared McClain
*Counsel for Plaintiff*

10