IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION

| | |
|---|---|
| LEONARDO GARCIA VENEGAS, <br><br> *Plaintiff,* <br><br> v. <br><br> TOM HOMAN, WHITE HOUSE BORDER CZAR, IN HIS OFFICIAL CAPACITY, ET AL., <br><br> *Defendants*. | Case No. 1:25-cv-397-JB-N |

**PLAINTIFF'S UNOPPOSED MOTION TO SUPPLEMENT THE PRELIMINARY INJUNCTION RECORD**

Plaintiff Leonardo Garcia Venegas respectfully moves to supplement the preliminary injunction record with his attached declaration (Exhibit A).[1] Leo's declaration details his ***third*** prolonged detention by federal immigration officers. This most recent immigration detention occurred over the weekend, on Saturday, May 2. As before, federal officers looking for illegal immigrants violently detained Leo without asking any questions. And as before, the officers continued to detain Leo even though he told them he is a citizen and presented his REAL ID. That makes three unlawful detentions of the same American citizen by federal immigration officers in less than a year. It lends further urgency to the need for this Court's preliminary intervention.

---

[1] Leo conferred with Defendants' counsel on Monday, May 4, while he was working on this filing. Defendants do not oppose Leo's motion to supplement.

## Legal Standard

This Court has broad discretion over evidentiary submissions at the preliminary injunction stage. *See Levi Strauss & Co. v. Sunrise Intern. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (flexibility is "appropriate given the character and objectives of the injunctive proceeding"). District courts in this circuit exercise their discretion to grant motions to supplement the preliminary injunction record with new evidence. *See, e.g.*, *Hillsborough Cnty. Aviation Auth. v. Turo Inc.*, 2019 WL 5725185, at *1 (M.D. Fla. July 12, 2019) (granting such motion as to new evidence; denying it as to previously available evidence); *Washington v. Washington*, 2015 WL 9918155, at *7 (N.D. Fla. Nov. 24, 2015), *R&R adopted*, 2016 WL 335870 (Jan. 26, 2016) (granting a motion to supplement with evidence that the defendant once again engaged in challenged conduct so that the court could "fully consider[] the motion to a preliminary injunction").

## Argument

This Court should exercise its discretion to grant Leo's motion to supplement the record. Evidence of Leo's third detention by Defendants' immigration officers is newly available (it happened on Saturday), and it bears directly on several preliminary injunction issues: the existence of Defendants' policies; the Court's power to act; and the likelihood of irreparable harm to Leo and the putative classes.

*Defendants' policies.* In support of his preliminary injunction motion, Leo explained that the detentions at issue here "are not *Terry* stops—they are not brief and there is no inquiry. . . . One explanation for why these raids do not function like *Terry* stops is that DHS believes it can *arrest* people based on the 'reasonable suspicion' it thinks attaches to

2

someone's ethnicity and occupation." PI Br. (ECF 30-1) at 11. Leo further explained that "DHS has ordered officers to 'err on the side of action, not caution,'" which "[i]n practice . . . means refusing to accept *all* government-issued IDs—including the REAL IDs that DHS certifies are issued only to people with lawful status[.]" *Id.*

The details of Leo's third detention make it even more likely that he will show Defendants' policies exist as alleged.[2] This third detention was, once again, not the brief inquiry that *Terry* allows; nor did it end once Leo dispelled the (immigration) justification for the stop. Like both times last year, immigration officers approached Leo and physically restrained him without asking any questions. Like both times last year, immigration officers ignored Leo telling them he is a citizen and refused to even consider, let alone credit, Leo's Alabama STAR ID (a DHS-compliant REAL ID) as evidence of his citizenship. And like both times last year, the officers continued to detain Leo *well after* he presented this evidence to refute any suspicion about his lawful status. Ex. A ¶¶ 9–10, 14–16, 25; *see also* PI Br. at 3–6 (detailing Leo's prior detentions).

The immigration officers' refusal to credit Leo's REAL ID reflects the Continued Detention Policy, in particular. Defendants' sole witness has already admitted that officers are trained to treat REAL IDs as "unreliable to confirm U.S. citizenship" and that they keep REAL ID holders detained. Lavoie Decl. (ECF 44-1) ¶ 16. Leo's new evidence removes any doubt that the Continued Detention Policy exists, and that it exists independently of the

---

[2] Leo is also likely to show the policies violate the Constitution and DHS's own regulations, points that Defendants hardly contest. *See Escobar Molina v. DHS*, 811 F. Supp. 3d 1, 27 (D.D.C. 2025) ("Indeed, although defendants dispute the policy's existence, defendants do *not* dispute that if such a policy and practice did exist, it would violate the INA, the accompanying regulations, and the APA.").

other two policies. While this time (unlike the two workplace raids last year) the officers could conceivably have had reasonable suspicion for the initial stop because Leo was driving his brother's truck, the officers continued to detain Leo well after any justification had lapsed because, applying DHS policy, they refused to credit evidence that "created a presumption of legal status." *Alcocer v. Mills*, 800 F. App'x 860, 866 (11th Cir. 2020).

*The Court's power to act.* Defendants rely heavily on *City of Los Angeles v. Lyons* to argue that Leo lacks standing to challenge their policies. PI Opp. (ECF 46) at 16–19. As Leo has explained, there is no *Lyons* problem because Defendants' policies target Leo just for going about his everyday life. PI Reply (ECF 48) at 6–8. Leo's first two detentions were more than enough to distinguish *Lyons*. *See Creedle v. Miami-Dade County*, 349 F. Supp. 3d 1276, 1288, 1291 (S.D. Fla. 2018) (plaintiff who suffered unlawful immigration detentions "twice in two years" had standing to challenge policy). Leo's third detention—this time in front of his own home—confirms the point. Indeed, the officers even told Leo that he risks *further* detentions just for driving his brother's truck (which he uses to get to work and to go about his daily life). Ex. A ¶¶ 22–23.

Knowing the heightened risk that he'll be detained, Leo always carries his REAL ID so that any *Terry* stop should be brief. *Cf. Noem v. Vasquez Perdomo*, 146 S. Ct. 1 (Mem), *1 (Kavanaugh, J., concurring) (condoning immigration stops based on understanding that "[i]f the officers learn that the individual they stopped is a U.S. citizen or otherwise lawfully in the United States, they *promptly* let the individual go") (emphasis added). But this new evidence (together with Leo's prior declaration and those of his other three declarants) makes it substantially likely that showing immigration officers a REAL ID won't

work. Just going about his everyday life subjects Leo to an imminent risk of further harm. Even after he sends his brother money to purchase the truck and registers the license plates in his own name, any future interaction with immigration officers (who are still actively patrolling Baldwin County) will subject Leo to the same unconstitutional policies.

*The need for injunctive relief.* Leo's new evidence also bears on the irreparable harm prong of the preliminary injunction standard. Leo has now been detained three times in under a year. Because of Defendants' policies, each stop lasted significantly longer than it should have, and each stop involved unnecessary physical restraint. The injunctive relief that Leo seeks would limit his exposure to further raids at work, prevent him from being detained without particularized suspicion, and ensure that any detention ends promptly when he presents his REAL ID. Saturday's episode is further evidence that DHS policy authorizes officers to tackle and shackle people suspected of an immigration offense even *after* they've said they're citizens and have presented evidence of their status. Each day that passes, Leo faces the risk of further irreparable injuries to his constitutional rights.

### Conclusion

This Court should allow Leo to supplement the preliminary injunction record with this new evidence of his third detention.

Dated: May 4, 2026.                    Respectfully submitted,

                                       /s/ Jared McClain
                                       Jared McClain (DC Bar No. 1720062)*
                                       Jaba Tsitsuashvili (DC Bar No. 1601246)*
                                       Joshua Windham (NC Bar No. 51071)*
                                       INSTITUTE FOR JUSTICE
                                       901 N. Glebe Road, Suite 900
                                       Arlington, VA 22203
                                       (703) 682-9320
                                       jmcclain@ij.org
                                       *Admitted Pro Hac Vice

                                       Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing PLAINTIFF'S MOTION TO SUPPLEMENT THE PRELIMINARY INJUNCTION RECORD with the Clerk of Court using the CM/ECF system, which will provide electronic service upon all attorneys of record.

/s/ Jared McClain
Jared McClain (DC Bar No. 1720062)