**SECOND DECLARATION OF LEONARDO GARCIA VENEGAS**

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION**

LEONARDO GARCIA VENEGAS,

     *Plaintiff*,

v.

TOM HOMAN, WHITE HOUSE BORDER CZAR,
IN HIS OFFICIAL CAPACITY, ET AL.,

     *Defendants*.

Case No. 1:25-cv-397-JB-N

---

**SECOND DECLARATION OF LEONARDO GARCIA VENEGAS**

---

I, Leonardo Garcia Venegas, do affirm and state as follows:

1.     I am a United States citizen of Mexican descent, a longtime Alabama resident, and a longtime construction worker in Baldwin County, Alabama.

2.     I previously submitted a declaration in this case dated October 27, 2025, which described construction-site raids and detentions I experienced on May 21 and June 12, 2025, while working construction jobs in Baldwin County. I incorporate that declaration by reference herein.

3.     On the morning of May 2, 2026, federal immigration officers detained me for the third time in less than a year.

4.     Around 7:00 a.m. that morning, I drove to a convenience store about five minutes from my house in Silverhill, Alabama.

1

5.    I left the store around 7:20 a.m. and began driving home. I was approaching my house when I noticed an unmarked vehicle following me closely that appeared to be law enforcement.

6.    I parked my car in front of my house and turned off the engine.

7.    The officers pulled in front of my vehicle to block it in. They exited their vehicle and quickly approached my truck.

8.    Without a word, the officers tried to open my driver's side door, but it was locked. Because I already experienced two immigration raids, I knew it was important to tell them I was a citizen and use my REAL ID to prove my lawful status. So, I took out my Alabama Star ID, unlocked the door, and immediately told the officers that I am a United States citizen.

9.    Still without asking me a single question or issuing any lawful commands, the officers pulled me out of my car, tackled me to the ground, and shackled me around both my arms and legs.

10.    The officers did not listen when I said I was a citizen. And they showed no interest in looking at my Alabama STAR ID, even though it is a REAL ID issued only to people who can prove their lawful status.

11.    Within two minutes of when I stopped in front of my house, a few other cars arrived, including a K-9 unit with the local police.

12.    There were about seven or eight officers in total surrounding me. All but two of those officers were dressed in plain clothes with tactical vests and appeared to be ICE

2

agents. The other two wore uniforms of the local police. At least one of the local police officers arrived with a K-9.

13.    The initial stop was initiated by the ICE agents, and it was those ICE agents who took responsibility for my arrest.

14.    The ICE agents led me, shackled, to one of their cars and placed me in the back seat. At this point, the officers still had not asked me a single question or bothered to look at my Alabama Star ID that would have shown they had no basis for my detention.

15.    Here is a true and correct copy of a photo—zoomed-in for legibility—that a neighbor took of me handcuffed in my yard as the officers placed me into their vehicle:



16.    Here is a true and correct copy of a photo that I took of my leg shackles as I sat in the back of the ICE vehicle:



17.    While I was in the back of the car, the officers began to ask me questions. They asked where I was born, and I told them Florida. They asked who lives with me, and I told them I live alone. They asked if I had a U.S. passport, and I told them it was just inside my house. I offered to get my U.S. passport, but they said they didn't need to see it.

18.    I believe the officers eventually used a handheld electronic device to scan my driver's license and confirm my lawful status while I was in the back of the car.

19.    The officers also looked through my wallet.

20.    Eventually, the officers let me out of the back of the car. Before they took off my shackles, however, one officer said they could not let me go until the dog sniffed my truck (technically my brother's truck; the one I had driven home) for drugs. I knew I had nothing to hide, so I did not protest the K-9 sniff.

21.    The dog did not alert on my truck, so the officers finally removed my shackles—about 15 minutes after they arrived at my home.

22.    At that point, the officers told me that the basis for my stop was that my license plates are linked with my brother's name. My brother is not a citizen.

23.    My old truck broke down recently, so I sold it. On April 20, I began driving my brother's old truck to work (construction sites) and to go about my daily life. I plan to send my brother money in return for the title to the truck, and then I will register the license plates in my own name.

24.    The officers told me that I risk being stopped again until I register the license plates in my own name. But the officers could have known immediately that I was not my brother just by checking the REAL ID that was in my hand when they pulled me from the truck and tackled me to the ground.

25.    At no point prior to physically detaining me did the officers ask me any questions about my identity, my citizenship, or my immigration status. They did not ask me to step out of the car. They did not even look at my ID before using physical force against me even though I had it in my hand.

26.    I was not charged with any crime, because I had done nothing wrong.

27.    This is the third time I have been detained in less than a year—even though I spent over two months this year visiting family in Mexico.

28.    I have only been back from Mexico for about a month, and they already detained me again. Of the time I've been in Alabama this past year, I have been detained about once every 90 to 100 days.

5

29.     As a result of this third detention, I have suffered and continue to suffer significant emotional distress, stress, and anxiety. This third detention has compounded the fear and trauma I have experienced since my first detention in May 2025. Especially because the three detentions have occurred at work and at my house, I live in constant fear that I will be subjected to further baseless detentions just for going about my daily life. Honestly, I felt safer while I was in Mexico. But my home is Alabama. I only wish to live my life in peace.

30.     I reviewed a copy of this declaration that was translated into Spanish by Institute for Justice attorney Katrin Marquez, and I spoke with her and Institute for Justice attorney Jared McClain by telephone to confirm the declaration's accuracy.

31.     Based on that conversation, I confirm this declaration is true and accurate to the best of my knowledge.

Executed May 4, 2026.

Leonardo Garcia Venegas (May 4, 2026 21:36:42 CDT)

Leonardo Garcia Venegas

6

**EXECUTED SPANISH VERSION ATTACHED**

EN LA CORTE DEL DISTRITO DE LOS ESTADOS UNIDOS
DEL DISTRITO DEL SUR DE ALABAMA
EN LA DIVISION DE MOBILE

LEONARDO GARCIA VENEGAS,

*Demandante,*

v.

TOM HOMAN, WHITE HOUSE BORDER CZAR,
IN HIS OFFICIAL CAPACITY, ET AL.,

*Acusados*.

Case No. 1:25-cv-397-JB-N

**SEGUNDO DECLARACION DE LEONARDO GARCIA VENEGAS**

Yo, Leonardo Garcia Venegas ("Leo"), declaro y afirmo lo siguiente:

1.      Soy ciudadano de los Estados Unidos de ascendencia mexicana, residente de larga data en Alabama y trabajador de la construcción desde hace muchos años en el condado de Baldwin, Alabama.

2.      Anteriormente presenté una declaración en este caso con fecha del 27 de octubre de 2025, en la cual describí redadas en sitios de construcción y detenciones que experimenté el 21 de mayo y el 12 de junio de 2025, mientras trabajaba en obras de construcción en el condado de Baldwin. Incorporo dicha declaración por referencia en el presente documento.

3.      En la mañana del 2 de mayo de 2026, oficiales federales de inmigración me detuvieron por tercera vez en menos de un año.

4.      Aproximadamente a las 7:00 a.m. de esa mañana, conduje a una tienda de conveniencia a unos cinco minutos de mi casa en Silverhill, Alabama.

1

5.      Salí de la tienda alrededor de las 7:20 a.m. y comencé a conducir de regreso a casa. Me estaba acercando a mi casa cuando noté que un vehículo sin identificación me seguía de cerca y parecía ser de las autoridades.

6.      Estacioné mi automóvil frente a mi casa y apagué el motor.

7.      Los oficiales se colocaron frente a mi vehículo para bloquearlo. Salieron de su vehículo y se acercaron rápidamente a mi camioneta.

8.      Sin decir una palabra, los oficiales intentaron abrir la puerta del lado del conductor, pero estaba cerrada con seguro. Debido a que ya había experimentado dos redadas de inmigración, sabía que era importante decirles que era ciudadano y usar mi REAL ID para demostrar mi estatus legal. Por lo tanto, saqué mi identificación Alabama Star ID, abrí la puerta y de inmediato les dije a los oficiales que soy ciudadano de los Estados Unidos.

9.      Aún sin hacerme una sola pregunta ni emitir ninguna orden legal, los oficiales me sacaron del automóvil, me tiraron al suelo y me esposaron y encadenaron tanto los brazos como las piernas.

10.     Los oficiales no escucharon cuando dije que era ciudadano. Tampoco mostraron interés en ver mi Alabama STAR ID, aunque es una REAL ID emitida únicamente a personas que pueden demostrar su estatus legal.

11.     Dentro de dos minutos desde que me detuve frente a mi casa, llegaron otros vehículos, incluyendo una unidad K-9 con la policía local.

12.     Había aproximadamente siete u ocho oficiales en total rodeándome. Todos menos dos estaban vestidos de civil con chalecos tácticos y parecían ser agentes de ICE.

2

Los otros dos llevaban uniformes de la policía local. Al menos uno de los oficiales locales llegó con un perro K-9.

13.    La detención inicial fue iniciada por los agentes de ICE, y fueron esos agentes quienes asumieron la responsabilidad de mi arresto.

14.    Los agentes de ICE me llevaron, encadenado, a uno de sus vehículos y me colocaron en el asiento trasero. En ese momento, los oficiales aún no me habían hecho una sola pregunta ni se habían molestado en revisar mi Alabama Star ID que habría demostrado que no tenían base para detenerme.

15.    A continuación se incluye una copia fiel y correcta de una fotografía—ampliada para mayor claridad—que un vecino tomó de mí esposado en mi patio mientras los oficiales me colocaban en su vehículo:

16.    A continuación se incluye una copia fiel y correcta de una fotografía que tomé de los grilletes en mis piernas mientras estaba sentado en la parte trasera del vehículo de ICE:

17.    Mientras estaba en la parte trasera del vehículo, los oficiales comenzaron a hacerme preguntas. Me preguntaron dónde nací, y les dije Florida. Me preguntaron quién vive conmigo, y les dije que vivo solo. Me preguntaron si tenía pasaporte de los Estados Unidos, y les dije que estaba dentro de mi casa. Me ofrecí a ir a buscar mi pasaporte de los Estados Unidos, pero dijeron que no necesitaban verlo.

18.    Creo que los oficiales eventualmente usaron un dispositivo electrónico portátil para escanear mi licencia de conducir y confirmar mi estatus legal mientras estaba en la parte trasera del vehículo.

3

19.    Los oficiales también revisaron mi cartera.

20.    Finalmente, los oficiales me dejaron salir del asiento trasero del vehículo. Sin embargo, antes de quitarme los grilletes, un oficial dijo que no podían dejarme ir hasta que el perro oliera mi camioneta (técnicamente la camioneta de mi hermano; la que yo había conducido a casa) en busca de drogas. Sabía que no tenía nada que ocultar, así que no me opuse a la inspección del K-9.

21.    El perro no detectó nada en mi camioneta, por lo que finalmente los oficiales me quitaron los grilletes—aproximadamente 15 minutos después de haber llegado a mi casa.

22.    En ese momento, los oficiales me dijeron que la base de la detención era que las placas de mi vehículo están vinculadas al nombre de mi hermano. Mi hermano no es ciudadano.

23.    Mi vieja camioneta se averió recientemente, así que la vendí. El 20 de abril, comencé a conducir la vieja camioneta de mi hermano para ir al trabajo (sitios de construcción) y para realizar mis actividades diarias. Planeo enviarle dinero a mi hermano a cambio del título de la camioneta, y luego registraré las placas a mi nombre.

24.    Los oficiales me dijeron que corro el riesgo de que me detengan nuevamente hasta que registre las placas a mi nombre. Pero los oficiales podrían haber sabido de inmediato que yo no era mi hermano simplemente revisando la REAL ID que tenía en la mano cuando me sacaron de la camioneta y me tiraron al suelo.

25.    En ningún momento antes de detenerme físicamente los oficiales me hicieron preguntas sobre mi identidad, mi ciudadanía o mi estatus migratorio. No me

4

pidieron que saliera del vehículo. Ni siquiera miraron mi identificación antes de usar fuerza física contra mí, aunque la tenía en la mano.

26. No fui acusado de ningún delito, porque no había hecho nada malo.

27. Esta es la tercera vez que soy detenido en menos de un año—aunque pasé más de dos meses este año visitando a mi familia en México.

28. Solo llevo de regreso de México aproximadamente un mes, y ya me han detenido nuevamente. Del tiempo que he estado en Alabama este último año, he sido detenido aproximadamente una vez cada 90 a 100 días.

29. Como resultado de esta tercera detención, he sufrido y continúo sufriendo una angustia emocional significativa, estrés y ansiedad. Esta tercera detención ha agravado el miedo y el trauma que he experimentado desde mi primera detención en mayo de 2025. Especialmente porque las tres detenciones han ocurrido en el trabajo y en mi casa, vivo con el temor constante de ser sometido a más detenciones sin fundamento simplemente por realizar mi vida diaria. Honestamente, me sentía más seguro mientras estaba en México. Pero mi hogar es Alabama. Solo deseo vivir mi vida en paz.

30. Revisé una copia de esta declaración que fue traducida al español por la abogada del Institute for Justice, Katrin Márquez, y hablé con ella y con el abogado del Institute for Justice, Jared McClain, por teléfono para confirmar la exactitud de la declaración.

31. Con base en esa conversación, confirmo que esta declaración es verdadera y precisa según mi leal saber y entender.

Ejecutado este 4 de Mayo del 2026.

_Leonardo Garcia Venegas (May 4, 2026 21:36:42 CDT)_

Leonardo Garcia Venegas