**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| Leonardo Garcia Venegas, | |
| **Plaintiff,** | |
| v. | |
| Tom Homan, *et al.*, | **Case No. 25-cv-00397-JB-N** |
| **Defendants.** | |

**UNITED STATES' SUPPLEMENTAL RESPONSE**

A preliminary injunction is an extraordinary remedy. Leonardo Garcia Venegas ("Venegas") asks this Court to disrupt the United States' efforts to investigate immigration violations on construction sites without meaningful discovery. At an evidentiary hearing, Venegas failed to establish that he has sufficient control over an open construction site to establish a reasonable expectation of privacy in it. He also did not identify any policy that violates the Constitution. Venegas did not meet his burden. Hence, Tom Homan and the federal defendants (collectively, the "United States"), by and through United States Attorney Sean P. Costello, urge this Court to deny Venegas's motion for a preliminary injunction.

To obtain a preliminary injunction, Venegas must show that: (1) there is a substantial likelihood that he will prevail on the merits; (2) he would suffer an irreparable injury without an injunction; (3) his injury exceeds the injuries to the United States; and (4) the injunction would not conflict with the public interest. *Assoc. Builders & Contractors Fla. First Coast Chapter v. Gen. Serv. Admin.*, 174 F.4th 26, 34 (11th Cir. 2026). This form of relief "is an extraordinary and drastic remedy not to be granted unless the movant clearly carries the burden of persuasion as to the four

1

prerequisites." *United States v. Jefferson Cnty.*, 720 F.2d 1511, 1519 (11th Cir. 1983) (internal quotation marks omitted). The burden remains "at all times" on Venegas. *Id.* (internal quotation marks omitted).

Venegas seeks to enjoin three alleged Department of Homeland Security ("DHS") policies with respect to construction sites. [Doc. 30-1, 37, PageID.230]. The first purported policy concerns entry to a worksite without a warrant or consent from an authorized person, and the second and third supposed policies involve detention practices for workers. [*Id.*]. This supplemental response addresses the alleged entry policy and then proceeds to address the two alleged detention policies.

## I.   Venegas lacks a basis to challenge agents' right to access a construction site.

A construction site worker lacks standing to challenge agents' right to access the site. Venegas testified repeatedly that he is a mere worker. He does not supervise others or oversee sites. Managers and other supervisors direct Venegas's activities and control the flow of workers. Venegas moves frequently from site to site to pour concrete. Consequently, Venegas—as a mere temporary worker—is unlikely to prevail on any constitutional claim with respect to site access.

The Constitution guards against "unreasonable searches and seizures[.]" U.S. Const. Amend. IV. The Fourth Amendment reflects a personal right, "and only individuals who actually enjoy the reasonable expectation of privacy have standing to challenge the validity of a government search." *United States v. Cooper*, 203 F.3d 1279, 1284 (11th Cir. 2000). A person's expectation of privacy is reasonable if it "is one that society is prepared to recognize as reasonable." *United States v. Odoni*, 782 F.3d 1226, 1238 (11th Cir. 2015).

A person may have a reasonable expectation of privacy in the workplace. *O'Connor v. Ortega*, 480 U.S. 709, 716 (1987). *Ortega* addressed a government office and concluded that "the question whether an employee has a reasonable expectation of privacy must be addressed on a

case-by-case basis." *Id.* at 718. The Supreme Court concluded that a physician in that case "had a reasonable expectation of privacy at least in his desk and file cabinets." *Id.* at 719. Similarly, the Supreme Court concluded that a union official had a reasonable expectation of privacy in "one large room" that the official "shared with several other union officials." *Mancusi v. DeForte*, 392 U.S. 364, 368 (1968).

As *Ortega* suggests, an expectation of privacy is not automatic in the workplace. The Ninth Circuit previously concluded that a group of factory workers lacked standing to challenge the validity of a warrant that immigration officials obtained to enter the factory. *Martinez v. Nygaard*, 831 F.2d 822, 825–26 (9th Cir. 1987). The plaintiffs "had no private space in any part of the building, and no authority to exclude others." *Id.* at 826. Hence, the court concluded that the plaintiffs had no standing to challenge immigration officials' entry into the factory. *Id.*

In a similar vein, other courts have rejected assertions of privacy interests in common spaces accessible to many other individuals. For example, the former Fifth Circuit concluded that an individual had no standing to contest law enforcement's entry to a working dock marked by a no trespassing sign. *United States v. Edmonds*, 611 F.2d 1386, 1388–89 (5th Cir. 1980); *see also Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*) (treating decisions by the former Fifth Circuit entered prior to the close of business on September 30, 1981, as binding). Likewise, the Ninth Circuit concluded that a person lacked a reasonable expectation of privacy in a hallway outside an apartment. *United States v. Nohara*, 3 F.3d 1239, 1241–42 (9th Cir. 1993). It also determined that only event organizers who "were in charge of the property" had standing to challenge a search of a warehouse during a concert. *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1188–89 (9th Cir. 2015). Concertgoers and an attendee who used the warehouse for other purposes lacked standing to challenge the officers' actions. *Id.* at 1187–88. Along analogous lines, the

3

Eighth Circuit found that a person had no standing to challenge officers' entry to a parking lot of an apartment complex. *United States v. Wright*, 844 F.3d 759, 762 (8th Cir. 2016).

Applying these principles, Venegas is not entitled to a preliminary injunction with respect to agents' right to enter construction sites. He is unlikely to establish a reasonable expectation of privacy in the construction site itself. Venegas is in a similar position to the plaintiffs in *Martinez*. He identified "no private space" in the site and lacked "authority to exclude others" from it. *Martinez*, 831 F.2d at 826. As Venegas put it, he is a mere worker. Managers and supervisors make decisions on site access. For good measure, Venegas moves sites frequently, such that he does not build an expectation of privacy in a particular worksite. Other workers share space with Venegas. In those senses, Venegas resembles the event attendees in *Lyall* who lacked standing, and his circumstances contrast sharply with the event organizers who "had possession of the warehouse, the right to control it, and the right to bring an action in trespass against intruders." *Id.* at 1187–89. Venegas cannot establish Fourth Amendment standing.

That deficiency affects both the merits of Venegas's claims and his Article III standing to pursue them. Venegas is unlikely to prevail on a Fourth Amendment challenge with respect to site access because he has no reasonable expectation of privacy in a construction site. As an Article III problem, Venegas's lack of a privacy interest affects his ability to establish an injury in fact, and his lack of authority to control site access poses a major redressability problem. *See Lewis v. Gov. of Ala.*, 944 F.3d 1287, 1301–05 (11th Cir. 2019) (*en banc*) (finding a redressability problem when a challenge relies in part on action by a third party). Viewed through either lens, Venegas's claim is unlikely to succeed.

The analysis is no different when the Court considers the regulation that Venegas has cited. DHS regulations limit immigration inspections in certain areas without a warrant or consent but

also provide that "[n]othing in this section prohibits an immigration officer from entering into any area of a business or other activity to which the general public has access or onto open fields that are not farms or other agricultural operations without a warrant, consent, or any particularized suspicion" for questioning. 8 C.F.R. §§ 287.8(f)(2), 287.8(f)(4). At this early stage, Venegas has not demonstrated that the regulation clearly guards against agents' entry to an open construction site. A regulatory claim is no basis for a preliminary injunction, either.

The remaining factors cut further against the entry of a preliminary injunction. Venegas has not identified an irreparable injury from agents' mere entry onto the site because he held no property interest in the construction site and had no reasonable expectation of privacy there. Likewise, the United States and the public have a strong interest in the enforcement of the Nation's immigration laws. *Savoury v. U.S. Att'y Gen.*, 449 F.3d 1307, 1320 (11th Cir. 2006) ("The INS does act in the public interest when it enforces the immigration laws of this country."). Crucially, Venegas makes no effort to tailor his injunctive demand. Instead, he seeks a wholesale bar on entry that ignores the numerous exigencies that can support such entry. The sweeping injunction Venegas seeks would thwart valid law enforcement operations. Accordingly, these factors reinforce the impropriety of a preliminary injunction.

To sum up, Venegas lacks a lawful basis to challenge agents' right to enter a construction site. He did not establish any of the elements to obtain a preliminary injunction with respect to the first alleged policy. This Court should deny his motion as to that purported policy.

## II. Venegas has not shown that any alleged detention policies violate the Constitution.

An agent may detain bystanders briefly during an investigation into criminal activity in numerous circumstances. During that investigative detention, the agent may seek identification documents and review them to confirm authenticity and accuracy. At this early stage, Venegas has

5

not demonstrated that he is entitled to enjoin any alleged detention policies, either.

Law enforcement may detain an individual briefly if an officer "has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). A court should consider the totality of the circumstances and determine whether a reasonable person would suspect wrongdoing. *District of Columbia v. R.W.*, 146 S. Ct. 1069, 1071 (2026). Although the analysis focuses on the individuals involved, "individualized suspicion is not an absolute prerequisite for every constitutional search or seizure." *United States v. Lewis*, 674 F.3d 1298, 1305 (11th Cir. 2012). The focus remains instead on reasonableness. *Id.* at 1306. Flight is an important factor. *R.W.*, 146 S. Ct. at 1072. Even for someone who does not run, "companions' flight" may cast the individual's "presence in a suspicious light." *Id.*

Once detained, the investigation must relate to the circumstances that initiated the stop. *Rodriguez v. United States*, 575 U.S. 348, 354–55 (2015). During the stop, "officers may ask a suspect to identify himself or herself." *United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1221 (11th Cir. 1993). The *Diaz-Lizaraza* Court found that "agents' request for identification and basic personal information was reasonable." *Id.*; *see also United States v. Gonzalez-Zea*, 995 F.3d 1297, 1304–06 (11th Cir. 2021) (addressing a stop to investigate a potential fugitive).

Against this backdrop, Venegas has failed to carry his burden to support the broad preliminary relief that he seeks. Venegas implicitly recognizes that the reasonable suspicion standard controls once agents have entered a construction site. Nonetheless, he seeks broad injunctive relief that is incompatible with that standard. He asks this Court to require "particularized evidence that would lead a reasonably prudent officer to believe that each individual worker they detain is violating the law." [Doc. 30-1, 37, PageID.230]. That blunt demand clashes with the fact-intensive analysis that the Supreme Court recently applied in *R.W.*

6

and that the Eleventh Circuit employed in *Lewis*. The *R.W.* Court concluded that an officer reasonably could suspect criminal activity by fleeing passengers as well as the driver who did not run. 146 S. Ct. at 1072–73. Similarly, the *Lewis* Court determined that the Fourth Amendment requires reasonableness, not individualized suspicion in every case. 674 F.3d at 1305–06. Venegas has not demonstrated a substantial likelihood of success on the merits as to the expansive injunctive relief that he seeks as to the second alleged policy.

Venegas's injunction suffers from the same defects on the third policy. An officer has latitude to conduct reasonable inquiries related to a brief investigation. During a traffic stop, an officer may run a driver's license to check for outstanding warrants to ensure the safe operation of vehicles on the road. *Rodriguez*, 575 U.S. at 355. In *Gonzalez-Zea*, the Eleventh Circuit concluded that agents could ask an individual for identification as part of an investigation into a fugitive. 995 F.3d at 1304–06. These investigative powers would be meaningless if an agent lacks authority to conduct brief inquiries to ensure that an identification document is what it purports to be and to confirm that it contains accurate details. The proper length of such a detention will turn on the nature and circumstances of the encounter. A response to a dangerous and evolving situation may require more thorough investigative treatment than the brief stop of a single individual. Venegas asks this Court to treat certain documents as "presumptive evidence" of lawful status and require any investigation to stop there, regardless of the circumstances. [Doc. 30-1, 37, PageID.230]. Once again, the legal standard is far more nuanced. At this preliminary stage, Venegas has not shown that he is likely to succeed on the merits as to this all-encompassing injunction.

This Court should decline to refashion a narrower injunction from Venegas's sweeping requests. Venegas shoulders the burden "at all times" to establish that he is entitled to this extraordinary relief. *Jefferson Cnty.*, 720 F.2d at 1519 (internal quotation marks omitted). At the

7

evidentiary hearing, Venegas eschewed narrower relief. Moreover, the record is ill-developed even for more tailored relief. The proper scope and length of a detention will turn significantly on the facts and circumstances. Presently, Venegas has not shown that his circumstances were analogous to the indiscriminate detentions at a night club at issue in *Swint v. City of Wadley*, 51 F.3d 988 (11th Cir. 1995). Venegas challenges alleged policies on open construction sites. Moreover, the testimony at the evidentiary hearing supports the view that any detentions readily may be based on reasonable suspicion as articulated by the Supreme Court and by the Eleventh Circuit.

At this early stage, Venegas has not demonstrated that any injunctive barriers are necessary or appropriate to restrict investigative actions on construction worksites. This Court should not erect such barricades without full discovery of the alleged practices. Indeed, agents' first alleged encounter with Venegas apparently occurred during a fast-paced, evolving situation as some individuals on the worksite fled, including some who fled into a public roadway. Safety concerns were paramount. More limited relief also would pose significant Article III standing concerns, too, as it is far from clear that Venegas would be detained in the future in that fashion. Venegas has not established a sufficient likelihood of success on the merits to support any preliminary injunction.

For similar reasons, the remaining injunctive factors also cut against the entry of a preliminary injunction. Venegas suffers from no irreparable injury because he has not established that he faces a serious risk of future harm that stems from the specific alleged policies that he claims to challenge. Moreover, both the United States and the public have a strong interest in the enforcement of federal immigration laws. The remaining three injunctive factors counsel against the entry of a preliminary injunction.

In sum, the standard for preliminary relief is demanding for good reasons. A disruptive injunction could impede the United States' enforcement efforts on construction sites. This Court

should decline to enter any relief at this early stage. Accordingly, it should deny Venegas's request

for a preliminary injunction against the three alleged policies.

Respectfully submitted,

SEAN P. COSTELLO
UNITED STATES ATTORNEY

By: *s/ S. Gaillard Ladd*
S. Gaillard Ladd
Scott A. Gray
Assistant United States Attorney
11 North Water Street, Suite 30100
Mobile, Alabama 36602
Telephone: (251) 415-7128
Email: gaillard.ladd@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that, on June 3, 2026 the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notice to all counsel of record.

/s/ *S. Gaillard Ladd*
S. Gaillard Ladd
Assistant U.S. Attorney

9