**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION**

**LEONARDO GARCIA VENEGAS,**

**Plaintiff,**

**v.**

**TOM HOMAN, White House Border Czar, in his official capacity, et al.**

**Defendants.**

**Civil Action No. 1:25-cv-00397-JB-N**

**FEDERAL DEFENDANTS' MOTION TO RECONSIDER OR CLARIFY**

The Executive Branch has expansive constitutional and statutory authority to enforce the Nation's immigration laws. This Court entered a preliminary ruling that stays three alleged DHS policies concerning construction sites that Leonardo Garcia Venegas ("Venegas") challenges. The Court indicates that its choice of a stay "is a less drastic remedy" that is "sufficient to redress [Venegas's] alleged injury." [Doc. 106, 24, PageID.1440]. As entered, the Court's order functions as a *de facto* injunction that could be construed to preclude immigration actions that otherwise are consistent with the Constitution and applicable law. Thus, the federal defendants (collectively called the "United States" herein) move for reconsideration or clarification of the ruling.

## I. Background

Venegas filed a complaint challenging three purported policies that involve immigration enforcement on construction sites: (1) an alleged policy of warrantless entry to construction sites; (2) an alleged policy of presumptive detention of construction workers; and (3) an alleged policy of continued detention after a worker provides documentation of status. [Doc. 1, 36–42,

PageID.36–42]. The United States denies that these purported policies exist. [Doc. 43, PageID. 490]. Nevertheless, Venegas moved for a preliminary injunction and to certify a class. [Docs. 30, 31]. Specifically, Venegas sought an injunction to forbid: (1) "[s]earching the non-public areas of construction sites within this District without the consent of a person with lawful authority to provide it or a judicial warrant based on probable cause[;]" (2) "[p]reemptively detaining workers on construction sites within this District without particularized evidence that would lead a reasonably prudent officer to believe that each individual worker they detain is violating the law[;]" and (3) "[c]ontinuing to detain workers on construction sites within his District, on the premise that they may be an illegal immigrant, even after those workers show or the officer sees presumptive evidence of U.S. citizenship or lawful presence in the country." [Doc. 30-1, 37, PageID.230]. He also requested the certification of three classes of citizens and lawful residents. [Doc. 31, 1, PageID.373].

This Court held hearings on the motions and ultimately entered orders granting them in part. [Docs. 106, 107]. On Venegas's injunctive request, the Court granted the motion "to the extent that the alleged policies will be temporarily stayed" but otherwise denied the motion. [Doc. 106, 1, PageID.1417]. The Court indicated that it viewed a stay as "a less drastic remedy" that is "sufficient to redress [Venegas's] alleged injury." [*Id.* at 24, PageID.1440].

On the merits, the Court recognized "the fact specific considerations required by Fourth Amendment precedent" but "consider[ed] the facts here and determine[d] only whether a right of privacy existed in this instance." [*Id.* at 13, PageID.1429]. It acknowledged that "a construction site can, in some instances, reasonably be considered an open field" but questioned whether the construction sites were open fields during Venegas's alleged encounters with law enforcement. [*Id.* at 14, PageID.1430]. The Court also found that Venegas likely held an expectation of privacy

in the worksites. [*Id.* at 15–17, PageID.1431–33]. The Court made similar analyses of the other alleged policies. [*Id.* at 17–22, PageID.1433–38].

The Court also found that the other equities tipped in favor of preliminary relief in some form. [*Id.* at 22–23, PageID.1438–39]. It doubted that "enjoining those policies would 'curtail' anything[,]" given the United States' position that the policies did not actually exist. [*Id.* at 23, PageID.1439]. Nonetheless, the Court found that a temporary stay was sufficient and indicated that a preliminary injunction was unwarranted. [*Id.* at 23–24, PageID.1438–39]. The Court granted separately Venegas's motion for class certification "to the extent that it seeks conditional certification" of a class. [Doc. 107, 1, PageID.1441].

## II. Legal Standards

A court has an "inherent authority to correct its own errors, so long as it possesses jurisdiction over the action," grounded in common law. *Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1380 (11th Cir. 1380). Generally, a court should consider reconsideration against the backdrop of the law of the case doctrine. *Id.* at 1380–81. Under that doctrine, a court generally follows a prior ruling unless there is new evidence, a change in controlling authority, or a clear error that would yield a manifest injustice. *State Farm Mut. Ins. Co. v. Williams*, 824 F.3d 1311, 1314–15 (11th Cir. 2014). In the context of reconsideration, the doctrine "function[s] as a guide for courts rather than a limit to their power." *Hornady*, 118 F.4th at 1380 (internal quotation marks omitted). Within 28 days of judgment, a court also may alter or amend a judgment. Fed. R. Civ. P. 59(e). It may enter additional findings as well. *Id.* at 52(b). The United States seeks reconsideration and amendment of both the Court's Order regarding Plaintiff's request for a preliminary injunction [Doc. 106] and class certification [Doc. 107] pursuant to this Court's inherent authority as well as the provisions in Rule 59(e) and Rule 52(b).

**III. Discussion**

This Court should revisit its stay ruling to clarify its contours. The Court indicated that it selected a stay as less intrusive on government operations than a preliminary injunction. Nonetheless, the Court's ruling functions as a *de facto* injunction without further clarification. Its indefinite scope leaves the United States unable to guard sufficiently against the prospect of a future contempt motion. The United States maintains other objections to any preliminary relief, but the Court should—at a minimum—clarify the scope of its ruling.

Under the Administrative Procedure Act, a court "may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. To implement Section 705, courts generally apply the requirements for preliminary injunctions. *Kansas v. U.S. Dept. of Labor*, 749 F. Supp. 3d 1363, 1372–73 (S.D. Ga. 2024); *Florida v. Dept. of Health & Human Servs.*, 739 F. Supp. 3d 1091, 1101 (M.D. Fla. 2024).

An injunction or restraining order must set out its terms with specificity. Fed. R. Civ. P. 65(d). Rule 65 requires an injunction to "state the reasons why it issued;" "state its terms specifically;" and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." *Id.* at 65(d)(1). Along those lines, the Eleventh Circuit has rejected general injunctions to follow the law as insufficiently precise to comply with Rule 65. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1200–01 (11th Cir. 1999); *see also S.E.C. v. Goble*, 682 F.3d 934, 949 (11th Cir. 2012) (collecting cases that have rejected general injunctions to follow the law). Ultimately, "an injunction should clearly let the defendant know what he is ordered to do or not to do and should be phrased in terms of objective actions, not legal conclusions." *United States v. Askins & Miller Orthopaedics, P.A.*, 924 F.3d 1348, 1362 (11th Cir.

2019) (cleaned up). These specificity requirements "are designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Id.* (internal quotation marks omitted).

At the core, a preliminary injunction remains "an extraordinary remedy, and the boundaries within which the district court may exercise its discretion are clearly marked." *Shatel Corp. v. Mao Ta Lumber & Yacht Corp.*, 697 F.2d 1352, 1354 (11th Cir. 1983). The movant must meet exacting criteria to avoid the default rule that civil litigation should proceed through discovery and to trial before any disturbance of a party's operations. *Id.* at 1354–55 (identifying the equitable criteria).

A factual dispute on the existence of the alleged policies lies at the heart of this litigation. The United States maintains that the alleged policies do not exist and asserts that it enforces the Nation's immigration laws in accordance with the Constitution and applicable laws. Conversely, Venegas has claimed that the United States has developed and enforced policies that are contrary to the law. That factual dispute means that Section 705 is an ill-fitting measure in these circumstances. The United States maintains that there is no written policy to stay while this litigation continues. Although the Court has indicated that it would find otherwise, its order does not outline with specificity the policy that it believes to exist. Without further specificity, it is unclear what actions the Court intends to delay. This Court should correct that ambiguity.

Likewise, the Court has not made clear the operational state that the United States should follow during the pendency of this litigation. *See Haitian Evangelical Clergy Ass'n v. Trump*, 789 F. Supp. 3d 255, 274 (E.D.N.Y. 2025) (concluding that the status quo is the "last peaceable uncontested status that preceded the pending controversy.") The United States maintains that Section 705 relief is improper in these circumstances, but—at a minimum—the Court should identify with specificity the terms of the alleged policy that it has found and that it intends to stay

and identify its construction of the policy that the United States now should follow during this litigation.

Such specificity is necessary to avoid the *de facto* effect of an injunction. As written, the United States cannot determine when its agents can enter construction sites without potentially violating the order. For example, the Court's ruling does not expressly carve out judicially recognized exceptions to the Fourth Amendment's warrant requirement, such as the hot pursuit doctrine, exigency, plain view, or searches incident to arrest. Nor is it clear that the United States may continue to rely on the open fields doctrine when the facts support it. The Court recognizes that "a construction site can, in some instances, reasonably be considered an open field[,]" though it questioned whether the doctrine applied during Venegas's alleged encounters. [Doc. 106, 14, PageID.1430]. Without clear terms, the United States cannot determine the effect of the injunction, provide adequate guidance to its agents, or fully assess the impact of the ruling for any potential appeal. Accordingly, the United States moves for clarification of the Court's ruling.

In addition, the United States respectfully submits that the Court's analysis of the open fields doctrine is too narrow, and its discussion of Fourth Amendment standing is too broad. The Fourth Amendment's protections do not extend to so-called "open fields." *McLaughlin v. Elsberry, Inc.*, 868 F.2d 1525, 1530 (11th Cir. 1988). The Eleventh Circuit found that common areas in a migrant labor camp on an agricultural site was an open field such that a statute did not violate the Fourth Amendment when it allowed Department of Labor inspectors onto the site to interview employees. *Id.* at 1530-31. The Court declined to give dispositive weight to "ordinary farm fences" or "No Trespassing" signs. *Id.* at 1530 (internal quotation marks omitted). *McLaughlin* supports the application of the open fields doctrine to construction sites. Moreover, while an employee may have a reasonable expectation of privacy in a workspace, it does not follow that any employee has

authority wholesale to exclude others even from entering the workplace. *See United States v. Nohara*, 3 F.3d 1239, 1242 (9th Cir. 1993) (discussing a tenant's lack of an expectation of privacy in a common area). The Court's ruling suggests that a temporary, often short-term worker like Venegas has expansive authority to control all entrance or egress from a worksite. Crucially, the Court's ruling stays the policies for all construction sites even though the Court's analysis acknowledges that at least some parts of sites would qualify as open fields and that at least some workers would lack a Fourth Amendment interest in the property. The Court should revisit these aspects of its ruling.

Regarding class certification, the Court's Order on conditional class certification is also uncertain and vague. The Court Order states that the class is certified "for the reasons stated on the record at the hearing." [Doc. 107]. At the time of the hearing, counsel discussed class certification in a preliminary context prior to engaging in discovery. [Doc. 105, PageID.1405-1414]. However, upon further reflection, it is uncertain how class discovery is to commence without a clear definition by the Court of what, exactly, is the class for discovery purposes. Like a stay or preliminary injunction, a certified class is to be set forth with particularity. Fed.R.Civ.P. 23. This includes a definition of "the class and the class claims, issues, or defenses" and predominating questions of law and fact. *Id.* An inadequately defined class and failure to conduct a rigorous Rule 23 inquiry is fatal to a class certification. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009).

Without something more concrete the Court's Order does not set out with particularity what agency actions lying underneath the alleged policies are stayed or prohibited, or if any exceptions to the 4th Amendment are restricted or prohibited. The stay is therefore confusing, unworkable, and is overly broad. Applying the principles of a preliminary injunction to the Order,

it should be set aside or clarified. Likewise, while the Court's order grants a conditional certification, it does not set the parameters of membership of the conditional class so as to allow the parties to adequately control discovery in this action. Accordingly, the United States respectfully moves for this Court to reconsider its ruling.

Respectfully submitted,

SEAN P. COSTELLO
UNITED STATES ATTORNEY

By: *s/ S. Gaillard Ladd*
S. Gaillard Ladd
Assistant United States Attorney
11 N. Water Street, Suite 30100
Mobile, Alabama 36602
Telephone: (251) 415-7135
Gaillard.Ladd@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that, on October 19, 2026, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notice to all counsel of record.

*s/ S. Gaillard Ladd*
S. Gaillard Ladd
Assistant United States Attorney